FILED

2003 NOV -4  P 4: 58

DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THOMAS MATYASOVSZKY, on behalf of himself :
and other similarly situated,
                Plaintiff, :

JUDITH MONTES, :
                Intervenor, : CIVIL ACTION NO.
                 : 3:03 CV 968 (RNC)
V. :
                 :
HOUSING AUTHORITY OF THE CITY OF :
BRIDGEPORT, et al. : NOVEMBER 4, 2003
                Defendants. :

**REPLY TO DEFENDANTS' OBJECTION
TO JUDITH MONTES' MOTION TO INTERVENE**

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On October 22, 2002, Judith Montes applied to the Housing Authority of the City

of Bridgeport ("BHA") for public housing. See Exhibit A, ¶ 2, attached hereto,

Affidavit of Madeline Alvarado ("Aff. Alvarado"). Over the next year, Ms. Montes'

daughter, Madeline Alvarado, personally informed various staff members at the BHA of

Ms. Montes' disabilities on numerous occasions. Id. at ¶¶ 2, 3, 4, and 5. Ms. Alvarado

helped Ms. Montes complete her application. Id. In or about February of 2003, the

BHA's waiting list for the Fireside Apartments had been exhausted, and it began

soliciting new applications from elderly persons to fill available units at the Fireside Apartments. See Exhibit B attached hereto, Affidavit of Paula Futrell ("Aff. Futrell"). Even though there was no one left on the waiting list for the Fireside Apartments, the BHA did not offer an apartment there to Ms. Montes. Aff. Alvarado, ¶ 9. On September 29, 2003, Judith Montes moved to intervene in this action, one day prior to the deadline for intervention agreed to by the parties and established by the Court's scheduling order. On October 20, 2003, the defendants filed their Objection to Motion to Intervene with an accompanying memo ("Objection" or "Obj. Mem.").

## II.   ARGUMENT

Defendants oppose Ms. Montes' intervention based on three main arguments: (A) the intervenor's claim is not ripe because she does not allege that available housing was denied to her; (B) the intervenor's rights will be adequately protected by the current lawsuit, as she would be a member of the proposed class; and (C) the intervenor's factual circumstances are not common to those experienced by the initial plaintiff, Thomas Matyasovszky. As further described below, Ms. Montes responds to argument (A) by attaching proof that housing at the Fireside Apartments was available in February 2003 but was denied to her. In response to points (B) and (C), although the BHA has applied

2

the same discriminatory policy to both Ms. Montes and Mr. Matyasovszky, her claims nevertheless may not be adequately represented by Mr. Matyasovszky's claim, as the defendants appear to intend to present different defenses to the two claims.

A.     **Ms. Montes' Claim that She Suffered Discrimination by Being Denied a Unit at Fireside Apartments Is Ripe**

The defendants state that Ms. Montes never even alleged that she had been denied housing that was actually available, and therefore that she cannot yet be an aggrieved person. See Obj. Mem. at 6. In fact, Ms. Montes did allege in Paragraph 4 of her Complaint in Intervention that the Fireside Apartments are being denied to disabled tenants like herself and provided only to seniors. Her claim that units in the Fireside Apartments were available while she was on the waiting list is further supported by an attached affidavit from a social worker for a state social services agency, Paula Futrell. In her affidavit, Ms. Futrell relates that she was informed by a BHA staff person that Fireside Apartments had gone through its entire waiting list. See Aff. Futrell at ¶ 5.

Moreover, Ms. Montes also noted in her own affidavit at Paragraphs 5 and 6 that even if she is eventually provided some housing by the BHA, the delay will have forced her to wait longer than she would have had the BHA complied with federal law. The ripeness of this claim is undeniable since even the defendants acknowledge that Ms.

3

Montes duly applied and was put on the waiting list in 2002. As soon as she learned of this lawsuit, in September of 2003, Ms. Montes promptly moved to intervene. As a homeless, disabled person, Ms. Montes' claim that any additional delay harms her is far from tactical: she desperately needs to a stable home. See Aff. Alvarado at ¶ 8. Having waited for thirteen months–*longer* than the average wait, even for an applicant who is not entitled to live in the senior/disabled complexes–and complied with every conceivable request made by the BHA, it is clear that defendants' accusation that Judith Montes is attempting to "circumvent" the waiting list is baseless.

**B.    Ms. Montes Claim May Not Be Adequately Represented Unless Intervention Is Permitted.**

The defendants urge that intervention is unnecessary because the current law suit will adequately protect Ms. Montes' interests, and yet simultaneously argue that intervention should be denied because the facts of Ms. Montes' claim "are not common" to those alleged by Mr. Matyasovszky. Intervenors must demonstrate only that the representation of the current plaintiffs' interests "may be" inadequate to protect their own. See Fed. R. Civ. P. 24. Thus, where the original plaintiff's pending bankruptcy created the possibility that that plaintiff would be liquidated, thereby mooting the case into which intervention was sought, the court held that intervention was justified. See

4

Supreme Beef Processors, Inc. V. United States Department of Agriculture, 275 F.3d 432, 437-38 (5th Cir. 2001).  See also  Jordan v. Michigan Conference of Teamsters Welfare Fund, 207 F.3d 854, 863 (6th Cir. 2000) (noting that an intervenor need not demonstrate that he or she *will in fact* be inadequate, only that it "may be.").  As in the Fifth Circuit case cited above, the intervenor here must become a plaintiff if she is to avert the possibility that the current plaintiff's action will be dismissed to her prejudice.  The defendants have claimed in their Objection to Plaintiff's Motion for Class Certification that Mr. Matyasovszky has no standing, and have asserted in their Answer that Mr. Matyasovszky has failed to state a claim for which relief can be granted.  In the event that defendants' contentions succeed, Ms. Montes' could be left unprotected and the case dismissed for reasons unrelated to the viability of her claims.

In contradiction of their claim that intervention is unnecessary because Ms. Montes' claims are so similar, the defendants also argue that intervention is unjustified because Ms. Montes' claims are too dissimilar.  Mr. Matyasovszky's claim that the BHA discriminated against him as a would-be applicant is similar to Ms. Montes' claim that the BHA discriminated against her as a completely processed applicant, inasmuch as both complain that the same BHA policy regarding disabled persons caused each of them to be

5

denied an apartment. However, the claims differ in that the BHA staff permitted Ms. Montes to at least apply for other housing, whereas they told Mr. Matyasovszky that applying for the Fireside Apartments would be futile. Intervention in this case will efficiently dispose of two claims based on identical behavior by the defendant, while preserving the plaintiffs' rights as to any claims that may have to be tested separately.

Respectfully submitted,
PLAINTIFF THOMAS MATYASOVSZKY

By /s/ Jennifer Vickery
Jennifer Vickery, Esq. (Ct24089)
Law Offices of Alan Rosner
1115 Main Street, Suite 415
Bridgeport, CT 06604
Tel. (203) 384-1245
Fax. (203) 384-1246

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent by mail and facsimile transmission on this 4th day of November, 2003 to:

James Mahar, Jeff Nagle and Michael Ryan
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905

_____
Commissioner of Superior Court

EXHIBIT A

## **AFFIDAVIT OF MADELINE ALVARADO**

Madeline Alvarado, being duly sworn, deposes and says:

1. I am over the age of eighteen years and appreciate the obligations of an oath.

2. I have assisted my mother, Judith Montes, with her application for public housing. On October 22, 2002, I personally took her to the Trumbull Gardens office to fill out her application. I told them at that time that my mother needed public housing because she is disabled.

3. Later on, I called the Bridgeport Housing Authority to check on the progress of my mother's application. I left messages explaining that my mother was applying as a disabled person, because I thought that if they knew about her disabilities, the staff might be able to find housing for her quicker.

4. I also took my mother to an interview at the Trumbull Gardens offices. I understood the interview to be an important part of her application for public housing. For that reason, I made certain that I told the interviewer about my mother's disabilities.

5. After many months, the Bridgeport Housing Authority made an appointment to check on my mother's housekeeping. My mother had no home of her own, so we

had the appointment at my apartment on Calhoun Avenue.

6. The Bridgeport Housing Authority sent a Caucasian, American man who speaks Spanish to the appointment. During the appointment, I told him all about my mother's disabilities. I explained that she had no home of her own, and that the only place for her to sleep in my house was the livingroom. I also explained that I have pets, which is not good for my mother's asthma.

7. My mother has been forced to stop living in my apartment because my landlord threatened to raise the rent higher than I can afford if she stayed. Now she stays in several different places, but occasionally spends the night at my house.

8. Having no place of her own is bad for my mother's state of mind, and I am very worried about her.

9. Over a year has gone by, but the Bridgeport Housing Authority still has not offered any housing to my mother.

Dated: Bridgeport, CT
November 3, 2003

_____
Madeline Alvarado

Subscribed and sworn to before me this 3rd day of November, 2003.

_____
Commissioner of Superior Court

EXHIBIT B

## AFFIDAVIT OF PAULA FUTRELL

I, Paula Futrell, being over the age of eighteen and aware of the obligations of an oath, do swear and say:

1. I am currently employed as a Care Manager for the Southwestern Connecticut Agency on Aging, Inc. in Bridgeport, CT (SWCAA) and have been employed throughout 2003.

2. As a Care Manager, 100% of my clients are persons sixty-five years of age and older who require assistance with various problems, occasionally including finding affordable housing.

3. Approximately 10% of my clients live in the Fireside Apartments. SWCAA attempts to cluster client assignments geographically to reduce travel time and increase efficiency.

4. In the course of serving my clients who live in apartment complexes operated by the Bridgeport Housing Authority, I have worked with Cindy Larson, the Adult Social Worker in the Community Affairs office of the Bridgeport Housing Authority.

5. At some point during the month of February 2003, I learned from Cindy Larson that the Bridgeport Housing Authority had gone through its waiting list for the Fireside Apartments, meaning that applicants who had been waiting for an apartment had been placed in an apartment, had died or otherwise were no longer in need of housing. For that reason, Cindy said, the Bridgeport Housing Authority was now taking new applications for the Fireside Apartments.

6. I then told some of my clients to hurry up and get on the list. To my knowledge, one of my clients obtained an application, but ended up living elsewhere as the wait for an apartment was too long.

Dated at:   Bridgeport, CT
            October 23, 2003

_____
Paula Futrell

Subscribed and sworn to before me this 23rd day of October, 2003.

City of Bridgeport   County of Fairfield   State of CT

_____
Commissioner of Superior Court
Rita M Tusch, Notary Public
My commission expires 3/31/07