

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS MATYASOVSZKY, on behalf of himself and all other persons similarly situated, Plaintiffs, | : CIVIL ACTION NO. : : 3:03-CV-968 (RNC) |
| V. | : : |
| HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT, COLLIN VICE, individually and in her capacity as Executive Director of the Housing Authority of the City of Bridgeport, and JONAS DE GUZMAN, individually and in his capacity as Special Assistant to the Executive Director of the Housing Authority of the City of Bridgeport, Defendants. | : : : : DECEMBER 6, 2003 : : : : |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

### NATURE OF THE CASE

The defendant Bridgeport Housing Authority ("BHA") owns and operates approximately six hundred units of "mixed population" public housing, among them the 248-unit Fireside Apartments. Mixed population housing units are those intended for occupancy by the elderly and the disabled. Federal regulation requires the BHA to make all of the 248 units in Fireside available, on an equal basis, to both the elderly and the

disabled. When low income, disabled tenants like plaintiff Thomas Matyasovszky inquire about applying to the Fireside, the BHA staff tells these individuals that they are ineligible because they are not elderly. Thus, the plaintiff and hundreds of other disabled applicants have been misled about the availability of the Fireside units, discouraged from applying, steered into other, less safe and less desirable complexes, and forced to remain on the BHA's waiting lists far longer than would have been necessary if defendants had complied with federal law.

As of 1992, housing authorities may apply to the Department of Housing and Urban Development ("HUD") for permission to limit the occupancy of a mixed population complex to either the elderly or the disabled.. In such an application, the BHA would be required to demonstrate that it is making other housing available to the excluded population–in this case, the disabled applicants. The defendants have never even applied for such permission. Instead, the defendants have illegally operated the Fireside as though it was an elderly-only complex for at least the past three years.

Plaintiff filed this action on May 30, 2003 seeking declaratory and injunctive relief, as well as compensatory and punitive damages, for himself and other members of the proposed class.

## PROCEDURAL HISTORY

This motion concerns defendants' objections to plaintiff's First Requests for Production dated October 13, 2003, and Second Requests for Production dated October14, 2003. See Exhibits A and B, attached hereto. This Court granted requests to extend defendants' time to respond until December 12 and 15, 2003. On November 12, 2003 defendants filed Objections to both sets of production requests. See Exhibit C, attached hereto. On November 14, the defendants expressed their belief that the BHA's privacy policy bars disclosure of application files. Plaintiff presented defendants with a proposed protective order to defendants addressing these concerns on November 25, 2003. See Exhibit D, attached hereto. On December 1 and 2, 2003, the parties again conferred regarding discovery disputes, resolving several issues but remaining in dispute regarding the relevance and burdensomeness of certain, and the issue of whether the BHA's disclosure is constrained by 5 U.S.C. 552a, a statute offering exemptions the federal freedom of information statutes.

I.  **OBJECTIONS BASED ON THE FEDERAL PRIVACY ACT ARE UNWARRANTED, AS THAT ACT DOES NOT APPLY TO THE DEFENDANTS.**

Production Requested:

**Requests 5, 6, 7 and 8** of plaintiff's First Request for Production and **Requests 18, 19, 20, 21 and 22** of his Second Request for Production seek certain categories of

application materials. Specifically, Request pre-applications submitted to the BHA since October 19, 1999 by disabled persons under the age of 62 (**Request 18**). Application materials that show the number of persons who applied as disabled are important for developing circumstantial proof of discrimination, as described in Section I above.

Defendants' Objection to Production:

Defendants objected to each of these requests, stating that the defendants are prohibited from producing "personal information of individuals" by 5 U.S.C. 552a, the federal Privacy Act.

Plaintiff's Response:

The federal Privacy Act, 5 U.S.C. 552a, does not apply to the Bridgeport Housing Authority because it is not a federal agency. See, e.g., Kerr v. United States Dist. Ct. For North. Dist. of California, 511 F.2d 192, 197 (9th Cir. 1975) (ruling that Privacy Act is inapplicable to state agencies); Ciccone v. Waterfront Comm'n of New York Harbor, 438 F.Supp. 55, 57 (S.D.N.Y. 1977) (same). The scope of 5 U.S.C. 552a is clearly confined to the federal entities listed at 5 U.S.C. 552(f). Nor does the federal Privacy Act become relevant merely because a state or municipality acts pursuant to a federal regulation or in connection with federal funding. See St. Michael's Convalescent Hospital v. State of California, 643 F.2d 1369, 1373-74 (9th Cir. 1981) (holding medicaid

regulations and funding did not provide standing for health care providers to raise a claim under the Privacy Act).

Even if the statute cited was relevant, the blanket manner in which it was applied is unjustified. General objections are insufficient, precisely because they do not address how or why the specific items requested trigger the general type of objection. In this instance, for example, the defendants could have at least produced a summary type of report that shows the total number of Fireside units that are now occupied by disabled person, without identifying individuals in any way.

Finally, if relevant, the Privacy Act still would not bar production required by law, such as through discovery procedures or in response to a valid subpoena. See generally ICG Communications, Inc. v. Allegiance Telecom, 211 F.R.D. 610, 612-613 and n.3 (N.D. Cal. 2002) (reasoning that production is not prohibited by a similar privacy provision in the Telecommunications Act, because the Federal Rules of Civil Procedure "constitute 'law' as that term is ordinarily understood"); accord, Laxalt v. McClatchy, 809 F.2d 885 (D.C. Cir. 1987). The Privacy Act creates no privilege against discovery. Rather, it generally requires the parties to enter into a protective order. Wallman v. Tower Air, Inc., 189 F.R.D. 566, 569 (N.D. Cal. 1999). For example, in Wallman, the court required the parties to file a stipulated protective order that prohibited distribution

of airline passenger lists beyond counsel's use for the case at issue, and provided for return or destruction of the lists after the termination of litigation. The protective order drafted by the plaintiffs contains both features. See Exhibit D attached hereto.

Finally, even if 5 U.S.C. 552a justified withholding the confidential contents of individual files, it would offer no justification for withholding other, more general types of documentation, such as lists or demographic reports. Thus, the defendants' citation of the Privacy Act should be viewed as an objection to the production of only those documents that contain individually identifiable information. For example, a residency list with names redacted showing the age, disability status, and date of admission for each resident would be partially responsive without identifying any individual.

## II. A REVIEW OF THE FILES OF DISABLED TENANTS ADMITTED TO BHA-OWNED PUBLIC HOUSING IS NO BROADER THAN NECESSARY TO PROVE INTENTIONAL DISCRIMINATION.

Production Requested:

In **Requests 21 and 22 of its Second Requests for Production**, plaintiff seeks to review individual files. Plaintiff limited **Request 21** to the individual files of current tenants in Fireside. Plaintiff requested individual files, internal communications, and the first and last pages of leases executed with any disabled persons who have been offered

in complexes other than Fireside in **Request 22.** of plaintiff's Second Request for Production. This request is limited to the time period after October 19, 1999, the date on which a city official informed the defendants of the illegality of their policy.

Defendants' Objection to Production:

Defendants object that these requests are overly broad and burdensome, and should be limited to the Fireside complex.

Plaintiff's Response:

The plaintiff alleges that the defendants' misleading statements about eligibility for the Fireside were intended to discriminate against Mr. Matyasovszky as a disabled person. Discovery of the applications of other disabled tenants is necessary in order to develop proof of that allegation. This request is no broader than necessary to develop valid circumstantial proof that the BHA's policy of keeping disabled persons like Mr. Matyasovszky out of the Fireside complex is in fact *intentionally* discriminatory.

Because direct proof of intentional discrimination is rare, such claims are most often proven through indirect, or circumstantial, evidence. See, e.g., Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982). Indirect evidence generally consists of four types of evidence: comparative, statistical, anecdotal, and historical. Intern'l Broth. of Teamsters v. United States, 431 U.S. 324, 335 at n.15 (1977). Comparative evidence

focuses on a defendant's treatment of individuals who are similarly situated to the plaintiff. In the case of Watson v. Pathway Financial, 702 F.Supp. 186, 189 (N.D. Ill. 1988), the court found supportive of plaintiff's claim of discrimination that the defendant had denied plaintiff's application for a loan, but had approved six white applicants with similar credit problems. In another lending discrimination case, the court observed that "(t)he patterns of defendants' past treatment of loan applications from minority neighborhoods, and departures from standard underwriting or loan acceptance procedures may shed some light on the defendant's purposes." Old West End Ass'n v. Buckeye Federal Sav. & Loan, 675 F. Supp. 1100, 1105 (N.D. Ohio 1987). Discovery of patterns of past treatment of other applicants, whether for loans or for apartments, are not burdensome "fishing expeditions" in the context of a claim of intentional discrimination. Such evidence provides a basis for inferring that illegitimate factors–in this case, the applicant's disability-- played a role in the way the plaintiff was treated.

Historical evidence also may be used to prove that the defendants have a poor record of compliance in a particular area of fair housing law. In Pinchback v. Armistead Homes Corp., 689 F.Supp. 541, 545 (D. Md. 1988), affirmed in part, vacated in part on other grounds, 907 F.2d 1447 (4th Cir. 1990), the court ruled that the fact that a landlord had never rented to a black tenant was relevant and admissible to establish discriminatory

intent. Similarly, courts have held that incidents of prior discrimination by a defendant are admissible to support an allegation that the defendant discriminated against plaintiff. Miller v. Poretsky, 595 F.2d 780, 782-85 (D.C. Cir. 1978); Morrison v. Philadelphia Housing Authority, 203 F.R.D. 195 (E.D. Pa. 2001 )(commenting that in employment cases, evidence of other acts of discrimination generally discoverable); United Airlines Inc. v. Evans, 431 U.S. 553 (1977)(discriminatory act prior to statute of limitations "may constitute relevant background evidence"); Crawford v. Western Electric Co. Inc., 614 F.2d 1300, 1314 (5th Cir. 1980)(noting that evidence of racially motivated language and conduct by defendant employees ten years prior to incident is relevant "to illuminate current practices"); Robbins v. Camden City Board of Ed., 105 F.R.D. 49, 63 (D.N.J. 1985)(stating that background evidence was relevant for five years prior to discriminatory act). These discrimination cases comport with the Supreme Court's precedents on the evidence necessary to support an award of punitive damages. See, e.g., TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443 (1993)(holding "under well-settled law, evidence of similar wrongdoing is admissible for assessing punitive damages"); Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 21-22 (1991)(finding "the existence and frequency of similar past conduct" relevant for assessing punitive damages).

This case is the rare one in which some direct evidence of discrimination does

exist. Letters attached to plaintiff's complaint show that the defendants have known that their policy of excluding the disabled was unlawful since at least October 19, 1999. Nevertheless, the defendants have chosen to deny the policy in pleadings. See Amended Answer at ¶ 4. This denial forces the plaintiff to pursue all avenues of proof, including circumstantial evidence, in order to demonstrate the pattern.

Full review of the applications of all disabled tenants and residents is only way to extract patterns of admissions linked to the basis of the offer of housing. There is no way to prove a pattern of admissions less burdensomely because the BHA apparently does not keep any other type of list that shows when and why applicants were offered housing. For example, plaintiff alleges that the current residents in the Fireside have all been admitted based on their elderly status, but cannot conclusively prove this by means of a list of current residents of the Fireside Apartments complex showing the date of birth and disability status of each current resident. Such a list would be inadequate because it does not show any information about the age or disability status of the residents *as of* the date they were offered a unit at Fireside. Similarly, a list of disabled residents of public housing does not show whether these tenants were disabled *as of* the date they offered housing. Such a list would also fail to show based on their disabilities, or in spite of it, through the general waiting list.

In conclusion, even in the absence of any class allegations, the items requested are no broader than necessary to support plaintiff Matyasovszky's claims that punitive damages are justified by the BHA's intentional and persistent practice of denying that disabled applicants have a right to apply for public housing at the Fireside. Plaintiff must be allowed to perform an actual, case-by-case review of all the application decisions made by the BHA with respect to placement of disabled applicants, in order to show the pattern of discrimination. In addition, plaintiff's pattern of conduct is the only way to obtain indirect evidence that disabled applicants are being steered into buildings other than Fireside, as further discussed below in Section III.

As stated in both production requests, plaintiffs are willing to inspect these documents on site, thereby avoiding the need to copy each document.

### III.  DEFENDANTS' RELEVANCE OBJECTIONS ARE MERITLESS, BECAUSE A CONCENTRATION OF DISABLED TENANTS IN BHA COMPLEXES *OTHER* THAN FIRESIDE IS INDICATIVE OF STEERING.

Production Requested:

In **Request 22** of plaintiff's Second Request for Production, the plaintiff seeks to review application and tenancy materials of disabled persons whom the defendants have placed in complexes other than Fireside.

Defendants' Objection to Production:

In addition to objections analyzed above, defendants state that this request is not reasonably calculated to lead to admissible evidence.

<u>Plaintiff's Response:</u>

Information sought through discovery need only be germane to a claim or defense of the action to be subject to discovery, and even this revised version of Rule 26(b)(1) embraces discovery beyond the specific incident alleged in discrimination cases. <u>Anderson v. Hale</u>, 2001 WL 641113 at *1 (N.D. Ill., June 1, 2001) (noting that in discovery, "other incidents of the same type are relevant under amended Rule 26(b)(1)."); <u>accord</u>, <u>Thompson v. HUD</u>, 199 F.R.D. 168 (D. Md. 2001)(noting, in the context of a request for records dating back to 1933 from a housing authority, that "it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer."). Doubts over relevancy should be resolved in favor of permitting discovery. <u>Coker v. Duke & Co.</u>, 177 F.R.D. 682 (M.D. Ala. 1998). Broad disclosure is particularly necessary in discrimination cases, where plaintiffs seek evidence of the motive behind defendant's actions. <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 405-6 (5th Cir. 1983). Steering claims require such evidence of the defendants' motivations, in order to eliminate the possibility that the distribution of tenants was caused by some accidental or unrelated factor.

In its Amended Answer of September 12, 2003, the Bridgeport Housing Authority denies steering–i.e., segregating–disabled applicants by admitting them to other complexes, while excluding them from the Fireside complex. See Amended Answer at p.9, ¶ 45. Most evidence of steering is circumstantial, as described above in Section II of this brief. If steering has occured, some of the mixed population complexes owned by the BHA may contain a far greater percentage of disabled tenants than does the Fireside complex. However, the defendants will likely claim that such residency patterns result from factors in each individual's file other than which unit the BHA decided to offer the applicant. Since defendants, of course, have access to these files, it is only fair to offer the same access to the plaintiffs.

Access to the full application files is the only way to prove or disprove that steering occurred in this case. According to deposition testimony of Tracy Zennis, the Resident Selection Coordinator who personally made the decisions about which unit to offer each applicant, the BHA's lists of applicants are organized within a computer system, a copy of which has been produced by the defendants. However, the system's codes that do not express why a unit was offered or denied a particular applicant. See Deposition of Tracy Zennis, at pages 96-98, attached hereto as Exhibit E. Thus, there is only one source of direct evidence regarding the BHA's offer of units to disabled

applicants: the electronic notes and paper correspondence in the application files themselves. These files contain, for example, a copy of the actual letter sent to each applicant showing the specific unit that he or she was offered. Id. The application file may also contain notes about the applicant's response to the offer, and further offers, if any. Because these materials would show the BHA's involvement in any residency pattern that may emerge, they are highly relevant to the plaintiff's steering claim.

IV.   **ALL COMMUNICATIONS REGARDING THE "ELDERLY ONLY" DESIGNATIONS ARE SUBJECT TO DISCOVERY, AS THESE DOCUMENTS BEAR DIRECTLY ON AN ELEMENT OF PLAINTIFF'S CASE.**

Production Requested:

**Requests 4, 5, 10 and 31** of the **Second Request for Production** seek records of both internal and external communications regarding the designation status of BHA's mixed population units, at any time. Specifically, **Request 4** seeks communications with HUD, City of Bridgeport officials, or any non-profit entity located in the City of Bridgeport; **Request 5** seeks evidence of telephone calls, such as telephone bills for the extensions of the defendants, or any other communications with Joseph Wincze, the City of Bridgeport fair housing officer; **Requests 10 and 31** seek communications concerning the current designation (**Request 10**) or any changes in designation (**Request 31**) of

mixed population units owned by the BHA. The latter two requests are limited to communications generated after 1993 because that is the first year in which housing authorities could apply to limit the designation of mixed population housing.

Defendants' Objection to Production:

Defendants objected that each of these requests was burdensome and not reasonably calculated to lead to admissible evidence, based on the fact that they encompass documents for years other than 2002, the year in which the discriminatory acts against Mr. Matyasovzsky took place. Defendants have indicated in their objections that thousands of documents are responsive, but stated in conference that they does not believe there are any further documents that are responsive to these requests.

Defendants also raised vagueness objections to **Requests 4 and 5**. Defendants' questions regarding the meaning of these requests were resolved in the process of conferring with plaintiff's counsel. However, defendants have not agreed to production.

Plaintiff's Response:

The defendants have repeatedly represented that the Fireside complex is not now but will be designated for elderly only, both in deposition testimony and in response to the plaintiff's complaint before the Connecticut Commission on Human Rights and Opportunities. See Deposition of Jonas DeGuzman, attached hereto as Exhibit F. The

defendants or their agents have indicated similar policies or plans with respect to other complexes. Id. The plaintiff is trying to determine the following: what designations exist, if any, for the units of mixed population public housing that the BHA owns and operates, whether the BHA attempts to recruit appropriate applicants from local non-profit agencies, and what alternative housing resources the BHA intends to devote to the disabled persons, if it formally applies for elder-only designation for the Fireside. **Request 4** is unquestionably relevant because the plaintiff's past and future eligibility for the Fireside depends entirely on whether the complex is in fact mixed population housing. **Part (c) of Request 4** specifically seeks documentation of whether the BHA publicly holds out the Fireside as elder-only housing by recruiting only elders to live there. **Requests 10 and 31** are relevant and not overly burdensome because *all* comunications about the designation plans bear on the injunctive relief sought by plaintiff. With respect to the records of communications between various BHA staff members specifically with Mr. Wincze's office described in **Request 5**, any invoices, notes or messages that exist would aid in corroborating Mr. Matyasovszky's claim that he and Mr. Wincze communicated to the BHA.

The twelve-year time span these requests is necessary, since the defendants could have designated complexes at any point since the designation was first made available.

Although the time span may seem significant, very few documents are likely to be responsive–indeed, deposition testimony indicates that no responsive documents exist, because the BHA has never actually applied for any designation of any its properties. <u>See</u> Exhibit F. Thus, there is no realistic threat that defendants will to have to produce burdensome amounts of discovery. In addition, the analyses of relevance objections offered in Sections III is equally applicable to this Section.

Wherefore, the plaintiff seeks an order from this Court to compel production from the defendants of responses to all of the above-described Requests.

Respectfully submitted,

PLAINTIFF THOMAS MATYASOVSZKY

By_____
Jennifer Vickery, Esq.
(ct 24089)
1115 Main Street, Suite 415
Bridgeport, CT 06604
Tel.(203) 384-1245, Fax. (203) 384-1246
Email: alanrosner@aol.com

## CERTIFICATION

*overnight mail*

This is to certify that a copy of the foregoing has been sent by ~~facsimile~~ transmission on this 6th day of December, 2003 to:

Michael Ryan, Jeffrey Nagle, and James Mahar
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905-3057
Fax (203) 357-7915

_____
Commissioner of Superior Court