3:03cv968exhs5

A. It's basically the same thing. The only thing is that whomever inputted these codes in the system duplicated them.

Q. So it's a programming bug, as it were?

A. Yeah.

Q. And so the same thing happens when you input any of those four codes, 26, 30, 36 or 40?

A. Yes.

Q. And what is that that happens?

A. It's just a code showing you that the actual applicant is ineligible, but in the body of your information it will tell you why they are ineligible.

Q. So when you're actually looking on the system, you can see why the person was ineligible?

A. If you are going to the note files, yes.

Q. And do those codes generate any letter?

A. A letter is generated, yes.

Q. And what is the letter?

A. The letter should go -- for example, this one, number 24, says judgment. It would say on top of the letter that you are ineligible based on you having a judgment against you, or judgments. So we would change it accordingly to mean one, two, three or four judgments.

Q. Depending on how many judgments the person has?

A. Yes.

Q. And then the next one, 30, what does that generate?

A. It would be the same letter. Like I said, it's a duplication. Whomever put these in the system duplicated the numbers.

Q. So all of those ineligible codes simply generate a letter that refers to the number of judgments the person has against them? Is that what you mean?

A. No.

Q. What do you mean?

A. It's just an ineligible code, but you would have to actually go into that form letter, number 30 or number 26, and you actually have to formulate why. I usually explain to them why they are ineligible, but the letter on the system is just saying ineligible, because it doesn't get into the reasons.

Q. So all of the reasoning is supplied by the person sending the letter?

A. Exactly.

Q. And is it supplied, typed in brand new

each time, or are there different forms?

A. It is formulated. It's there, so you have to go in and you have to adjust it accordingly to each withdraws that you are doing.

Q. Are there different kinds of paragraphs that you can insert?

A. Yes.

Q. Or is it just -- what are the different kind of paragraphs?

A. It is a whole letter, a full scale letter, and you can go in and do paragraph one, two, three and four, and there are some of them we just have numbers or alphas at the site, saying you're ineligible because of this, and then you can take out B if B doesn't go with that withdrawal, and insert whichever one is suitable.

Q. And is there any paragraph among those ones that you can choose from in the system that has to do with people being disabled?

A. Oh, no.

Q. And there's no paragraph that has to do with people being too young?

A. Too young, yes, we do have one, because they have choices. If you are young and you want to live in housing on your own, you have choices. We



Q. That's your recollection, it's to make it for both elderly and disabled?

MR. MAHAR: Don't guess.

A. Okay.

Q. The answer is you don't know?

A. Not right now.

Q. Are there any other units or complexes for which plans of intent to change the designation have been submitted to HUD?

A. Yes.

Q. And which complexes or units are those?

A. Fireside is one, Harborview Towers is another, and Park City Manor when that project is complete, there's an intent there, Boston Commons is another. I think that's -- Boston Commons, I won't guess. It's not in the picture.

Q. You're not sure of Boston Commons?

A. I know that there's an intent to designate that. I just don't remember right now whether it's just for elderly only or elderly and disabled.

Q. And the intent, the plan of intent to change designation for Fireside was to change it to elderly only; is that correct?

A. Correct.

Q. And for Harborview was the plan of intent