FILED

2004 MAR 11  A 10: 06

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THOMAS MATYASOVSZKY, on behalf of himself
and other similarly situated,
          Plaintiff,

LINDA DEDRICK,
          Intervenor,    : CIVIL ACTION NO.
                                     : 3:03 CV 968 (WIG)
V.

HOUSING AUTHORITY OF THE CITY OF
BRIDGEPORT, et al.
                                       : MARCH 10, 2004
          Defendants.

### REPLY TO DEFENDANTS' OBJECTION
### TO JOSEPH AND SANDRA PELLECHIO'S MOTION TO INTERVENE

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Joseph and Sandra Pellechio are a couple, 54 and 53 years old respectively. After various disabilities left them with Social Security Disability benefits as their sole source of income, they applied to the Housing Authority of the City of Bridgeport ("BHA") for public housing in October of 2000. Upon being interviewed as part of the public housing application process, the Pellechios indicated their strong preference for Fireside. When told by the staff of the BHA that they could not be assigned to the Fireside complex because eligibility for that complex is limited to persons 62 years and older, the Pellechios were extremely disappointed. Nevertheless, they accepted a unit at the BHA's

Harborview complex on October 1, 2002, because they desired to stop burdening their adult daughter by living in her already overcrowded home.

On or about November of 2003, the Pellechios learned about a law suit brought by Thomas Matyasovszky alleging discrimination by the BHA against disabled applicants for public housing from the undersigned. They immediately contacted the undersigned to learn more. Upon learning of their right to live at Fireside, they immediately applied for a transfer to Fireside from Harborview. By January 14, 2004, they had filed the currently contested Motion to Intervene, which the defendants oppose by means of memorandum of law ("Obj. Mem.").

## II. ARGUMENT

Defendants offer two kinds of arguments in opposition to the Pellechio's Motion to Intervene: (A) the intervenor's claim is not timely; and (B) the intervenor's rights will be adequately protected by the current lawsuit, as they would be members of the proposed class. Defendants concede that "the would-be intervenor's allegations are substantially similar to those made by the plaintiff," see Obj. Mem. at 5 and 9, but urge that the intervenor's contribution would therefore be "minimal." The Pellechios argue in response that (A) they more than meet the standards for permissive intervention, both with respect to timeliness and the minimal level of interest required by Rule 24 to merit

intervention, and that their interests cannot be fully protected absent intervention, both because (B) the existence of the class of which defendants now argue the Pellechios are members has heretofore been opposed by the defendants, and (C) even if the proposed class is certified, the Pellechio's claims regarding their currently pending transfer application may not be adequately represented by Mr. Matyasovszky alone, because the defendants appear likely to raise different defenses on behalf of current Acting Executive Director Judit Grof-Tisza than they will on behalf of former Executive Director Collin Vice.

### A.  The Pellechios Meet Their Burden Under Rule 24(b).

Permission to intervene under Rule 24(b) may be granted at the discretion of the district court if the proposed intervenor to demonstrates "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." Beckman Indus., Inc., v. International Insurance Company, 966 F.2d 470, 472 (9th Cir. 1992) (citing Garza v. County of Los Angeles, 918 F.2d 763, 777 (9th Cir. 1990), cert. denied, 111 S. Ct. 681 (1991)). "To the extent that a district court's ruling on a motion to intervene as of right is based on questions of law, it is reviewed *de novo*; to the extent that it is based on questions of fact, it is ordinarily reviewed for abuse of discretion." Mova Pharmaceutical Corp. v. Shalala,

140 F.3d 1060, 1074 (D.C. Cir. 1998) (reversing as abuse of discretion denial of motion to intervene); Matter of Vitreous Steel Products Company v. Miller, 911 F.2d 1223 (7th Cir. 1990) (same); Venegas v. Skaggs, 867 F.2d 527 (9th Cir. 1989) (same).  District courts have discretion under Rule 24(b) to "determine the fairest and most efficient handling of a case . . .", see SEC v. Everest Management Corp., 475 F.2d 1236, 1240 (2d Cir. 1972), but denying intervention is an abuse of discretion where the basic requirements for intervention are met and there is no evidence that intervention will prejudice the original parties.  See Venegas, 867 F.2d at 530 (citing Crumble v. Blumthal, 549 F.2d 462, 468-69 (7th Cir. 1977).  The Pellechio's application meets these standards.

The defendants claim that intervention by the Pellechios is untimely, despite the fact that they intervened just eight weeks after discovering that they had an interest in the lawsuit.

For purposes of considering whether an application for intervention is timely, the "clock" ticks from the moment the applicant knew or should have known of his interests in the suit.  See Edwards v. Houston, 78 F.3d 983 (5th Cir. 1996) (noting that there are "no absolute measures" of timeliness).  By this fact specific standard, even motions to intervene after trial are occasionally granted as timely.  Timeliness is evaluated not as a technical bar, but in reference to whether the timing of the intervention will prejudice the

defendants. See, e.g., Beckman, 966 F.2d at 473-75 (9th Cir. 1992) (affirming district court's grant of intervention after the conclusion of underlying litigation). The fact that discovery is underway–the primary form of prejudice offered by the defendants as reason for denying the Pellechio's request–weighs in favor of their intervention. The Pellechio's application to intervene comes so early in this law suit that the parties will not even encounter the minor inconvenience of altering the discovery schedule. Indeed, defendants, apparently operating on the assumption that the Pellechios will become a party to this case, have already noticed their depositions for March 16, 2004.

In addition, because this action was filed as a class action, and has been prosecuted as such by the plaintiff throughout, it is difficult to come up with any specific way in which the judicial process will be "frustrated" by the intervenor's participation. Obj. Mem. at 8. Defendants have, in effect, always had notice of and access to the facts about the Pellechios that justify their intervention–i.e., their application for public housing. Moreover, defendants have failed to describe with specificity any difficulties that will be presented by their intervention.

**B.     The Pellechio's Claims May Not Be Adequately Represented Unless Intervention Is Permitted, Because the Proposed Class Has Yet to Be Certified.**

The defendants contend that intervention is unnecessary because the current law

suit will adequately protect the Pellechio's interests as class members, see Obj. Mem. at 7-9, even as they advocate against certification of a class. Intervenors must demonstrate only that the representation of the current plaintiffs' interests "may" be inadequate to protect their own. See, e.g., Supreme Beef Processors, Inc. V. United States Department of Agriculture, 275 F.3d 432, 437-38 (5th Cir. 2001) (where current plaintiff's pending bankruptcy created the possibility that plaintiff would be liquidated, thereby mooting the case into which intervention was sought, intervention was justified); Jordan v. Michigan Conference of Teamsters Welfare Fund, 207 F.3d 854, 863 (6th Cir. 2000) (noting that an intervenor need not demonstrate that he or she *will in fact* be inadequate, only that it "may be.").

Intervenors–whether under 24(a) or 24(b)-- must have standing. As demonstrated in her Complaint in Intervention, the Pellechios meet the jurisdictional requirements for filing suit on the merits on her own behalf. Defendants do not contest her standing. However, they have contested that of the plaintiff in the underlying action, Mr. Matyasovszky. As in Suprema Beef, the proposed intervenosr must become plaintiffs if they are to avert the possibility that the current plaintiff's action will be dismissed to their prejudice. The defendants have claimed in their Objection to Plaintiff's Motion for Class Certification that Mr. Matyasovszky has no standing, and have asserted in their Answer

that Mr. Matyasovszky has failed to state a claim for which relief can be granted. Should the defendants' motion succeed, the Pellechios would be left unprotected and the case dismissed for reasons unrelated to the viability of her claims. Filing yet another entirely separate case at that point, as the defendants suggest, would be a tremendous waste of judicial resources, as well as imposing an additional hardship on a disabled, indigent plaintiff.

C.   **Even If The Court Certifies the Class, Intervention is Necessary Because the Defendants Intend to Raise New Defenses against the Pellechio's Claims.**

Defendants contend that the proposed intervenor's claims for equitable and declaratory releif can and will be fully litigated by Mr. Matyasovszky alone as class representative. This position cannot be maintained, however, following the defendants' opposition to the plaintiff's motion to add Judit Grof-Tisza, the current Acting Executive Director of the BHA. In their Memorandum filed March 3, 2004, the defendants argue against the involvement of the Acting Executive Director based on the fact that (1) Judit Grof- Tisza personally was not employed in this capacity during the period relevent to the claims by Mr. Matyasovszky; and (2) since becoming Acting Executive Director, she has offered another proposed intervenor an apartment at Fireside. Although the defendants claim that these facts demonstrate that Ms. Grof-Tisza herself has not defended any former policy of discrimination that the BHA may have had, the offer of a Fireside

Apartment to Ms. Montes followed her request for a Temporary Restraining Order holding a vacant unit at Fireside for Ms. Montes. Even if this tacit acknowledgement that Ms. Grof-Tisza may claim to have adminstered senior/disabled housing policies differently than her predecessor is ignored, the BHA's decisions to terminate and investigate its former Executive Director, defendant Collin Vice, by themselves create a strong likelihood that different defenses will be brought by the co-defendants in this matter. See Reginald Johnson, "BHA Seeks U.S. Probe of Spy Eye--Wants Feds to Determine If Criminal Acts Occurred" *Connecticut Post*, March 10, 2004. Because courts generally hold a class member seeking to be named as a party to a case responsible for fulfilling the requirements to intervene, cf. Baker v. Wade, 769 F.2d 289, 297 (5th Cir. 1985), en banc, (Rubin, J. dissenting), intervention by a class member will be necessary in order to fully protect the interests of those class members whose applications are currently being processed under Ms. Grof-Tisza's direction.

## CONCLUSION

The proposed intervenor has met her burden of showing that her claims against the BHA and its staff involve questions of law and fact common to those of plaintiff Thomas Matysovszky, and that her intervention will not unduly delay or prejudice the

adjudication of the rights of the original parties, as required for permissive intervention under Fed. R. Civ. P. 24(b). Therefore, the Pellechios should be permitted to intervene.

Respectfully submitted,

PLAINTIFF THOMAS MATYASOVSZKY

By_____
Jennifer Vickery, Esq. (Ct24089)
Law Offices of Alan Rosner
1115 Main Street, Suite 415
Bridgeport, CT 06604
Tel. (203) 384-1245
Fax. (203) 384-1246

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent by mail on this 10th day of March, 2004 to:

James Mahar and Michael Ryan
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905

_____
Commissioner of Superior Court