**FILED**

2004 MAY -6 P 3: 32

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS MATYASOVSZKY, on behalf of himself and all others similarly situated, | : : |
| Plaintiff, | : |
| V. | : CIVIL ACTION NO. : NO. 3:03 CV 968 (WIG) |
| | : |
| HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT, COLLIN VICE, individually and in her official capacity as former Executive Director of the Housing Authority of the City of Bridgeport, JONAS DEGUZMAN, individually and in his official capacity as Special Assistant to the Executive Director, and JUDIT GROF-TISZA, individually and in her official capacity as Acting Executive Director of the Housing Authority of the City of Bridgeport, | : : : : : : : : : : : APRIL 13, 2004 : |
| Defendants. | : |

**PROPOSED AMENDED CLASS ACTION COMPLAINT**

INTRODUCTION

1. This is a class action lawsuit brought by plaintiff Thomas Matyasovszky on behalf

of himself and low income, disabled tenants to redress years of intentional discrimination

by the Housing Authority of the City of Bridgeport ("BHA") against disabled people

seeking affordable housing with the BHA. For at least the past three years, the defendants

have unlawfully excluded non-elderly disabled persons from residing in an apartment

1

complex, the Fireside Apartments, that is  funded and designated for both elderly and disabled tenants.  Defendants have excluded disabled applicants and tenants from Fireside with full knowledge that they were required to obtain permission for such a policy and practice from their funding source, the United States Department of Housing and Urban and Development. ("HUD").  Defendants' unlawful actions have continued to the present day despite notice   that they are violating fair housing laws.

2.   Plaintiff Thomas Matyasovszky, on behalf of himself and others similarly situated, therefore, seeks injunctive, declaratory and monetary relief against the defendants for  (1) denying to people with disabilities the opportunity to rent an apartment at a senior/disabled housing complex owned and operated by the BHA, (2) steering people with disabilities from a senior/disabled housing complex to other complexes owned by the BHA, and (3) misrepresenting to people with disabilities the availability of senior/disabled housing owned and operated by the BHA.

3. The BHA owns and operates the Fireside Apartments, a senior/disabled apartment complex containing approximately two hundred forty eight units.  In exchange for funding from the United States Department of Housing and Urban Development ("HUD"), public housing authorities like the BHA agree to operate public housing developments like the

2

Fireside Apartments according to federal statutes and regulations.    Public housing authorities originally built housing for both seniors and families.  In 1961, Congress broadened the definition of an eligible "elderly family" to include disabled persons under the age of 62 on the same terms as elderly persons 62 or older.  Since 1992, federal law has provided that if public housing authorities specify precisely how they have provided for the housing needs of the excluded group, then they may apply to HUD for approval to designate a given complex as "elderly-only."  However, unless and until a public housing authority has received such a designation from HUD, it is required to house both types of applicants.  The BHA denies housing at Fireside to the disabled even though it has neither sought nor obtained an elderly-only designation from HUD.

4.  The BHA has operated the Fireside Apartments as an elderly-only complex without HUD approval since at least 1999.  On October 19, 1999, the Director of the Bridgeport Fair Housing Office, Joseph Wincze, informed counsel for the BHA that their Fireside complex was being operated in violation of federal law.  Nonetheless, the BHA continued to operate the Fireside Apartments unlawfully, and continued categorically denying all disabled tenants an opportunity to rent apartments located there.  Over three years later, on December 2, 2002, Mr. Wincze again informed the BHA that Fireside

3

Apartments was being unlawfully operated as an elderly only complex in violation of the rights of disabled tenants. The defendants have admitted that Fireside Apartments has been and continues to be operated as an elderly only complex. Defendants, however, continue to deny disabled tenants the chance to rent a unit at this complex.

5. Plaintiff Thomas Matyasovszky is a 57 year old man with a permanent mobility impairment. A former janitor for the City of Bridgeport, he relies upon his disability pension as his household's sole source of income. On or about November 14, 2002, Mr. Matyasovszky inquired about housing with the defendant BHA and expressed a special interest in the Fireside Apartments because they are accessible to mobility impaired people.. He was told by BHA officials and employees that he could not apply nor be eligible for an apartment at Fireside because that complex is strictly for residents 62 years of age or older.

6. The plaintiff class seeks injunctive relief compelling the defendants to cease their discriminatory conduct, declaratory relief declaring that defendants violated federal and state fair housing laws and the United States Housing Act, and retroactive remedial relief creating a separate waiting list for elderly and disabled applicants and placing all elderly and disabled applicants currently on the BHA waiting list onto such list, or providing them with an apartment at Fireside. Plaintiff also seeks compensatory and punitive damages and

4

attorneys' fees.

JURISDICTION AND VENUE

7.  Pursuant to 28 U.S.C. Sections 1331 and 1343 (a) (3), jurisdiction is proper in that plaintiff's claims alleged herein arise under federal law.

8.  Pursuant to 28 U.S.C. Section 1367, jurisdiction over the plaintiff's state law claim is proper because this claim is related to his federal law claims, arises out of a common nucleus of related facts, and forms part of the same case and controversy under Article III of the federal constitution.

9.  Venue is proper in that the facts giving rise to the claims alleged herein occurred in Bridgeport, Connecticut.

PARTIES

10.  Plaintiff Thomas Matyasovsky is a non-elderly, low income resident of the City of Bridgeport who has disabilities and handicaps, as those terms are defined for purposes of the Fair Housing Act, the Rehabilitation Act, the Americans with Disabilities Act, and Connecticut General Statutes Section 46a-64(c).   He meets, and at all relevant times has met, the qualifications for residence in the senior/disabled apartment complex known as the Fireside Apartments.

5

11. Defendant BHA is an independent public corporate body established pursuant to Connecticut General Statutes Section 8-40 et seq. It owns and operates public housing complexes, including the Fireside Apartment complex, which is a senior/disabled complex for a mixed population within the meaning of 24 C.F.R. Section 960.102.

12. Until on or about December 22, 2003, defendant Collin Vice was the Executive Director of the BHA. She was replaced by Acting Executive Director Judit Grof-Tisza. They are sued in their individual and official capacities.

13. Defendant Jonas DeGuzman is the Special Assistant to the Executive Director of the BHA. He is sued in his individual and official capacities.

FACTS

14. At all relevant times, the BHA owned and operated the Fireside Apartments ("Fireside"), a mixed senior/disabled population complex located at 655 and 730 Palisade Avenue, and 75 Stewart Street, in Bridgeport, Connecticut. Fireside is funded through the federal government's Public and Indian Housing program of the United States Housing Act, 42 U.S.C. Section 1437 et seq., as amended.

15. Under the Housing Act of 1937, local public housing authorities build, own and operate housing for low and moderate income persons. In exchange, for funding from the federal government, housing authorities agree to operate public housing developments

6

according to federal statutes and regulations.    Congress has required public housing authorities to permit disabled non-elders to live in senior/disabled apartment complexes since 1961.    Such complexes are defined in the relevant regulations as "mixed population" complexes.

16.    In a mixed population complex, the defendant BHA is required ". . . to give preference to  elderly families and disabled families equally in determining priority for admission to mixed population projects.  The PHA may not establish a limit on the number of elderly families or disabled families who may be accepted for occupancy in a mixed population development." 24 C.F.R. Sec. 960.407.

17.    Public housing authorities may designate mixed population projects as elderly-only or as disabled-only and  determine priority for admission according to that designation, *provided that* a designation plan meeting the requirements of the Housing Opportunity Program Extension Act and the implementing regulations is approved by HUD.  42 U.S.C. Section 1437e(a)(1) and (d).   The designation plan must, *inter alia*, describe the additional resources or housing assistance that will be  provided  to persons who will be excluded from a complex by a restrictive designation.  The defendant BHA has not filed an elderly-only designation plan for the Fireside Apartments.

7

18. The defendants operate Fireside as an elderly-only project, and have done so since at least in or about October of 1999.  In the absence of such designation, however, the Fireside remains a mixed population complex and should be operated accordingly.

19.  Defendants have been aware that their operation of Fireside as an elderly-only project is unlawful since at least October 19, 1999, when they were so notified by letter from Bridgeport Fair Housing Officer Joseph Wincze.  See Exhibit A attached hereto. Mr. Wincze again brought the unlawful nature of defendants' operation of Fireside to defendants' attention in a second letter, written over three years later on December 2, 2002, to defendant Collin Vice.  See Exhibit B attached hereto.

20. Defendants maintain only one waiting list for all applicants for housing owned by defendant BHA.  They do not maintain a separate waiting list for elderly and/or disabled tenants.

21. Tenants who seek an apartment from defendants are given a "Pre-Application for Low Income Public Housing".  Tenants complete this form, submit it to BHA's Application Department, and are placed on a single waiting list.  Disabled applicants are given no preference for senior/disabled unit at Fireside, as required by law.

22.  When an elderly applicant arrives at the top of the general waiting list, such

8

applicant is granted a preference for, and may be offered any apartment available at Fireside. In contrast, when a disabled applicant arrives at the top of the waiting list, he or she is not offered an apartment at Fireside, even if there is a vacancy there. Disabled applicants' opportunities are limited to the same pool of apartments offered to non-elderly, non-disabled applicants.

FACTS - PLAINTIFF THOMAS MATYASOVSZKY

23. On or about November 14, 2002, plaintiff Thomas Matyasovszky telephoned the BHA to inquire about renting an apartment located at Fireside.

24. Mr. Matyasovzsky and his wife had been informed by their current landlord that the building in which they have resided for 11 years had been put up for sale. The Matyasovszkys, therefore, understood that they were in need of alternative housing.

25. Mr. Matyasovszky was employed by the City of Bridgeport for 20 years, until a fall down a stairwell while working in 1991 left him permanently disabled and unable to work. Mrs. Matyasovszky was laid off from her job in June of 2001 when her corporate employer moved its plant out of state. Faced with the necessity of moving with limited financial resources, the Matyasovszkys decided to apply for federally subsidized housing.

26. Mr. Matyasovszky wanted to apply for housing at Fireside because he understood

9

it to be a complex specifically for the elderly and disabled and because it was accessible to mobility impaired people like himself. He perceived the housing for the elderly and disabled to be safer and better maintained than other types of public housing complexes owned and/or operated by the BHA.

27. When Mr. Matyasovszky called the BHA's number for the Fireside Apartments on November 14, 2002, an unidentified female staff person determined plaintiff's age and the fact that he was disabled and then told him that the Fireside Apartments are only for persons 62 years of age or older. He was told that he was too young. Mr. Matyasovszky explained his desire to apply for an apartment at Fireside, and that he is eligible for admission based on his disability. He asked to be given a pre-application form to fill out. He was again told that he could not be granted an apartment at Fireside because he was not yet 62 years old.

28. Mr. Matyasovszky did not complete a pre-application because the BHA staff would not give him one after they learned of his age and disability. BHA staff implemented defendants' policy and practice of discouraging Mr. Matyasovszky and others similarly situated by making misleading and false statements that convinced him that applying would be futile.

29. On or about November 14, 2002, Mr. Matyasovszky filed a complaint with Joseph

10

Winzce of the City of Bridgeport's Fair Housing Office.

30.    In or about November, Mr. Wincze contacted defendant Jonas de Guzman regarding Mr. Matyasovszky's eligibility as a disabled person for an apartment at Fireside. Mr. Guzman stated that defendant BHA had established a policy and practice of telling applicants that the Fireside Apartments are only for persons 62 years of age or older, and of offering apartments only to such persons.

31.    On December 2, 2002, Mr. Wincze submitted a letter to defendant Collin Vice, on Mr. Matyasovsky's behalf.  Mr. Wincze's letter advised the defendant BHA of its obligation to accept applications from disabled persons, and to give disabled applicants equal preference with elderly applicants for apartments at Fireside, in compliance with HUD regulations.

32. On or about December 16, 2002, Mr. Matyasovszky, with assistance from Mr. Wincze, submitted a complaint to the State of Connecticut's Commission on Human Rights and Opportunities ("CHRO").  The substance of this complaint is that the defendants had denied him the opportunity to apply to the Fireside Apartments because of his age and disability.

33.    The defendants have responded to the CHRO complaint by stating an intent to

11

apply for approval from HUD to operate Fireside Apartments as an elderly-only project and to submit a plan which complies with the requirements of 42 U.S.C. Section 1437e. Upon information and belief, defendants have not yet requested permission from HUD to operate Fireside as an elderly-only project, have no immediate intent to do so, and continue to operate the project in a manner that unlawfully discriminates against disabled people.

34. By reason of defendants' unlawful acts and practices, Mr. Matyasovsky has suffered loss of a housing opportunity, economic losses, violations of his civil rights, emotional and physical distress, humiliation, embarrassment, and mental anguish.

35. The actions of the defendants were performed with malicious motive and intent or involved reckless and callous indifference to Mr. Matyasovszky's rights under law.

FACTS - CLASS ACTION

36. Class Definition. This action is brought by class representative Thomas Matyasovszky, on behalf of himself and others similarly situated. Specifically, the class will consist of all disabled persons who have been, are being, or will be subjected to the discriminatory policies or practices of the BHA because of their disabilities while applying or attempting to apply for senior/disabled housing operated by defendants.

37. Class Prerequisites Under Rule 23 (a).

12

A.    Numerosity. The precise number of members of the class on whose behalf the
plaintiff sues is unknown, but is estimated to be so numerous that joinder of
all such members would be impracticable.  The members of the class on
whose behalf the plaintiff sues are disabled and therefore likely to lack the
financial means or professional advice necessary to maintain individual
actions, thus rendering joinder impracticable.

B.    Commonality. The members of the class on whose behalf the plaintiff sues
will be affected by common questions of law and fact in that all members, as
disabled, non-elderly persons, are or would be subjected to the same
discriminatory policies and practices by the BHA These questions include:

1)    Whether the defendants violated federal and state fair housing laws by
denying or otherwise making unavailable rental housing at the
Fireside Apartments complex to persons with disabilities;

2)    Whether the defendants violated federal and state fair housing laws by
discriminating in the terms or conditions of rental of a dwelling
because of handicap;

3)    Whether the defendants violated federal and state fair housing laws by

13

making statements that indicate a that disabled tenants may not apply

or be accepted for housing at the Fireside Apartments;

4) Whether the defendants violated federal and state fair housing laws by

misrepresenting the availability of housing at the Fireside Apartments.

B. <u>Typicality.</u> The claims of the named plaintiff, as a disabled, non-elderly

person who suffered discrimination perpetrated by the defendants are typical

of the claims of the class.

C. <u>Adequacy of Representation.</u> The named plaintiff will fairly and adequately

represent the interests of the unnamed members of the class, and all members

of the proposed class will benefit thereby. The named plaintiff have no

interests which are in conflict with those of the class members generally. The

named plaintiff and the plaintiff class are represented by counsel that is

qualified, competent, and experienced in the practice of fair housing law

generally, and in the prosecution of class actions specifically.

38. <u>Class Maintainable Under Rule 23 (b).</u> The class is maintainable based on Rule

23(b)(2), because the defendants, through their agents, employees, and predecessors and

successors in office, have acted and are likely to continue to act on grounds generally

14

applicable to the proposed plaintiff class, thereby making appropriate declaratory and/or injunctive relief with respect to the class as a whole.

39.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications.

40.  The defendants, acting individually and in concert with others, directly and through their agents, have engaged in a pattern or practice of discriminating against persons with disabilities on account of their disabilities in the operation of the senior/disabled Fireside complex. Defendants have pursued this pattern or practice of disability discrimination for the purpose or with the effect of excluding persons with disabilities from residing at the Fireside complex.

41.  There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws. Accordingly, the plaintiff class is entitled to declaratory relief.

42.  Unless enjoined, the defendants will continue to engage in the unlawful acts and the pattern and practice of discrimination described above. The plaintiff class has no adequate remedy at law. The plaintiff class is now suffering and will continue to suffer irreparable injury from the defendants' acts unless relief is provided by this Court.

15

Accordingly, the plaintiff class is entitled to prospective injunctive relief and retroactive remedial relief staying the rental of apartments at Fireside until defendants recognize and grant an equal preference for senior/disabled housing operated by defendants to disabled people who have applied and who have attempted to apply for such housing.

COUNT I – FEDERAL AND STATE FAIR HOUSING ACTS – 42 U.S.C. § 3601 et seq. and Connecticut General Statutes Section 46a-64c

43.    The plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of this complaint.

44.    The plaintiff is a "handicapped" and "aggrieved" persons within the meaning of the federal Fair Housing Act and the Connecticut Fair Housing statute.

45.    The defendants have injured the plaintiff by engaging in discriminatory practices in violation of the federal Fair Housing Act, including:

A.    refusing to rent or otherwise making a dwelling unavailable because of a handicap, in violation of 42 U.S.C. Section 3604(f)(1);

B.    discriminating in the terms and conditions of rental of a dwelling because of a handicap, in violation of 42 U.S.C. Section 3604(f)(2);

C.    making, or causing to be made, statements with respect to the rental of a

16

dwelling which indicated a preference, limitation, or discrimination based on handicap, in violation of 42 U.S.C. Section 3604(c);

D.    representing to persons, because of their handicap, that a dwelling is unavailable for inspection or rental when such dwelling is in fact available, in violation of 42 U.S.C. Section 3604(d);

COUNT II - SECTION 504 OF THE REHABILITATION ACT - 29 U.S.C. SECTION 794 ET SEQ.

46. The plaintiff realleges and incorporates by reference paragraphs 1 through 42 of the complaint herein.

47. The plaintiff is an "otherwise qualified individual with a disability" under 24 C.F.R. Section 8.3 and meets the essential eligibility requirements for the senior/disabled apartment complexes owned by the defendant BHA.

48. The defendants injured the plaintiff in violation of Section 504 of the Rehabilitation Act by engaging in the following discriminatory practices including, but not limited to:

A. Excluding the plaintiffs from participation in, denying plaintiff the benefits of, or subjecting the plaintiff to discrimination in a program or activity receiving federal financial assistance solely by reason of his handicap or disability, in violation

17

of 29 U.S.C. Section 794.

COUNT III - TITLE II OF THE AMERICANS WITH DISABILITIES ACT - 42 U.S.C. 12131

49. The plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 of the complaint herein.

50. The plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. Section 12131(2) and meet the essential eligibility requirements for the elderly/disabled complexes owned by the defendant BHA.

51. The defendants are a "public entity" pursuant to 42 U.S.C. Sections 12131(1)(A) and (B), which includes any local government and department, agency or instrumentality of a local government and the BHA's housing programs are a "service, program or activity" within the meaning of 42 U.S.C. Section 12132. Defendants are thereby required under the ADA to administer their housing programs in a non-discriminatory manner.

52. The defendants injured the plaintiff in violation of the Americans with Disabilities Act by engaging in the following discriminatory practices including but not limited to:

Excluding plaintiff from participation in or denying them the benefits of the services, programs or activities of a public entity or subjecting plaintiff to discrimination by any such entity, in violation of 42 U.S.C. Section 12132.

18

COUNT IV - THE UNITED STATES HOUSING ACT AND ITS REGULATIONS; 42 U.S.C. §1983

53. The plaintiff realleges and incorporates by reference paragraphs 1 through 42 of the complaint herein.

54. The defendants have injured the plaintiff in violation of the United States Housing Act of 1937 and its implementing regulations by refusing to implement a mandatory regulation requiring that disabled applicants be admitted on an equal basis with elderly tenants to senior/disabled housing.

55. The defendants have deprived plaintiff of her rights, privileges, and immunities secured by the United States Housing Act of 1937 and its implementing regulations. Such violations are actionable under 42 U.S.C. § 1983.

COUNT V - FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; 42 U.S.C. §1983

56. The plaintiff realleges and incorporates by reference paragraphs 1 through 42 and 53 through 55 of the complaint herein.

57. The defendant BHA is a state actor, and the individual defendants, acting in their official and supervisory capacities as employees and officers of the BHA are state actors, for purposes of the Due Process Clauses of the Fifth and Fourteenth Amendments

19

to the federal constitution.

58. The plaintiff possesses a property interest in being permitted to apply for
senior/disabled public housing, and receiving fair consideration of their applications, in
accord with all relevant regulations, regulatory guidance from the United States
Department of Housing and Urban Development ("HUD") including the HUD Handbook,
HUD Notices, and the BHA Admissions and Continued Occupancy Plan.

59. At all relevant times, defendants Vice, DeGuzman and Grof-Tisza had actual
or constructive knowledge of the illegality the BHA's practices and policies for assigning
applicants to senior/disabled housing, including knowledge that:

A.    the BHA's practice of failing to inform disabled persons of their
eligibility for senior/disabled housing, and denying disabled
persons an opportunity to demonstrate their eligibility for
senior/disabled housing violates its own Admissions and
Continued Occupancy Plan and 24 C.F.R. § 960.206;

B.    the BHA's practice of using a separate list to expedite the
admission of elderly, but not disabled persons, to senior/disabled
housing violates its own Admissions and Continued Occupancy
Plan and 24 C.F.R. § 960.407 ; and

20

C.     The BHA's practice of offering units of senior/disabled housing to

non-disabled, "near-elderly" persons first, so that disabled persons

who applied earlier are offered housing later violates its own

Admissions and Continued Occupancy Plan, 24 C.F.R. § 960.407,

and 42 U.S.C. 1437a(b)(3).

60. Upon being named Acting Director of the BHA on or about December 23,

2003, defendant Grof-Tizsa had actual or constructive knowledge of the illegality of the

BHA's customs, policies, and procedures for assigning applicants to senior/disabled

housing.

61. As the Acting Director of the BHA, on or about January 5, 2004 defendant

Grof-Tisza was served, individually and in her official capacity, with a complaint in a

companion case, <u>Montes v. Housing Authority of City of Bridgeport, et al</u>, 3:04 CV 1

(WIG), alleging continuation of the BHA's discriminatory customs, policies, and

procedures. Thereafter, Defendant Grof-Tisza failed and refused to eliminate the BHA's

unlawful customs, policies, and procedures as alleged in that complaint, or to bring the

BHA's admission's procedures into compliance with the policies set forth in its

Admissions and Continued Occupancy Plan.

62. The defendants' actions violate the plaintiff's right to due process under the

21

Fifth and Fourteenth Amendments to the United States constitution by preventing him

from applying for or being considered for senior/disabled public housing in accord with

all relevant regulations, regulatory guidance from the United States Department of

Housing and Urban Development ("HUD") including the HUD Handbook, HUD Notices,

and the BHA Admissions and Continued Occupancy Plan.

.

## PRAYER FOR RELIEF

Wherefore, the plaintiff prays for the following relief:

1. That a class be certified in this action pursuant to Rule 23(a) and Rule 23(b)(2)

of the Federal Rules of Civil Procedure;

2. That the plaintiffs be offered remedial relief according to their proof;

3. That the Court enjoin all unlawful practices complained about herein and

impose affirmative injunctive relief requiring the defendants, their partners, agents,

employees, assignees, and all persons acting in concert or participating with them, to take

affirmative action to provide equal housing opportunities to all tenants and applicants

regardless of disability or handicap, and to conform their current practices for admitting

applicants to mixed population public housing to federal law and their own Admissions

and Continued Occupancy Plan;

22

4. That the Court declare that the defendants have violated the provisions of applicable federal and state fair housing laws;

5. That the Court award plaintiffs compensatory damages;

6. That the Court award plaintiff punitive damages;

7. That the Court grant costs of the suit and reasonable attorneys' fees; and

8. That the Court grant such other and further relief as the Court deems just.


THE PLAINTIFF–THOMAS MATYASOVSZKY

Alan Rosner, Esq. (CT10414)
Jennifer Vickery, Esq. (CT24089)
1115 Main Street, Suite 415
Bridgeport, CT 06604
Tel (203) 384-1245
Fax (203) 384-1246

23

Commissioners:
PAUL T. BARNUM
GORDON CLARK
JAMES MORTON, III
ANTHONY FERREONE
IONE MYERS

*City of Bridgeport*

# FAIR HOUSING OFFICE
## DEPARTMENT OF HOUSING



*Bridgeport*

45 Lyon Terrace
Bridgeport, Connecticut 06604
Telephone (203) 576-8321

JOSEPH WINCZE, JR.
Director

October 19, 1999

Joseph A. Siciliano
Attorney at Law
3333 Main Street
Stratford, CT  06614

Dear Attorney Siciliano,

    This letter is being sent in follow-up to our phone conversation yesterday.  As I had mentioned to you, I was simply responding to a letter received from Connecticut Legal Services regarding a letter they had received from you indicating that Fireside Apartments was a designated senior citizen complex by the Bridgeport Housing Authority.  I was not calling you in regards to a specific client or case but was simply concerned that a particular class of people— persons with disabilities regardless of age— possibly were being excluded for occupancy at Fireside who were otherwise eligible.  My concern was that they were being excluded because they weren't 62 years of age or more.

    Now my understanding is that prior to the Housing and Community Development Act of 1992, the definition of an "elderly family" included not only a family containing a head of household who was at least 62 years of age BUT ALSO a disabled person (regardless of age). (see enclosed definition in attachment)  Now subsequent to this Act, PHA's were allowed to have designated senior citizen or "elderly" complexes which were exclusively for those 62 years of age or older and exclude those who were disabled under 62 BUT ONLY if they submitted a plan to and received approval from HUD.  To my knowledge, no such plan was submitted by the Bridgeport Housing Authority regarding Fireside Apartments.

FROM :                              FAX NO. —:                        EXHIBIT A, p.2
                                                              Jan. 16 2003 12:31PM  P3

2.

      If in fact no such approval was received from HUD, it is my understanding that Fireside Apartments must, therefore, continue to allow it to be made available for housing both those who are elderly as well as those who are disabled regardless of age. Initially, I thought maybe it was simply a big misunderstanding and a case of semantics until our discussion yesterday when you pointed out that Fireside has always been "elderly only"-exclusively for people 62 years of age or older. Now I confess to being deeply concerned and I believe we definitely need to get this point clarified. Please contact me once you have discussed the issue with the Bridgeport Housing Authority's Executive Director so I can put my mind at ease. Enclosed please see copy of the Code of Federal Regulations 945.201 and 945.203 which includes the current procedures which must be followed for a PHA to designate housing as "elderly-only housing". Please contact me if you have any questions. Thank you.

Sincerely yours,

Joseph Wincze, Jr.
Director- Bridgeport Fair Housing

Enclosures

# FAIR HOUSING OFFICE
## DEPARTMENT OF HOUSING



Commissioners:
PAUL T. BARNUM
CHRISTINA CALLAWAY
WARREN GODBOLT
ETHEL L. MATTHEWS
IONE MYERS

JOSEPH WINCZE, JR.
Director

45 Lyon Terrace
Bridgeport, Connecticut 06604
Telephone (203) 576-8323

December 2, 2002

Ms. Collin Vice
Executive Director
Bridgeport Housing Authority
150 Highland Avenue
Bridgeport, CT 06604

Dear Ms. Vice,

I would like to bring an urgent matter to your attention regarding the apparent designation of Fireside Apartments as an 'elderly-only complex' restricted to tenants of 62 years of age and older. In discussing this issue with both Tracy Zennis of Applications and Special Assistant Jonas DeGuzman of your staff, they have both verified that this is indeed the policy— meaning these apartments are not available to disabled tenants under age 62. Now my understanding is that 'elderly housing' provided by a PHA should be available to both tenants 62 years of age and older _and_ disabled tenants _regardless of age_ _unless_ permission is received from HUD to restrict the units to 62 and over. As far as I can determine, such permission has not been received and has not even been requested by the Bridgeport Housing Authority.

Upon my review of the BHA 2002 Plan, there is, in fact, a statement which reads as follows:

> "At this time, the BHA has not applied for HUD approval to designate any public housing for occupancy only by the elderly families or only by families with disabilities, or by elderly families with disabilities."

This statement seems to imply that the Bridgeport Housing Authority is cognizant of their obligation to do so before any such policy of restriction can be put in effect; so I am curious why there is such a policy in place, nevertheless. Furthermore, in my recent discussion with Ms. Bobbi Jones, HUD Program Coordinator for the Office of Public Housing, she has indicated to me that until the Bridgeport

2.

Housing Authority has applied and received approval for such designation, they have no authority to carry out their current restricted policies.

At this time, therefore, I strongly urge you to immediately cease your policy of limiting tenancy in the Fireside Apartments to those 62 years of age and older and begin receiving applications from those who are otherwise eligible for such housing because of their disability but are under 62. Currently, I have two complainants who are disabled and told they were not eligible for Fireside due to their age. This situation needs to be rectified. If I do not hear from you within the next week, we will be filing complaints of discrimination with the Connecticut Commission On Human Rights and Opportunities. Thank you.

Sincerely yours,

Joseph Wincze, Jr.
Director

cc: Betty Jones- HUD

EXHIBIT B, p.2

## CERTIFICATION

This is to certify that a copy of the foregoing has been served on this 123th day of
April, 2004 by regular first class mail postage prepaid to Michael Ryan, Esq.,
Ryan, Ryan, Johnson & Deluca, LLP, P.O. Box 3057, 80 Fourth Street, Stamford,
CT 06905-3057.


_____
Jennifer Vickery

11