FILED

2004 MAY -7  A 10: 44

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THOMAS MATYASOVSZKY on behalf of   :
 himself and all others similarly situated,   :
            Plaintiff,   :
JOSEPH AND SANDRA PELLECHIO,   :
          Intervenors   :
                          :  CIVIL ACTION NO.
V.   :  303CV968 (RNC)
                          :
HOUSING AUTHORITY OF THE CITY OF   :
BRIDGEPORT, COLLIN VICE, individually   :
and in her official capacity as Executive Director   :
of the Housing Authority of the City of Bridgeport,  :  DECEMBER 30, 2003
and JONAS DE GUZMAN, individually and   :
in his official capacity as Special Assistant to the   :
Executive Director of the Housing Authority of the  :
of the City of Bridgeport,   :
          Defendants   :

## COMPLAINT IN INTERVENTION

Intervenors Joseph and Sandra Pellechio, for their complaint in intervention

against defendants Housing Authority of the City of Bridgeport ("BHA"), Collin Vice and

Jonas De Guzman, allege as follows:

INTRODUCTION

     1. Plaintiff-intervenors Joseph and Sandra Pellechio, 54 and 53 respectively, are

1

disabled persons. They bring this action to redress injuries they have suffered as a result of intentional discrimination practiced by the defendants against disabled people seeking affordable housing from the BHA. The Pellechios seek declaratory and injunctive relief because they continue to suffer from the discriminatory BHA policy and practice that prevents them from transferring from their present public housing unit into the Fireside complex.

2. Like the named plaintiff in the main action, Thomas Matysovszky, the Pellechios seek to redress years of intentional discrimination by the Housing Authority of the City of Bridgeport ("BHA") against disabled people seeking affordable housing. For at least the past three years, the defendants have excluded non-elderly disabled persons from residing in an apartment complex, the Fireside Apartments, that is funded and designated as housing for both the elderly and the disabled. Defendants have excluded disabled applicants from Fireside with full knowledge that they were required to obtain permission for such a policy and practice from their funding source, the United States Department of Housing and Urban Development ("HUD"). Defendants' unlawful actions have continued to the present day despite notice that they are violating housing laws.

3. The BHA owns and operates the Fireside Apartments, a senior/disabled

2

apartment complex containing approximately two hundred forty eight units. In exchange for funding from the United States Department of Housing and Urban Development ("HUD"), public housing authorities like the BHA agree to operate public housing developments like the Fireside Apartments according to federal statutes and regulations. Public housing authorities originally built housing for both seniors and families. In 1961, Congress broadened the definition of an eligible "elderly family" to include disabled persons under the age of 62 on the same terms as elderly persons 62 or older. Since 1992, federal law has provided that if public housing authorities specify precisely how they have provided for the housing needs of the excluded group, then they may apply to HUD for approval to designate a given complex as "elderly-only." However, unless and until a public housing authority has received such a designation from HUD, it is required to house both types of applicants. The BHA denies housing at Fireside to the disabled even though it has neither sought nor obtained an elderly-only designation from HUD.

4. The BHA has operated the Fireside Apartments as an elderly-only complex without HUD approval since at least 1999. On October 19, 1999, the Director of the Bridgeport Fair Housing Office, Joseph Wincze, informed the attorney for the BHA that

their Fireside complex was being operated in violation of federal law. Nonetheless, the BHA continued to operate the Fireside Apartments unlawfully, and continued categorically denying all disabled tenants an opportunity to rent apartments located there. Over three years later, on December 2, 2002, Mr. Wincze again informed the BHA that Fireside Apartments was being unlawfully operated as an elderly only complex in violation of the rights of disabled tenants. The defendants have admitted that Fireside Apartments has been and continues to operated as an elderly only complex, and has indicated their intention to seek HUD approval of a plan to designate it as an elderly-only complex. Defendants, however, continue to deny disabled tenants the chance to rent a unit at this complex.

5. Plaintiff-Intervenors Joseph and Sandra Pellechio applied for public housing in or about October of 2000. They asked to be placed in the Fireside Apartments, but were told that only persons over 62 years of age were allowed in the Fireside complex. The Pellechios were offered a unit in the Harborview complex, B-12, as of October 1, 2002. When the Pellechios requested the Fireside Apartments, a BHA supervisor advised them that the BHA places all disabled persons in either its Harborview complex or its Trumbull Towers apartments. See Exhibit A, attached hereto.

4

6. Like the low-income, disabled tenants and applicants comprising the proposed plaintiff class, the plaintiff-intervenors seek injunctive relief compelling the defendants to cease their discriminatory conduct, declaratory relief declaring that defendants violated federal and state fair housing laws and the United States Housing Act, retroactive remedial relief creating a separate waiting list for elderly and disabled applicants and placing all elderly and disabled applicants currently on the BHA waiting list onto such list, and an order requiring the defendants to consider the Pellechios' request to transfer to an apartment at Fireside on an equal basis with all other eligible applicants. Plaintiff also seeks compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. Sections 1331 and 1343 (a) (3), jurisdiction is proper in that plaintiffs' claims alleged herein arise under federal law.

8. Pursuant to 28 U.S.C. Section 1367, jurisdiction over the plaintiffs' state law claim is proper because this claim is related to their federal law claims, arises out of a common nucleus of related facts, and forms part of the same case and controversy under Article III of the federal constitution.

9. Venue is proper in that the facts giving rise to the claims alleged herein

5

occurred in Bridgeport, Connecticut.

PARTIES

10.  Plaintiff-Intervenors Joseph and Sandra Pellechio are each non-elderly, low income residents of the City of Bridgeport who have disabilities and handicaps, as those terms are defined for purposes of the Fair Housing Act, the Rehabilitation Act, the Americans with Disabilities Act, and Connecticut General Statutes Section 46a-64©). They meet, and at all relevant times have met, the qualifications for residence in the senior/disabled apartment complex known as the Fireside Apartments.

11.  Defendant BHA is an independent public corporate body established pursuant to Connecticut General Statutes Section 8-40 et seq.  It owns and operates public housing complexes , including  the Fireside Apartment complex, which is a senior/disabled complex for a mixed population  within the meaning of 24 C.F. R. Section 960. 102.

12.  Defendant Collin Vice was the Executive Director of the BHA at all times relevant to this Complaint, up until December of 2003.  She is sued in her individual and official capacities.

13.  Defendant Jonas de Guzman was the Special Assistant of the Executive

6

Director of the BHA at all times relevant to this Complaint , up until December of 2003.
He is sued in his individual and official capacities.

FACTS

14. At all relevant times, the BHA owned and operated the Fireside Apartments
("Fireside"), a mixed senior/disabled population complex located at 655 and 730 Palisade
Avenue, and 75 Stewart Street, in Bridgeport, Connecticut. Fireside is funded through the
federal government's Public and Indian Housing program of the United States Housing
Act, 42 U.S.C. Section 1437 et seq.

15. Under the Housing Act of 1938, local public housing authorities build, own,
and operate housing for low and moderate income persons. In exchange for funding from
the federal government, public housing authorities agree to operate public housing
developments according to federal statutes and regulations. Congress has required public
housing authorities to permit disabled non-elders to live in senior/disabled apartment
complexes since 1961. Such complexes are defined in the relevant regulations as "mixed
population" complexes.

16. In a mixed population complex, the defendant BHA is required ". . . to give
preference to elderly families and disabled families equally in determining priority for

7

admission to mixed population projects. The PHA may not establish a limit on the number of elderly families or disabled families who may be accepted for occupancy in a mixed population development." 24 C.F.R. Sec. 960.407.

16. Public housing authorities may designate mixed population projects as elderly-only or as disabled-only and determine priority for admission according to that designation, *provided that* a designation plan meeting the requirements of the Housing Opportunity Program Extension Act and the implementing regulations is approved by HUD. 42 U.S.C. Section 1437e(a)(1) and (d). The designation plan must, *inter alia*, describe the additional resources or housing assistance that may have been provide to persons who will be excluded from a complex by a restrictive designation. The defendant BHA has not filed an elderly-only designation plan for the Fireside Apartments.

18. The defendants operate Fireside as an elderly-only project, and have done so since at least in or about October of 1999. In the absence of such designation, the Fireside remains a mixed population complex.

19. Defendants have been aware that their operation of Fireside as an elderly-only project is unlawful since at least October 19, 1999, when they were so notified by letter from Bridgeport Fair Housing Officer Joseph Wincze. Mr. Wincze again brought the

unlawful nature of defendants' operation of Fireside to defendants' attention in a second letter, written over three years later on December 2, 2002, to defendant Collin Vice.

19. Defendants maintain only one waiting list for all applicants for housing owned by defendant BHA. They do not maintain a separate waiting list for elderly and/or disabled tenants.

21. Tenants who seek an apartment from defendants are given a "Pre-Application for Low Income Public Housing." Tenants complete this form, submit it to BHA's Application Department, and are placed on a single waiting list. Disabled and elderly applicants are given no preference, as required by law. Instead, they are placed on the general waiting list.

22. When an elderly applicant arrives at the top of the general waiting list, such applicant is granted preference for, and may be offered any apartment available at, Fireside. In contrast, when a disabled applicant arrives at the top of the waiting list, he or she is not offered an apartment at Fireside, even if there is a vacancy there. Disabled applicants' opportunities are far more limited, and the complexes into which they are admitted are not as desirable or well-maintained as the Fireside complex.

FACTS - PLAINTIFF -INTERVENORS JOSEPH AND SANDRA PELLECHIO

9

23. In or about October of 2000, the Pellechios went to the Trumbull Gardens office of the BHA to fill out an application for public housing, and advised the staff of the BHA at that time that they needed public housing because Mr. Pellechio is disabled.

24. The Pellechios asked, both when they applied and when they were interviewed, to be considered for a unit in the Fireside Apartments. The BHA staff refused the Plaintiff-Intervenors' requests, misrepresenting the availability of the Fireside Apartments to the Pellechios by stating that the complex is only for persons over 62 years of age.

25. Mr. Pellechio is disabled due to a permanent back injury sustained while working at the Milford Crane and Machine Company. He also suffers from liver damage from Hepatitis C, diabetes, and arthritis. Mrs. Pellechio is disabled by a number of medical conditions, including severe arthritis that has caused the bones in her left leg to deteriorate. At the time they applied for public housing from the BHA. The Pellechios' sole source of income was $872.00 per month in Social Security Disability benefits.

26. The Pellechios applied for public housing to alleviate overcrowding caused by living with their daughter's family in her single family home, and were unable to afford housing of their own on $872.00 per month.

27. Two years after they had first applied, the Bridgeport Housing authority offered the Plaintiff-Intervenors unit B-12 at Harborview. The Pellechios have leased unit B-12 since October 1, 2002, but would prefer to be transferred to a unit in the Fireside complex.

28. The BHA's practice and policy of refusing to place disabled applicants in the Fireside Apartments, and of steering all disabled applicants into other complexes, such as the Harborview, complex, injured the Pellechios by causing them to remain in overcrowded housing for a longer period of time than they would have if they were not unlawfully excluded from a substantial portion of the BHA's housing stock. This delay was tantamount to loss of a housing opportunity.

29. The BHA's practice and policy of refusing to place disabled applicants in the Fireside Apartments, and of steering all disabled applicants into other complexes, such as the Harborview, complex, injured the Pellechios by forcing them to accept housing under less desirable terms and conditions based on their status as disabled persons.

30. The Pellechios suffered, as a direct and proximate result of he BHA's housing practices and policies for administering the Fireside Apartments, economic losses, violations of their civil rights, emotional and physical distress, humiliation,

11

embarrassment, and mental anguish.

31. The actions of the defendants were performed with malicious motive and intent or involved reckless and callous indifference to the Pellechios' rights under law.

32. The Plaintiff-Intervenors are members of the proposed class.

33. The Pellechios should be permitted to intervene in order to preserve their rights to receive accurate information instead of misrepresentations regarding their eligibility to be transferred to the Fireside complex, and to permit them to challenge the continuing effects of the BHA's policy of excluding and steering disabled persons away from the Fireside complex.

COUNT I – FEDERAL AND STATE FAIR HOUSING ACT – 42 U.S.C. § 3601 et seq. Connecticut General Statutes Section 46a-64c

34. The plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 46 of this complaint.

35. The plaintiffs are "handicapped" and "aggrieved persons" within the meaning of the federal Fair Housing Act and the Connecticut Fair Housing statute.

36. The defendants have injured the plaintiffs by engaging in discriminatory

12

practices in violation of the federal Fair Housing Act, including:

1.    refusing to rent or otherwise making a dwelling unavailable because of a handicap, in violation of 42 U.S.C. Section 3604(f)(1);

2.    discriminating in the terms and conditions of rental of a dwelling because of a handicap, in violation of 42 U.S.C. Section 3604(f)(2);

3.    making, or causing to be made, statements with respect to the rental of a dwelling which indicated a preference, limitation, or discrimination based on handicap, in violation of 42 U.S.C. Section 3604©);

4.    representing to persons, because of their handicap, that a dwelling is unavailable for inspection or rental when such dwelling is in fact available, in violation of 42 U.S.C. Section 3604(d).

## COUNT II - SECTION 504 OF THE REHABILITATION ACT - 29 U.S.C. SECTION 794 et seq.

37.  The plaintiffs reallege and incorporate by reference paragraphs 1 through 46 of the complaint herein.

38.  The plaintiffs are "otherwise qualified individuals with a disability" under 24

13

C.F.R. Section 8.3 and meet the essential eligibility requirements for the senior/disabled apartment complexes owned by the defendant BHA.

39. The defendants injured the plaintiffs in violation of Section 504 of the Rehabilitation Act by engaging in the following discriminatory practices including, but not limited to:

Excluding the plaintiffs from participation in, denying the plaintiffs the benefits of, or subjecting the plaintiffs to discrimination in a program or activity receiving federal financial assistance solely by reason of their handicaps or disabilities, in violation of 29 U.S.C. Section 794.

COUNT III - TITLE II OF THE AMERICANS WITH DISABILITIES ACT - 42 U.S.C. 12131

40. The plaintiffs re-allege and incorporate by reference paragraphs 1 through 46 of the complaint herein.

41. The plaintiffs are "qualified individuals with a disability" within the meaning of 42 U.S.C. Section 12131(2) and meet the essential eligibility requirements for the elderly/disabled complexes owned by the defendant BHA.

42. The defendants are a "public entity" pursuant to 42 U.S.C. Sections

14

12131(1)(A) and (B), which includes any local government and department, agency or instrumentality of a local government and the BHA's housing programs are a "service, program or activity" within the meaning of 42 U.S.C. Section 12132. Defendants are thereby required under the ADA to administer their housing programs in a non-discriminatory manner.

43. The defendants injured the plaintiffs in violation of the Americans with Disabilities Act by engaging in the following discriminatory practices including but not limited to:

Excluding plaintiffs from participation in or denying them the benefits of the services, programs or activities of a public entity or subjecting plaintiffs to discrimination by any such entity, in violation of 42 U.S.C. Section 12132.

COUNT IV - THE UNITED STATES HOUSING ACT AND ITS REGULATIONS

44. The plaintiffs reallege and incorporate by reference paragraphs 1 through 46 of the complaint herein.

45. The defendants have injured the plaintiffs in violation of the United States

15

Housing Act of 1937 and its implementing regulations by refusing to implement a mandatory "preference" for disabled applicants equal to that granted to elderly tenants with regard to the general population of applicants.

46. The defendants have deprived plaintiffs of their rights, privileges, and immunities secured by the United States Housing Act of 1937 and its implementing regulations in violation of 42 U.S.C. § 1983.

PRAYER FOR RELIEF

Wherefore, the Plaintiff-Intervenors pray for the following relief:

1. That a class be certified in this action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure;

2. That the plaintiffs be awarded remedial relief according to proof;

3. That the Court enjoin all unlawful practices complained about herein and impose affirmative injunctive relief requiring the defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of disability or handicap;

4. That the Court declare that the defendants have violated the provisions of

16