FILED

2004 JUL -2 P 3: 12

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS MATYASOVSZKY, LINDA DEDRICK, SANDRA PELLECHIO, and JOSEPH PELLECHIO on behalf of himself and all others similarly situated,<br>Plaintiff,<br><br>V.<br><br>HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT et al.<br>Defendants. | : <br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>: NO. 3:03CV968    (WIG)<br>:<br>:<br>:<br>: JULY 2, 2004<br>:<br>: |

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT V OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Thomas Matyasovszky submits this memorandum of law in opposition to defendant's motion to dismiss Count V of his Amended Complaint. The supporting memorandum filed by the defendants ("Def. Mem. Opp. Amended Comp.") essentially argues that (A) the plaintiffs as applicants have no constitutionally cognizable property interest; and (B) the plaintiffs who did not actually submit pre-applications have no constitutionally cognizable property interest. Def. Mem. Opp. Amended Comp. at 5.

1

### A. Applicants to Public Housing, Like the Plaintiffs, Have a Well-Recognized Property Interest In Adherence to Established Application Procedures.

Defendants repeatedly insist that Count V asserts an entitlement to housing in a particular apartment or building. Defendant then argues that plaintiff does not have a protected interest in a specific housing unit. A plain reading of the allegations of count V shows the factual premise of defendants' argument to be false. Count V does not complain of a denial of a specific unit. In paragraph 58, plaintiff alleges HUD regulations, a handbook, notices to local public housing authorities, and finally the BHA's own Admissions and Continued Occupancy Plan ("ACOP", which the BHA was required to submit to HUD for approval, as sources of authority which provide for a fair applications procedure for public housing, including special provisions ensuring that elderly and disabled applicants receive the priority they are entitled to under law for elderly/disabled housing.

Paragraph 59 of the Amended Complaint alleges that the defendants ignore even there own ACOP in failing to inform disabled applicants of the existence of, and the right to apply to, housing for the elderly and disabled. The defendants tell HUD they are processing elderly/disabled applications in a fair manner in the ACOP they submit to

HUD, then implement a different procedure to expedite elderly applications for elderly/disabled housing while categorically denying applications from disabled persons for such housing. The result of these illegal applications procedures is that disabled persons are excluded from housing for which they are to have priority under law, and they are forced to wait longer than elderly applicants to receive <u>any</u> housing unit from the defendant BHA.

Plaintiff, and other disabled tenants seeking housing from the BHA, ask that the court order the BHA to comply with its own ACOP and the regulations and advisements given by HUD about how applications should be processed and how waiting lists should be operated. Plaintiff seeks a remedy for the entire application process as it applies to disabled people. Plaintiff and other disabled people will be fairly considered for any BHA unit only if the relief requested in Count V is granted.

In light of the foregoing, the line of cases which deny claims of a protected property interest in a specific unit is irrelevant to the particular claim being made in this case. Also irrelevant are <u>Anderson v. New York City Housing Authority</u> and other cases cited by defendants which point out that applicants do not have an abstract protected interest in the application process itself. Like the plaintiff in <u>Baldwin v. Housing</u>

3

Authority of the City of Camden, 278 F.Supp.2d 365 (D. N.J. 2003), the plaintiffs, in Count V, seek review of a process which categorically excludes the disabled from housing funded for their benefit. Their claims are not limited to the administration of the Fireside complex. Rather, they argue that the rights of all disabled to any housing operated by the BHA are being affected by the BHA's noncompliant administration of its senior/disabled housing, including but not limited to the Fireside units.

The defendants rely heavily on Eidson v. Pierce, 745 F.2d 453 (7th Cir. 1984), for the proposition that an eligible individual has no property interest in the application process itself. Def. Mem. Opp. Amended Comp. at 7-9. A fair summary of Eidson's holding would instead be that an eligible individual has no property interest *in the establishment* of an application process where none has been spelled out or legislatively mandated. Therefore, it has no bearing on this case, legally or factually.

The plaintiff in Eidson had claimed "that the defendants violated her due process rights under the fifth amendment by allegedly failing to maintain and apply uniform, ascertainable standards for the selection of tenants." See 745 F.2d at 455. Specifically, the plaintiff had applied for an apartment subsidized through HUD under its Section 8 new construction program, but privately owned and operated. Id. at 458. The private

4

owner had rejected the plaintiff's application without specifically advising the applicant of what standards it used for deciding among applicants. Id. at 460-62. The Seventh Circuit found that, while some regulations constrained parts of the process, the legislation authorizing this particular program left the application procedures and criteria up to the discretion of the private owner, provided the owners complied with these few regulations, thus defeating the plaintiff's claim of a property interest. Id. at 463.[1]

The Eidson plaintiff's request that the court require private Section 8 owners to establish ascertainable application procedures is, of course, readily distinguishable from the instant plaintiffs' request that this Court require a public housing authority to adhere to its existing application procedures. In short, the plaintiffs in this case do not need to ask for the establishment of an application process, because one has already been established–that is, the defendants' Admissions and Continued Occupancy Plan ("ACOP").

---

[1] This holding, the Seventh Circuit noted, created a circuit split on the issue. Id. at 461 n. 6. The Ninth Circuit and those jurisdictions following it have found the opposite, reasoning that because the owners' discretion is "closely circumscribed" by the Section 8 program regulations, an entitlement exists such that Section 8 program applicants do have a property interest in the application process. Ressler v. Pierce, 692 F.2d 1212 (9th Cir. 1982). These cases support the plaintiffs' claim of property interests.

Equally important, however, is the reasoning of the Eidson court, which provides explicit support for the type of property interest asserted in this case: "Several courts have found or assumed the existence of property interests for applicants under another Section 8 subprogram...[omitting citations].... By contrast, the plaintiffs in the cases before us assert broader property rights; they claim *not the opportunity to prove their eligibility* but instead entitlement to the benefits themselves [emphasis added]." While the Eidson plaintiff had no constitutional basis for forcing the private owners to house her as opposed to the other eligible persons, the plaintiffs here claim far less–they seek to enforce existing rules to ensure that they get the same opportunity to prove that they are eligible for senior/disabled housing as elderly persons, as set forth in ¶ 59.A, the same opportunity as the elderly to be interviewed, and thereby complete their applications, in a timely manner, as set forth in ¶ 59.B, and the same opportunity as the elderly to receive the statutorily-mandated benefit of being considered for BHA senior/disabled housing ahead of all who are neither disabled nor elderly, including non-disabled "near-elderly" applicants, as set forth in ¶ 59.C.

And finally, Eidson carefully considers the relevance of the principles articulated by Goldberg to the distribution of scarce and extremely valuable units of subsidized

6

housing. Id. at 461. While much of its discussion on this issue is not relevant here because the plaintiffs here are not trying to establish their rights to a hearing to contest eligibility decisions (a right already granted by the ACOP), the overriding principle–that due process claims "serve the public interest in implementing policies accurately"–remains relevant. Id. All that the plaintiffs are claiming an interest in is the accurate administration of a public housing program.

**B.     Potential Applicants, Like Plaintiff Matyasovszky, Need Not Actually Submit Apply Where Doing So Would Prove Futile.**

The decision of plaintiff Matyasovszky to file suit instead of apply falls within this exception. While Mr. Matyasovszky made it clear that he was only interested in applying for Fireside, and decided not to apply after he was convinced that he would not be admitted there, he did so because he understood that he had zero chance of being placed in Fireside. In other words, he did not demand the right to be placed in a particular unit or complex, just the opportunity to see if he was one of the lucky individuals to be offered the complex he desired. While defendants imply that the lack of an actual application undermines the plaintiffs' standing, a number of the plaintiffs have indeed applied. Moreover, even as to plaintiff Matyasovzsky alone, because the

7

threshold requirement that a plaintiff seeking to challenge a policy must submit to that policy–i.e. apply–is excused when the plaintiff shows that applying would have been futile. See , e.g., Ellison v. Connor, 153 F.3d 247, 255 (5th Cir. 1998) (citing Moore v. U.S. Dep't of Agric., 993 F.2d 1222 (5th Cir. 1993), in which white applicants did not need to apply for government program after they had been assured that white applicants were ineligible). Although the futility doctrine is quite rigorous, requiring that the agency have "articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider," FCC v. Cuevas, 2000 WL 852308 (March 31, 2000 D.Conn.), plaintiff Matyasovszky easily meets this test. He called, verbally attempted to get the BHA staff to change their announced policy of excluding disabled persons in view of the law, and then took legal action with the advice of the City official who had been trying unsuccessfully to change the policy for the past three years. Defendants' decision to contest standing on this detail should be viewed in the context of its statements in the ACOP that applicants may state what complex they prefer, or reject the first unit offered and wait to see if they are offered another unit in the complex of their choice. Thus, administering the application procedures constitutionally probably required the defendants to offer Mr. Matyasovszky a chance to apply for a specific complex, in this

8

case, by being offered the chance to state on an application that Fireside was his first choice of complex.

Respectfully submitted,<br>
BY THE PLAINTIFFS<br>
<br>
By _____<br>
Alan Rosner, Esq. (CT10414)<br>
1115 Main Street, Suite 415<br>
Bridgeport, CT 06604<br>
Tel.(203) 384-1245, Fax. (203) 384-1246<br>
Email: alanrosner@aol.com

9

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent by facsimile transmission on this 2nd day of July, 2004 to:

Michael Ryan and James Mahar
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905-3057
Fax (203) 357-7915


_____
Alan Rosner