**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **THOMAS MATYASOVSZKY, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO.** |
| | : | **3:03cv968 (WIG)** |
| **v.** | : | |
| | : | |
| **HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT, COLLIN VICE, JONAS GUZMAN,** | : | |
| | : | |
| **Defendants.** | : | |

**RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Currently pending is plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23 **(Doc. # 7)** filed by the named plaintiffs (collectively "plaintiffs") on behalf of themselves and other disabled applicants for low income housing in the City of Bridgeport against the Bridgeport Housing Authority[1] ("BHA") and Collin Vice, former Executive Director of the BHA; Jonas Guzman, Special Assistant to the Executive Director of the BHA; Judit Grof-Tisza, former Acting Executive Director of the BHA; Patsy Michelle, Acting Executive Director of the BHA and Robert Graham, Interim Executive Director of the BHA (collectively "defendants"). Plaintiffs allege that they and other similarly situated, low income, disabled applicants for public housing were illegally discriminated against by the defendants. (Amended Complaint, hereinafter "Compl." ¶ 1). Plaintiffs bring their claims pursuant to the federal Fair Housing Act, 42 U.S.C. § 3601, et seq.; Conn Gen. Stat. § 46a-64c; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

---

1. The Bridgeport Housing Authority is an independent public corporate body established pursuant to Conn. Gen. Stat. § 8-40 et seq. (Compl. ¶ 11).

Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2); the United States Housing Act of 1937; 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution. In their prayer for relief, plaintiffs seek "remedial relief according to their proof"; affirmative injunctive relief requiring defendants "to conform their current practices for admitting applicants to mixed population public housing to federal law"; a declaratory judgment that defendants have violated federal and state housing laws; compensatory damages; punitive damages; and attorneys' fees. (Compl. at 23-24).

**BACKGROUND**

Plaintiffs now seek certification of a class of approximately 197 of disabled[2] persons, under the age of 62, who are eligible for low income housing in the City of Bridgeport. (Compl. ¶

---

2. Plaintiffs rely on the following provision of federal law as a definition of "disabled":

> The term "person with disabilities" means a person who--
> (i) has a disability as defined in section 223 of the Social Security Act [42 USCS § 423],
> (ii) is determined, pursuant to regulations issued by the Secretary, to have a physical, mental, or emotional impairment which (I) is expected to be of long-continued and indefinite duration, (II) substantially impedes his or her ability to live independently, and (III) is of such a nature that such ability could be improved by more suitable housing conditions, or
> (iii) has a developmental disability as defined in section 102 of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 [42 USCS § 15002].
> Such term shall not exclude persons who have the disease of acquired immunodeficiency syndrome or any conditions arising from the etiologic agent for acquired immunodeficiency syndrome. Notwithstanding any other provision of law, no individual shall be considered a person with disabilities, for purposes of eligibility for low-income housing under this title [42 USCS §§ 1437 et seq.], solely on the basis of any drug or alcohol dependence. The Secretary shall consult with other appropriate Federal agencies to implement the preceding sentence.

42 U.S.C. § 1437a(b)(3)(E).

43).[3] Plaintiffs give a "conservative" estimate of the class size as being upwards of 197 individuals. (Pl. Br. in Supp. Class Cert., at 3). Plaintiffs allege that BHA maintains certain housing units within its control as “elderly only” in contravention of clearly established federal statutory and regulatory mandates that require BHA to make those units equally available to eligible disabled applicants for low income housing. Plaintiffs contend that BHA’s historic and present restrictive criteria for housing in some of its more desirable housing stock, the 248-unit complex Fireside Apartments, has resulted in disabled applicants being excluded from BHA housing for unnecessarily protracted periods of time. (Compl. ¶¶ 2, 3).

While plaintiffs did not file formal declarations, the original complaint and complaints in intervention contain some specificity regarding each plaintiff's allegations of disparate treatment. Named plaintiff Thomas Matayasovszky is a 57-year old, low income resident of the City of Bridgeport with a permanent mobility impairment. (Compl. ¶ 5). Mr. Matayasovsky inquired about housing with BHA on or about November 14, 2002. (Compl., Doc. #72, ¶ 5). A BHA representative told Mr. Matayasovsky that he was not eligible to reside at Fireside and that Fireside was reserved for elderly tenants age 62 and older.

Named plaintiff Linda Dedrick alleges that on or about June 24, 2003, she filed an application for housing with BHA. (Dedrick Intervention Compl., Doc. #74, ¶ 23). In or about July 2003, Ms. Dedrick called BHA to request a unit at Fireside due to her back and leg disabilities. The BHA representative inquired about her age and, when Ms. Dedrick informed the

---

3. Plaintiffs define the class as encompassing “[a]ll disabled persons under the age of sixty-two who have been, are being, or will be subjected to the discriminatory policies and practices of the BHA on the basis of their handicaps, while applying, or attempting to apply, for senior/disabled housing at Fireside Apartment Complex.” (Pl. Br. In Supp.Class Cert., Doc. # 8, at 5).

representative that she was 50 years old, the BHA representative told Ms. Dedrick that she was not old enough to reside at Fireside and that Fireside was reserved for elderly tenants age 62 and older. (Id. ¶ 24). Ms. Dedrick presently lives alone in a privately owned, non-subsidized, apartment that is in such a state of disrepair that it contains violations of the housing code. Ms. Dedrick's rent constitutes seventy-two percent (72%) of her income. (Id. ¶ 25).

Named plaintiffs Joseph and Sandra Pellechio, non-elderly, disabled residents of Bridgeport, applied for public housing with BHA in or about October 2000. (Pellechio Intervention Compl. ¶ 5). Mr. and Mrs. Pellechio asked to be placed at Fireside Apartments but were told that only persons over 62 years of age were allowed to reside at Fireside. (Id.). The Pellechios further allege that a BHA supervisor informed them that BHA places all disabled persons in either its Harborview complex or its Trumbull Towers apartments. (Id.)

**Evidence of Discriminatory Treatment**

Plaintiffs point to statistical evidence to bolster their allegations of BHA's disparate treatment of disabled, non-elderly applicants for low income housing. Specifically, plaintiffs cite numbers in BHA's Report to the Department of Housing and Urban Development ("HUD"), BHA's waiting list and BHA's pre-application list. As of May 2004, plaintiffs allege that there were 197 disabled people on BHA's waiting list. Plaintiffs note that, as of the time of the filing of this motion, BHA did not utilize any methodology to uncover whether an applicant was in fact disabled. (Pl. Ex. G to Doc. #75). Plaintiffs contend that as a consequence of BHA's failure to make meaningful inquiry into the disabled status of its applicants, its tally of 197 disabled people on its waiting list may in fact undercount the number of disabled persons. Moreover, applicants who are disabled and who have filed "pre-applications" with BHA, but who have not yet been

placed on the waiting list, may constitute another group of disabled applicants who go uncounted by BHA.

Even with this likely undercounting, the number of disabled applicants constitute a sizable number of BHA's clientele. In 2003, BHA reported that there were 1,849 families on its waiting list. Of those 1,849 families, 269 families or 14% had a member who was disabled. A comparison of this number with the 64 families, or eight percent (8%), of wait-listed applicants who had a member that was elderly indicates that the need for housing is in fact greater for disabled applicants. (Plaintiffs' Mem. in Further Supp. of Mot. for Class Cert., Doc. #75, at 6). Plaintiffs contend that even in the face of the apparent greater need on the part of disabled applicants, BHA reported to HUD its intention to request authorization to designate 493 units of housing as "elderly only" while conversely requesting a "disabled only" designation for only 120 units. (Id.)

With this factual background, the Court now turns to the question of whether, taking as true all allegations in plaintiffs' complaint, as the Court must when considering the issue of class certification, these facts and allegations satisfy the requirements for certification pursuant to Fed. R. Civ. P. 23.

**DISCUSSION**

When deciding a motion for class certification, the only issue is whether the requirements of Rule 23 have been met, and not whether the plaintiffs have stated a cause of action or will prevail on the merits. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). The Supreme Court has cautioned that the trial court must conduct a "vigorous analysis" to determine whether Rule 23's requirements have been satisfied. General Tel. Co. of Southwest v. Falcon, 457 U.S.

147, 160 (1982).

When considering a motion for class certification, courts should consider the allegations in the complaint as true. See Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n. 15 (2d Cir. 1978) ("it is proper to accept the complaint allegations as true in a class certification motion"). Yet, a court may also consider material outside the pleadings in determining the appropriateness of class certification. Kaczmarek v. International Business Machines Corp., 186 F.R.D. 307, 311 (S.D.N.Y. 1999) (citing Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571 (2d Cir. 1982)). Thus, it is sometimes necessary for district courts to "probe behind the pleadings before coming to rest on the certification question." General Tel. Co., 457 U.S. at 160; see Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) ("class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action").

For their class to be certified, plaintiffs must satisfy all of the requirements of Rule 23(a) and must fit within one of the categories of Rule 23(b). Marisol A. v. Giuliani, 126 F.3d 372, 375-76 (2d Cir. 1997). The four requirements of Rule 23(a) are as follows: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999), cert. denied, 529 U.S. 1107 (2000); Marisol A., 126 F.3d at 375.

Additionally, a class may be certified only if one of the requirements of Rule 23(b) have

been met. Rule 23(b) permits class actions in situations where the prerequisites of subdivision 23(a) are satisfied, and one of the following three subdivisions is also satisfied:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b).

**A. Rule 23(a)**

In their opposition to plaintiffs' class certification, defendants contend that plaintiffs fail to meet the each of the four requirements of Rule 23(a).

**1. Numerosity**

Defendants contend that plaintiffs have failed to satisfy the criteria of Rule 23(a)(1) because they have failed to establish numerosity.

Plaintiffs maintain that they have satisfied the requirements of Rule 23(a)(1) because the

putative class of approximately 197 members is so numerous that joinder of all members is impracticable. Plaintiffs also note that the character of this particular putative class - low income, disabled, and in some cases, homeless individuals - makes joinder impracticable. Plaintiffs assert that a class comprised of applicants for disabled housing is necessarily fluid and that those applicants who are refused housing are difficult to identify and contact.

"The use of the class action device on behalf of recipients of government benefits is a common and necessary means of challenging unfair statutes, regulations and policies in an area where the individual claimant is unlikely to bring suit because of poverty and the inaccessibility of judicial relief as an economic matter." 7 Newberg on Class Actions § 23:1 (4th ed.) (hereafter "Newberg §__".)

In Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993), the court stated that when making a determination of joinder impracticability, relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. Id. at 936 (finding the numerosity requirement was met when plaintiffs, applicants for Vermont public assistance benefits, presented documentary evidence of delays in 22 to133 cases per month).

Like the defendants in Glover v. Crestwood Lake Section 1 Holding Corporations, 746 F. Supp. 301 (S.D.N.Y. 1990), defendants contend that the number of disabled applicants eligible for an apartment at Fireside is limited and, therefore, the numerosity requirement cannot be satisfied. The district court in Glover rejected this line of reasoning and held that the plaintiff

need not provide precise numbers as to how many applicants are seeking a

particular government benefit.

> [S]atisfaction of the numerosity requirement of Rule 23(a)(1) is not dependent exclusively on mathematical calculation. Rather, where a party is seeking to remedy an alleged discriminatory practice that would clearly affect more people than that individual, a combination of quantitative and qualitative factors should be considered in determining whether the numerosity requirement is satisfied.

Id. at 304-05.

Here, the Court finds that a class of one hundred to two hundred members is sufficiently numerous to make joinder impracticable and undesirable, particularly given the circumstances cited above by plaintiffs, and that the numerosity requirement of Rule 23(a)(1) has been met.[4]

**2. Commonality**

Rule 23(a)(2) requires questions of law or fact common to the class. This requirement is the "heart of the class action concept." Newberg § 23:3. "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A., 126 F.3d at 376. Defendants contend that plaintiffs have failed to meet the threshold of "commonality" required by Rule 23(a)(2) because each class member will have unique disabilities and circumstances surrounding his or her application for low income housing with BHA.

Defendants' argument that the individualized issues of the putative class members preclude certification is unavailing for several reasons. Foremost is that defendants fail to appreciate that in order to satisfy the commonality requirement plaintiffs need not establish that all questions of law and fact among the putative class are identical. The commonality

4. "Even if plaintiff's estimate of 2,000 class members is substantially overstated to the point that there are only 100 to 200 persons that fit the class definition, such a number would make joinder clearly impracticable." McCoy v. Ithaca Housing Authority, 559 F. Supp. 1351, 1355 (N.D.N.Y. 1983)(citing1 H. Newberg, Class Actions § 1105d at 174-76; 7 C.Wright & A. Miller, Federal Practice and Procedure: Civil § 1762 (1972)).

interpretation advanced by defendants has been rejected by numerous courts considering certification of government benefit class actions. Moreover, court after court has found the existence individualized issues among class members to be insufficient to defeat certification where the defendant governmental entity or officials acted in a similar manner toward all the class members. See generally Newberg § 23:3 (citing cases). "Varying fact patterns may underlie individual claims, as long as a common pattern of unlawful conduct by the defendant is directed at class members. Class members may also have varying degrees of injury and meet the commonality requirement." Id.

Here, accepting plaintiffs' allegations as true, defendants are acting pursuant to a de facto policy of restricting residency eligibility at Fireside to applicants who are elderly or "near elderly." The class members in this case may have individualized factual circumstances which could ultimately preclude their acceptance at Fireside, irrespective of BHA's age restrictions. Nonetheless, this potential ineligibility is not a sufficient reason to find a lack of commonality. It is the lack of an opportunity to apply for government benefits and to be considered on an equal level with other applicants that is the cognizable harm in this case and in many other government benefit class actions.

> While the plaintiffs have unique medical and support requirements, this does not change the fact that this class action raises the same basic claim stemming from deficiencies in the operation of the Commonwealth's Plan. Rule 23(a)(2) requires plaintiffs to show that common questions of law or fact exist and that class members' claims are not in conflict with one another; it does not require that class members' claims be identical.

Boulet v. Cellucci 107 F. Supp. 2d 61, 81 (D. Mass. 2000)(internal citations omitted).

The Court finds common issues of law and fact among class members in this case to

satisfy the requirements of Rule 23(a)(2).

**3. Typicality**

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. The typicality inquiry is intended to assess whether the case can be efficiently maintained as a class action and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

"In government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members." Newberg § 23:4 (citing Stieberger v. Sullivan, 738 F. Supp. 716 (S.D.N.Y. 1990)). In Robidoux v. Celani, the Second Circuit noted that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met, regardless of minor variations in the fact patterns underlying individual claims. 987 F.2d at 936-37. A plaintiff's claim is not atypical when an alleged defense may affect an individual's right to recover, but does not affect the presentation of the case on the liability issues for the class. Morabito v. Blum, 528 F. Supp. 252 (S.D.N.Y. 1981), superseded by regulation on other grounds; see also Newberg § 23:4.

Defendants contend that plaintiffs' claims are not typical because the facts required to prove them would differ markedly from the facts required to prove the claims of other class members. Again, the Court rejects defendants' argument. Factual differences will not render a claim atypical if the plaintiff's claims arise from the same event or practice or course of conduct that gives rise to the claims of the class members, and if they are based on the same legal theory.

Moreover, "typicality" arises at the time a proposed class member became entitled to a particular benefit, not whether his or her present financial situation entitles him or her to such benefit. Copeland v. Perales, 141 F.R.D. 11, 16 (E.D.N.Y. 1992).

Here, the named plaintiffs meet the typicality requirement of Rule 23(a)(3) because their claims arise from the same BHA conduct as those of the proposed members of the class, their claims are premised on the same legal bases - BHA's alleged discriminatory practices, and their interests are not adverse to the interests of other class members. See General Tel., 457 U.S. at 157 n.13.

**4. Adequacy of Representation**

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. Two factors generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: "(1) absence of conflict and (2) assurance of vigorous prosecution." Newberg § 23:5; Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (holding that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members); Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir.1985); Boulet, 107 F. Supp. 2d at 81.

Defendants argue that there is an inherent conflict among these class members because each is seeking a limited resource - a unit at Fireside Apartments- and therefore their interests clash. The Court disagrees with defendants' reasoning on the question of conflict and directs defendants to the case precedent involving limited governmental resources, such as housing, where courts have found no conflict. To the contrary, each of the putative class members shares a common interest of allegedly having been treated unfairly by BHA and wanting to insure that

applicants for housing at Fireside are treated evenhandedly and in accordance with his or her position on the waiting list for those units. When considered in this light, the named plaintiffs' claims do not conflict with those of the proposed class members because they state a common injury and legal theories.

Furthermore, counsel for the plaintiffs are experienced in fair housing litigation, and possess resources adequate to represent the interests of the class.[5] The Court finds the arguments advanced by defendants regarding plaintiffs' inability to adequately finance this class action to be speculative and unpersuasive.

Accordingly, the Court finds that the adequacy of representation requirement of Rule 23(a)(4) has been satisfied.

**5. Class Certification Unnecessary in Case against Governmental Entity**

Last, defendants assert that class certification is unnecessary in this case because any judgment in plaintiffs' favor will be applied uniformly to all BHA applicants and thereby inure to the benefit of all putative class members even in the absence of the procedural tool of class certification.

"A number of courts have nevertheless refused to certify classes where they perceived that relief would inure to the whole class." Newberg § 23:11, n. 22 (collecting cases). "Where plaintiffs have sought only declaratory and injunctive relief against government officials, some courts in this circuit have held class certification to be an unnecessary formality, inasmuch as the effects of a plaintiff victory over government officials can be expected to inure to the benefit of

---

5. Defendants' challenge to the adequacy of representation is limited to financial considerations.

all proposed class members." Copeland v. Perales 141 F.R.D. at 17 (citing Galvan v. Levine, 490 F.2d 1255, 1261-62 (2d Cir. 1973), cert. denied, 417 U.S. 936 (1974)).

Nevertheless, in United States Parole Commission v. Geraghty, 445 U.S. 388, 403 (1980), the Supreme Court held that a proposed class representative has the right to have a class certified if the requirements of the Rules are met. Newberg § 23:11

In McCoy v. Ithaca Housing Authority, 559 F. Supp. at 1354, the district court rejected a similar argument that certification was an unnecessary procedural burden in part because it found that the assurances provided by the defendants were inadequate. Likewise, in Mayer v. Wing, 922 F. Supp. 902, 908 (S.D.N.Y. 1996), the court found unavailing the defendants' argument that class certification was unnecessary because the stare decisis effect of a favorable decision for the named plaintiffs would adequately protect all those similarly situated. "This claim overstates the protection afforded to plaintiffs by that doctrine, particularly to indigent plaintiffs. Moreover, it ignores the many cases allowing class actions to seek injunctive relief against government agencies." Id. (internal citations and quotations omitted).

Here, the Court disagrees with defendants' contention that class certification is unnecessary because the effect of a favorable decision for the named plaintiffs will adequately protect all those similarly situated. According to plaintiffs' allegations, BHA has knowingly engaged in its discriminatory policy for years, despite clear guidance that in so doing it was violating federal law. Moreover, assuming plaintiffs' claims are true, BHA's repeatedly denials that it has discriminated against disabled applicants does not bode well for the prospect that it will regulate its own conduct to insure compliance with federal law in the future. Based on the allegations in plaintiffs' complaint, this Court finds little reassurance that a judgment in an

individual action would inure to the benefit of all class members.

**B. Rule 23(b)(2)**

Having found that all requirements of Rule 23(a) have been met, the Court now turns to the question of whether plaintiffs satisfy one of the available methods of certification under Fed. R. Civ. P. 23(b). Plaintiffs seek certification only under Rule 23(b)(2).[6]

Rule 23(b)(2) permits certification if the action is one that is "appropriate" for final injunctive relief or declaratory relief. In the Second Circuit, injunctive relief must predominate in order for a class to be certified under Rule 23(b)(2). Eisen v. Carlisle & Jacquelin ("Eisen II"), 391 F.2d 555, 564 (2d Cir. 1968). As such, an examination of the relief sought by plaintiffs is integral to the analysis of when an action is "appropriate" for final injunctive relief or declaratory relief. The relief sought by the plaintiffs in a Rule 23(b)(2) case must comport with the procedural safeguards established to protect the interests of absent class members.

In their prayer for relief, plaintiffs seek "remedial relief according to their proof;" affirmative injunctive relief requiring defendants "to conform their current practices for admitting applicants to mixed population public housing to federal law;" a declaratory judgment that defendants have violated federal and state housing laws; compensatory damages; punitive damages; and attorneys' fees. (Compl. at 23-24).

______The pursuit of the compensatory and punitive damages by a putative class may militate against a finding of the "appropriateness" of certification under Rule 23(b)(2). Generally, in actions for money damages, class members are entitled to personal notice and an opportunity to

---

6. See Page 7, supra.

opt out. Rule 23(b)(2) has no requirement for notice and an opportunity to opt out. Therefore, certification pursuant to Rule 23(b)(2) is inappropriate if monetary damages is the predominate relief that is sought in an action. Allison v. Citgo Petroleum Corp., 151 F.3d 402, 413 (5th Cir. 1998). If, however, "money damages are merely incidental to plaintiff's request for injunctive or declaratory relief, class actions may be certified under Rule 23(b)(2)." 5 Moore's Federal Practice, § 23.43[3][a] (3d ed. 1997 & Supp. 2000).

In Allison, the Fifth Circuit was confronted with an employment discrimination action seeking both monetary damages and injunctive relief under Title VII in which the plaintiffs sought certification of a class. The Allison court refused to certify the class under 23(b)(2) because it found that monetary damages predominated and were not merely incidental. The Second Circuit, however, in Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 164 (2d Cir. 2001),[7] declined to adopt the Allison approach and instead articulated a more nuanced and discretionary test: "[t]he district court may allow (b)(2) certification if it finds in its informed, sound judicial discretion that (1) the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy." Id. (internal citations and quotation marks omitted).[8]

---

7. The Robinson class encompassed "all African-American employees of Metro-North for the period from 1985 through 1996 - an estimated 1,300 persons." 267 F.3d at 155.

8. The Second Circuit in Robinson was keenly attuned to the need to respond to the developments in other circuit courts in the employment context, and the bright line rule that was emerging in certification of employment cases after Allison. Robinson, 267 F.3d at 157 (("[I]n particular, [this case] requires us to consider how the passage of the Civil Rights Act of 1991 . . . affected the class certification analysis in employee discrimination cases.").

In announcing this *ad hoc* approach, the Second Circuit went on to state that a district court, in making its assessment of whether injunctive or declaratory relief predominates, should consider whether: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Id.

The requirement that injunctive relief predominate, in other words that monetary relief be only incidental, is not a purely procedural barrier to certification. It also protects the substantive rights of absent class members. The predomination requirement is intended "to ensure a degree of cohesiveness that would otherwise be easily disrupted when a plaintiff class seeks monetary remedies, since monetary remedies 'are more often related directly to the disparate merits of individual claims.'" Parker v. Time Warner Entertainment Co., L.P., 198 F.R.D. 374, 378 (E.D.N.Y. 2001).

Defendants impress upon this Court that Robinson is controlling authority for why this class should not be certified. Defendants contend that even under the *ad hoc* approach established in Robinson, this Court should find that monetary damages predominate because named plaintiff Matyasovsky no longer seeks housing at Fireside and therefore his claims can only be redressed with monetary damages. Defendants contend further that the individualized damages issues in each class member's case will predominate.

This District has previously recognized the fact that monetary damages are an element of the relief sought does not preclude certification under Rule 23(b)(2). See, e.g., Duprey v. State of

Connecticut Dept. of Motor Vehicles, 191 F.R.D. 329 (D.Conn. 2000)(finding no requirement that relief be specifically tailored to each individualized class member).

The Court finds, here, that these plaintiffs would likely bring suit for injunctive relief even in the absence of monetary recovery and that injunctive relief can be reasonably fashioned and, indeed, should be fashioned if plaintiffs' allegations are proved. Moreover, the Court finds that the due process rights of absent class members can be adequately protected in a collective action by affording notice and opt out rights to absent class members for those portions of the proceedings where class cohesion may falter– the damages phase of the proceedings. See Robinson, 267 F.3d at 166-67. In this case, the interests of class members in the liability phase of this case would be essentially identical and, therefore, the due process rights of absent class members would be adequately protected by class representation alone. Should it arise that individual class members' monetary claims are so divergent that class representation becomes problematic, this Court could decertify the damages phase of this litigation or require plaintiffs to provide notice and an opportunity to opt out to absent class members. "The court retains discretion to modify the certification structure as warranted by the progression of the case." Robinson, 267 F.3d at 171.

The Court finds that class certification is an appropriate procedure in this government benefit cases because BHA's policies have an impact upon a broad class of recipients, certification will enhance of the effectiveness of a final judgment and will avoid duplicative litigation and will facilitate justice for a broad class of individuals unlikely to seek redress of their rights on their own. Therefore, the Court grants certification of the putative class under

Rule 23(b)(2).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiffs' motion for class certification **(Doc. #7)**.

So ordered this 7th day of January, 2005, at Bridgeport, Connecticut.

*/s/*
William I. Garfinkel
United States Magistrate Judge