UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2007 OCT 12 P 2: 09

U.S. DISTRICT COURT

| | |
|---|---|
| THOMAS MATYASOVSZKY, LINDA DEDRICK JOSEPH PELLECHIO, SANDRA PELLECHIO, KENNETH GIHON, JOHN NELSON, JR., on behalf of themselves and all others similarly situated, **Plaintiffs,** | : <br> : <br> : <br> : **LEAD** <br> : CASE NO. <br> : 3:03 CV 968 (WIG) <br> : |
| **V.** | : <br> : |
| HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT, COLLIN VICE, JUDIT GROF-TISZA, and JONAS DE GUZMAN **Defendants.** | : <br> : <br> : <br> : <br> : |

| | |
|---|---|
| JUDITH MONTES, **Plaintiff,** | :CASE NO. <br> :3:04 CV 1 (WIG) |
| **v.** | : <br> : |
| HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT, JUDIT GROF-TISZA, COLLIN VICE, and JONAS DE GUZMAN **Defendants.** | : <br> : September ___, 2007 <br> : <br> : |

## CONSENT DECREE

## I.    INTRODUCTION:

1.    This Consent Decree is hereby entered to resolve all claims which were made or might have been made in a civil action, entitled <u>Matyasovszky, et al. v. Housing Authority of the City of Bridgeport, et al, 3:03 CV 968 (WIG)</u>, and a separate action entitled <u>Montes v. Housing Authority of the City of Bridgeport, et al, 3:04 CV 1 (WIG)</u>.  In his Class Action Complaint, dated May 16, 2003, Thomas Matyasovszky (hereinafter "Matyasovszky") alleges that he brings his action as class representative on behalf of himself and others similarly situated.  The Class

1

Action Complaint alleges that the class consists of all disabled persons who have been, are being, or will be subjected to the discriminatory policies or practices of the Housing Authority of the City of Bridgeport, (hereinafter "BHA") because of their disabilities while applying or attempting to apply for Senior/Disabled Housing operated by Defendants. The Class Action Complaint requests, among other things: remedial, injunctive, and declaratory relief; compensatory and punitive damages; costs and attorney's fees. The Defendants named in the Class Action Complaint are the BHA, Collin Vice, individually and in her official capacity as Executive Director of the BHA, and Jonas DeGuzman, individually and in his official capacity as Special Assistant to the Executive Director of the BHA. On or about April 12, 2004, Matyasovszky filed a Motion to Join Judit Grof-Tisza as a party defendant in her individual capacity and in her official capacity as Acting Executive Director of the BHA, which motion was granted by the Court. Subsequently named Plaintiffs, Linda Dedrick, Joseph Pellechio, Sandra Pellechio, Kenneth Gihon, and John Nelson, Jr., filed Motions to Intervene into the action as parties plaintiff and the motions were granted by the Court.

By Complaint, dated January 5, 2003 and filed on January 5, 2004, Plaintiff, Judith Montes (hereinafter "Montes"), filed a separate action against the same parties named as Defendants in the Matyasovszky Class Action Complaint. Montes alleges that she is a fifty year old disabled woman, who applied for housing with the BHA and suffered a loss of housing opportunities due to the unlawful acts and practices of the Defendants. Montes alleges many of the same unlawful acts and omissions as alleged by Matyasovszky in his Class Action Complaint and she claims to be a member of the class represented by Matyasovszky.

As used in this Consent Decree, the term "Plaintiffs" means Thomas Matyasovszky,

2

Linda Dedrick, Joseph Pellechio, Sandra Pellechio, Kenneth Gihon, and John Nelson, Jr., on

behalf of themselves and on behalf of all other similarly situated Class Members, and Judith

Montes. The term "Defendants" means the BHA, Collin Vice in her individual capacity and in

her official capacity as Executive Director of the BHA, Jonas DeGuzman, in his individual

capacity and in his official capacity as Special Assistant to the Executive Director of the BHA,

and Judit Grof-Tiza, in her individual capacity and in her official capacity as Acting Executive

Director of the BHA.

2.     In the Class Action Complaint, the Complaint, Intervening Complaints, Motions, and

various other pleadings filed by the Plaintiffs (hereinafter the "Complaints"), the Plaintiffs have

alleged that the Defendants engaged in discrimination against Persons with Disabilities applying

or attempting to apply for or to transfer to mixed occupancy senior/disabled housing operated by

Defendant BHA, and have further alleged, inter alia, that Defendants violated the Fair Housing

Act, as amended, 42 U.S.C. Sections 3601 et seq. ("Fair Housing Act"), Section 504 of the

Rehabilitation Act, as amended, 29 U.S.C. Sections 794 et seq. ("Section 504"), Title II of the

Americans with Disabilities Act, 42 U.S.C. Sections 12131-12134 ("Title II"), the United States

Housing Act, 42 U.S.C. Sections 1437 et seq., 42 U.S.C. Section 1983, the Fifth and Fourteenth

Amendments to the United States Constitution, and other federal statutes and guidelines. The

central allegation of the Plaintiffs' Complaints is that the Defendant BHA has unlawfully

excluded non-elderly disabled persons, that is, disabled persons under the age of 62 years, from

residing at the Fireside Apartment Complex. The Plaintiffs also allege that these discriminatory

policies and practices include (1) denying to people with disabilities the opportunity to rent an

apartment at a senior/disabled housing complex owned and operated by the BHA; (2) steering

3

people with disabilities from a senior/disabled housing complex to other complexes owned by the BHA; (3) misrepresenting to people with disabilities the availability of senior/disabled housing owned and operated by the BHA; and (4) disregarding published procedures regarding applicants for admissions to public housing. In addition, in various pleadings and motions the Plaintiffs also claim that the Defendants (1) misinformed Persons with Disabilities about their eligibility for a preference to receive housing at the Fireside Apartments Complex; (2) excluded eligible applicants for public housing with disabilities from the Fireside and operated the Fireside as an "Elderly Only" complex; (3) offered to house, and actually leased to non-disabled, non-elderly applicants units at the Fireside, as part of the BHA's stock of mixed population or senior/disabled housing; (4) refused to transfer BHA tenants with disabilities to the Fireside; and (5) employed tenant selection and apartment assignment practices which limited, excluded or otherwise discriminated against Persons with Disabilities. The Plaintiffs claim that the policies and practices challenged in the Complaints have been in effect since at least October 19, 1999, and that some or all of the Defendants directed, knew or should have known of the discriminatory practices and procedures.

3.     The Defendants do not admit liability for any of the actions, practices or omissions raised by the Plaintiffs in their Complaints, and nothing contained in this Consent Decree nor any order approving this Consent Decree is or shall be construed as an admission by the Defendants of the truth of any allegation or the validity of any claim asserted in the Complaints, or of the Defendants' liability therefor, nor as a concession or an admission of any fault or omission of any act or failure to act, or of any statement, written document, or report heretofore issued, filed or made by the Defendants, nor shall this Consent Decree nor any papers related hereto and created

for settlement purposes only, nor any of the terms of either, be offered or received as evidence in any civil, criminal, or administrative action or proceeding in any Court or tribunal against the Defendants, nor shall they be construed by anyone for any purpose whatsoever as an admission or presumption of any wrongdoing on the part of the Defendants, nor as an admission by any party to this Consent Decree that the consideration to be given hereunder represents the relief which could be recovered after trial. Nothing herein shall be construed to preclude the use of this Consent Decree in order to effectuate the consummation, enforcement, or modification of its terms.

4.      Between May of 2003 and October of 2004, counsel for the parties have engaged in motion practice and extensive discovery, culminating in an order by the Court certifying a class, as described in its decision dated January 7, 2005 and attached hereto as Exhibit 'A'. After the Court certified the class, Plaintiffs' Counsel, while continuing to conduct discovery, negotiated over many months with Defendants' Counsel with respect to a compromise and settlement of the Complaints with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class Members. The Defendants and the Plaintiffs desire to avoid costly and protracted litigation and agree that the claims against the Defendants should be resolved without an evidentiary hearing. Accordingly, as indicated by the signatures appearing below, the parties have consented to entry of this Consent Decree.

5.      Subject to the provisions of Paragraph 3 above, the parties acknowledge that eliminating any practice or procedure that may discriminate against Persons with Disabilities will be mutually beneficial.

6.    The parties, having noted the risk that the ultimate result of this litigation cannot be predicted, and that continuation of this litigation would involve substantial additional costs, therefore desire to compromise and settle all disputes between them relating to the claims that were or might have been raised by the Plaintiffs in Matyasovszky, et al. v. Housing Authority of the City of Bridgeport, et al, 3:03 CV 968 (WIG) and Montes v. Housing Authority of the City of Bridgeport, et al, 3:04 CV 1 (WIG). The parties further acknowledge and affirm that avoidance of these risks and costs through the undertakings set forth herein constitutes good and valuable consideration for entering into this Consent Decree.

7.    The parties therefore have undertaken settlement negotiations that culminated in this Consent Decree at arm's length and in good faith. The Defendant BHA and Plaintiffs each freely, voluntarily, and with the advice of their respective counsel assent to the terms of this Consent Decree.

8.    Plaintiffs' Counsel and Class Counsel have concluded, based on their investigation and pretrial discovery as set forth above, that the terms and conditions of the settlement embodied in this Consent Decree are fair, reasonable and adequate to the Plaintiffs and the Class Members, and in their best interests, and have agreed to settle the claims raised in the Complaints pursuant to the terms and conditions of the settlement embodied in this Consent Decree, after considering: (a) the injunctive relief; (b) the benefits that the Members of the Class will receive from the settlement in this Consent Decree; (c) the attendant risk of continued litigation, including trial and/or appeal; (d) the likely length of time before final resolution of the claims in the Complaints, including time spent in possible appeals, if the Complaints are not settled; and (e) the desirability of permitting the settlement embodied in this Consent Decree to be

6

consummated.

8.1     The parties acknowledge that the BHA is subject to those regulations issued by HUD for

the development, modernization, and operation of public housing projects contained in Title 24

of the Code of Federal Regulations, as said Title shall be amended from time to time.  Pursuant

to the provisions of the Consolidated Annual Contributions Contract between HUD and the

BHA, the BHA is obligated to comply with those requirements and policies established by HUD.

The parties recognize and acknowledge that HUD, by approving the terms of this Consent

Decree, does not relinquish its authority to approve tenant assignment plans and to require

modification of such plans if necessary for the fair and efficient administration of HUD

programs.

        **NOW THEREFORE,** the Plaintiffs and the Defendants, through their respective

counsel, subject to the approval of the Court pursuant to Rule 23 (e) of the Federal Rules of Civil

Procedure, hereby consent to the entry of this Consent Decree providing for individual relief to

the named Plaintiffs and class-wide relief to the certified Class and its Class Members, as defined

herein, upon the following terms:

**II.     DEFINITIONS:**

9.      The following terms when used in this Consent Decree shall have the following meanings:

A.      "Authorized Claimant": means any Class Member whose Claim is approved for payment

pursuant to the terms of this Consent Decree.

B.      "Authorized Claim": means the Claim of any Class Member which is approved for

payment pursuant to the terms of this Consent Decree.  The dollar amount to be paid to each

Authorized Claim will be determined as set forth in Paragraphs 81 - 90 of this Consent Decree

and will be based upon the category to which the Authorized Claimant belongs, as approved by the Court.

C.     "Claim": means the claim of any person seeking the payment of money pursuant to the terms of this Consent Decree.

D.     "Claimant": means any person seeking the payment of money pursuant to the terms of this Consent Decree.

E.     "Claims Administrator": means a third party with whom Plaintiffs' Counsel contracts to perform the duties as set forth in Paragraph 64 of this Consent Decree, under the supervision of Plaintiffs' Counsel.

F.     "Claim Form": means the form attached hereto as Exhibit 'B' and the Disability Verification Form attached as Exhibit 'C'.

G.     "Class Distribution Order": means the Court order setting forth the Court's decision on (1) the acceptance and rejection of the Claim Forms submitted; (2) the category to which each Authorized Claimant belongs; (3) the dollar amount of each Authorized Claim based on the category to which each Authorized Claimant belongs; and (4) the disbursement of the proceeds contained in the Matyasovszky Class Settlement Fund to Authorized Claimants.

H.     "Class Member(s)" or "Members of the Class": All persons who: 1) between October 19, 1999 and September 1, 2005, were disabled and under the age of 62 years when they applied for a one-bedroom unit of public housing with the BHA and were assigned a one-bedroom unit of public housing at a BHA complex other than the Fireside Apartment Complex; or 2) between October 19, 1999 and September 1, 2005, were disabled and under the age of 62 years when they applied for a one-bedroom unit of public housing with the BHA and whose application or pre-

8

application was purged or withdrawn from the BHA waiting list or who, for any reason, were not offered public housing, other than for certain criminal conduct; or 3) between October 19, 1999 and September 1, 2005, were disabled and under the age of 62 years when they applied for a one-bedroom unit of public housing with the BHA and are currently on the BHA waiting list; or 4) after October 19, 1999, were disabled and under the age of 62 years when they inquired about a unit at the Fireside Apartment Complex and were informed that they were not eligible to live at that complex because they were not old enough (under the age of 62 years); or 5) after October 19, 1999, were BHA residents, disabled and under the age of 62 years when they sought to transfer to a unit at the Fireside Apartment Complex and were denied because they were not old enough (under the age of 62 years).

I.    "Court": means the United States District Court for the District of Connecticut.

J.    "Defendants": means the BHA, Collin Vice, in her official and individual capacity, Jonas DeGuzman, in his official and individual capacity, and Judit Grof-Tisza, in her official and individual capacity.

K.    "Defendants' Counsel":  means the law firm of Ryan Ryan Johnson & Deluca, LLP,  by Michael T. Ryan, Esq. and James A. Mahar, Esq.

L.    "Decree": refers to this Consent Decree and all exhibits hereto.

M.    "Disabled Family": means a family whose head, spouse, or sole member is a Person with Disabilities.  It may include two Persons with Disabilities living together.

N.    "Disabled Person" or "Person with Disabilities": means a person:

      1.    Who has a disability as defined in § 223 of the Social Security Act,

          42 U.S.C. § 423; or

2.      is determined, pursuant to regulations issued by the Secretary of Housing

and Urban Development, to have a physical, mental or emotional

impairment which (i) is expected to be of long-continued and indefinite

duration, (ii) substantially impedes his or her ability to live independently,

and (iii) is of such a nature that such ability could be improved by more

suitable housing conditions; or

3.      has a developmental disability as defined in § 102 of the Developmental

Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15002.

Such term shall not exclude persons who have the disease of acquired immunodeficiency

syndrome or any conditions arising from the etiological agent for acquired immunodeficiency

syndrome. Notwithstanding any other provision of law, no individual shall be considered a

"Person with Disabilities," for purposes of eligibility for low-income housing under 42 U.S.C. §

1437 et seq. solely on the basis of any drug or alcohol dependence.

O.      "Elderly Family" or "Senior Family": means a family whose head, spouse, or sole

member is a person who is an Elderly Person or a Senior Person.

P.      "Elderly Person" or "Senior Person":  means a person who is at least 62 years of age,

regardless of whether or not he or she also has a disability as defined in Paragraph N.

Q.      "Effective Date": Means the date when all of the following have occurred: (1) the Court

has finally approved, signed and entered the Final Approval Order and the Motion for Award of

Attorney's Fees; (2) the Court has entered an Order of Final Judgment of Dismissal, dismissing

the Action with prejudice, with continuing jurisdiction limited to enforcing or modifying the

terms of this Consent Decree; and (3) the time for appeal from the Final Approval Order has

10

either run without an appeal being filed or any appeal (including requests for rehearing, requests for rehearing en banc, petitions for writs of certiorari or appellate review) has been finally resolved. Unless otherwise specified herein, beginning on the Effective Date, this Consent Decree and the obligations and duties incorporated in it shall become effective and binding on the Parties and their agents and successors for so long as this Consent Decree remains in effect.

R.     "Fairness Hearing": means the hearing, pursuant to Fed. R. Civ. P. 23(e)(1)(c), to be held by the Court to determine (i) whether the settlement embodied in this Consent Decree should be approved as fair, reasonable, and adequate; and (ii) whether the Court should grant the Motion for Award of Attorney Fees.

S.     "Final Approval Order": means the Court's Order, entered after the Fairness Hearing, pursuant to Fed. R. Civ. P. 23(e)(1)(c): (1) granting final approval of this Consent Decree as fair, reasonable, and adequate to the Plaintiffs and the Class as a whole, and thus binding on the Defendant BHA, the Plaintiffs and each of the Class Members; (2) entering an Order of Final Judgment of Dismissal, dismissing all claims in this litigation with prejudice and on the merits; 3) granting the Motion for Award of Attorney Fees; and retaining continuing jurisdiction limited to enforcing or modifying the terms of this Consent Decree.

T.     "Fireside Apartment Complex" or "Fireside": means the public housing units owned and operated by the Defendant BHA, and which are located at 75 Stewart Street, Bridgeport, CT (BHA Project # 007); 655 Palisades Ave., Bridgeport, CT (BHA Project # 008); and 730 Palisades Ave., Bridgeport, CT (BHA Project # 010).

U.     "First Cash Settlement Amount": means Four-Hundred-Thirteen-Thousand Dollars ($413,000). The First Cash Settlement Amount includes: (1) Forty-Eight-Thousand Dollars

($48,000) for damages to be paid to the named Plaintiffs, Joseph and Sandra Pellechio, Thomas

Matyasovszky, Judith Montes, Linda Dedrick, Kenneth Gihon, and John Nelson, Jr.; (2) Forty-

Thousand Dollars ($40,000) representing all fees, costs and expenses of the Claims

Administrator for performing the duties required by this Decree; and (3) Three Hundred and

Twenty Five Thousand Dollars ($325,000.00) representing all costs, expenses and attorneys' fees

to be paid to Plaintiffs' Counsel and Class Counsel for all work performed in instituting and

prosecuting the Complaints and prospectively to be performed to effectuate or enforce this

Consent Decree.

V.      "Harborview Towers Apartment Complex" or "Harborview Towers" or "Harborview":

means the public housing units owned and operated by the Defendant BHA, and which are

located at 376 East Washington Ave., Bridgeport, CT (BHA Project # 009 and # 049).

W.      "HUD": means the United States Department of Housing and Urban Development.

X.      "Matyasovszky Class Settlement Fund": means the money that will be used to pay

Authorized Claimants pursuant to the terms of this Consent Decree, not including the First Cash

Settlement Amount, defined above. The amount of money in this fund shall be limited to the

"Second Cash Settlement Amount."

Y.      "Monetary Settlement": means the administration and distribution of the First Cash

Settlement Amount and the Second Cash Settlement Amount by Plaintiffs' Counsel and the

Claims Administrator pursuant to the terms of this Consent Decree. The term "Monetary

Settlement" does not include the Injunctive Relief provided for in this Consent Decree.

Z.      "Motion for Award of Attorney Fees": means the motion for award of attorney fees and

non-taxable costs to be filed pursuant to Fed. R. Civ. P. 23 (h).

AA.  "Notice of Proposed Settlement of Class Action", (hereinafter referred to as "Notice of Proposed Settlement"): means the document attached hereto as Exhibit 'D'.

BB.  "Over Housed Family": means a family that occupies a unit of public housing with more bedrooms than required to meet that family's needs.

CC.  "Over-Housed List":  means the list created by the BHA of Over-Housed Families.

DD.  "Plaintiffs": means Thomas Matyasovszky, Linda Dedrick, Joseph Pellechio, Sandra Pellechio, Kenneth Gihon, John Nelson, Jr., individually and on behalf of all Class Members, and Judith Montes.

EE.  "Plaintiffs' Counsel" or "Class Counsel": means the lawyers representing Plaintiffs and the Class Members, specifically, Alan Rosner, Esq. and Lori Welch-Rubin, Esq.

FF.  "Preliminary Approval Hearing": means a hearing scheduled after the Signing Date at which the Court makes a preliminary determination of the fairness of the proposed settlement embodied in this Consent Decree.

GG.  "Preliminary Approval Order": means the order entered by the Court after the Preliminary Approval Hearing, granting the Motion for Preliminary Approval, setting a date for the Fairness Hearing, approving the Notice of Proposed Settlement, ordering that notice be given to all Class Members, and directing the manner of providing notice to all Class Members.

HH.  "Pro Rata Share": means $2,000.00 multiplied by a fraction, the numerator of which is 387,000 and the denominator of which is equal to the total dollar amount of all Authorized Claims, assigned by the Claims Administrator or Plaintiffs' Counsel pursuant to paragraph 82.

II.  "Released Parties": means the Defendant BHA and its current and former employees, officers, directors, commissioners, successors, predecessors in interest, assigns, agents, attorneys

and insurers, and Collin Vice, in her official and individual capacity, Jonas DeGuzman, in his

official and individual capacity, Judit Grof-Tisza, in her official and individual capacity, Patsy

Michelle, in her official and individual capacity, Robert Graham, in his official and individual

capacity, and their heirs, executors, administrators, successors, assigns, agents, attorneys, and

insurers.

JJ.    "Releasors": means the Plaintiffs and each Class Member, as well as their heirs,

executors, administrators, successors, assigns, agents, attorneys, and any other person acting on

their behalf.

KK.    "Relevant Time Period": Means the period from October 19, 1999 through the Signing

Date.

LL.    "Scattered Site Units" or "Scattered Sites": means public housing units owned or

managed by the Defendant BHA, that are made up of one-bedroom, single family homes,

duplexes and multi-family developments that are located in different neighborhoods throughout

the City of Bridgeport, Connecticut and, for the purposes of this Consent Decree, are limited to

one-bedroom public housing units which are located at: (1) 1260 Boston Ave., Bridgeport, CT

(BHA Project # 022); (2) 200 Bond Street, Bridgeport, CT (BHA Project # 025; (3) 1150

Pembroke Street, Bridgeport, CT (BHA Project # 026); (4) 1121-B Iranistan Ave., Bridgeport,

CT (BHA Project # 050); and (5) 1810-1812 Stratford Ave., Bridgeport, CT (BHA Project # 53).

MM.    "Second Cash Settlement Amount": means the total amount of money to be paid to

Authorized Claimants pursuant to the terms of this Consent Decree.  It is expressly understood

and agreed that the Second Cash Settlement Amount shall not exceed Three-Hundred-Eighty-

Seven-Thousand Dollars ($387,000.00).  Use of the Second Cash Settlement Amount shall be

14

limited to funding the "Matyasovszky Class Settlement Fund" and paying Authorized Claimants.

NN.    "Senior/Disabled Housing", "Elderly/Disabled Housing" or "Mixed Population

Housing": means a public housing development, or portion of a public housing development, that

is reserved for Elderly and Disabled Families.

OO.    "Settled Claims": means any claim, cause of action, and/or suit, of any nature whatsoever,

for compensatory, punitive damages, attorney's fees, costs or expenses of litigation, or any other

relief, monetary, injunctive, administrative or otherwise, which was brought or might have been

brought by the Plaintiffs individually, on behalf of others, or by any Class Member under state or

federal law against the Defendants and the Released Parties or any of them, based upon, arising

out of, or in any way related to the acts, omissions, matters, facts, or occurrences, as alleged in

the Plaintiffs' Complaints.

PP.    "Signing Date": means the date this Consent Decree is signed by or on behalf of the

Plaintiffs, the Class Members and the Defendant, BHA.

**III.    INTERIM RELIEF:**

10.    As an interim relief measure, the Defendant BHA has assigned Plaintiffs Linda Dedrick,

Kenneth Gihon, and Sandra and Joseph Pellechio to units at the Fireside Apartment Complex.

The assignment of said Plaintiffs to Fireside units was made as part of this negotiated Consent

Decree and nothing contained in this paragraph or any other provision of this Consent Decree

shall be interpreted as a waiver of any eligibility requirements contained in the BHA's

Admissions and Continued Occupancy Plan or as permitting the assignment of BHA units to any

other applicants or tenants in a manner other than as described in the BHA's Admissions and

Continued Occupancy Plan and the provisions of this Consent Decree.

## IV.    INJUNCTIVE RELIEF - REVISION OF PROCEDURES:

11.    Effective on the Signing Date, the Defendant BHA shall not use age restrictions when determining eligibility of Disabled Families for Senior/Disabled Housing units, such as those at Fireside and Harborview Towers, nor shall they use age restrictions when assigning Senior/Disabled Housing units to Disabled Families, except as otherwise provided for in Paragraph 36 of this Consent Decree.

12.    Effective on the Signing Date, the Defendant BHA shall only assign Elderly Families and Disabled Families to Senior/Disabled Housing units.

13.    Not later than ten days after the Signing Date, the Defendant BHA shall obtain a written statement from all current employees of the Resident Selection Office indicating the name and title of the person and certifying that said employee acknowledges and understands the injunctive relief set forth in Paragraphs 11 and 12 above. The Defendant BHA shall forward copies of such statement forms to Plaintiffs' Counsel. A copy of said statement form is attached hereto as Exhibit 'E'.

14.    The Defendant BHA has modified its former Pre-Application and Application Forms by merging the two documents into one form, the "Pre-Application/Application Form." The new Pre-application/Application Form requests information necessary to identify Persons with Disabilities who may be eligible for Senior/Disabled Housing. A copy of the revised Pre-Application/Application Form is attached hereto as Exhibits 'F'. When applicants for public housing complete a Pre-application, they shall receive a copy of the "Notice Regarding Senior/Disabled Housing," a copy of which is attached hereto as Exhibit 'G'. The "Notice Regarding Senior/Disabled Housing" states: the name and location of each BHA complex that

16

contains Senior/Disabled Housing units, the definitions of Disabled Families and Elderly Families; and detailed information accurately describing all of the ways in which Persons with Disabilities who apply for public housing may prove their disability status.

15.    At the time an Elderly or Disabled applicant for a one-bedroom unit of public housing with the BHA completes the Tenant Preference Form, whereon applicants state their preferences for particular BHA housing complexes, the BHA shall provide them with a written notice (the "Senior/Disabled Preference Notice") stating that Disabled Families and Elderly Families are entitled to a preference for the Senior/Disabled Housing units and to identify by name and street address all such complexes containing Senior/Disabled Housing units. Said notice shall be entirely in bold typeface and headed as follows "**IMPORTANT NOTICE FOR DISABLED AND ELDERLY APPLICANTS ONLY.**" A copy of the Tenant Preference Form which contains the "Senior/Disabled Preference Notice" is attached hereto as Exhibit 'H.'

16.    Effective on the Signing Date, the Defendant BHA shall document on the file of each eligible applicant for Senior/Disabled Housing units at the Fireside or Harborview Towers the date that the applicant's file became ready for assignment. Effective on the Signing Date, the Defendant BHA will also notify applicants for Senior/Disabled Housing in writing of the date they are determined to be eligible for public housing.

17.    Not later than ninety (90) days after the Signing Date, the Defendant BHA will develop a plan for providing training to employees and/or agents of the Resident Selection Office regarding the rights of Disabled Persons in applying for Senior/Disabled Housing units, the definition of "Disabled Person," the manner in which an applicant or tenant may establish their disabled status, and tenant selection policies and procedures.

17

18.    Not later than ninety (90) days after the Signing Date, the Defendant BHA shall advertise

a "Request for Proposal" from outside vendors to develop a comprehensive training manual (the

"Training Manual") describing, for the benefit of BHA staff, the BHA's actual practices for

processing applications from Persons with Disabilities and assigning applicants and individuals

requesting transfers to Senior/Disabled Housing units, and conforming those practices to this

Consent Decree.

19.    Each new employee, including any temporary employee, of the BHA Resident Selection

Office, or other BHA employee, whose responsibilities include interviewing applicants or

processing applications and/or transfer requests, hired after the Effective Date of this Consent

Decree, shall receive training regarding the topics outlined in paragraphs 11 and 12 within (90)

days of commencement of his or her employment. The Defendant BHA shall obtain a form

signed by each such employee stating the name and title of the person, the date of completion of

the training and, after the Training Manual is prepared, confirming receipt of a copy of the

Training Manual.  The Defendant BHA shall forward a copy of each form to Plaintiffs' Counsel

for so long as this Consent Decree remains in effect.  A copy of said form is attached hereto as

Exhibit 'I'.

20.    As soon as practical, the Defendant BHA shall distribute the Training Manual to each

BHA employee or temporary worker who works in the Resident Selection Office, the Site

Management Offices, or any office that distributes Pre-Application/Application Forms to the

public, and each such employee or temporary worker shall have attended a training session

regarding the changes in procedures described in the Training Manual.  The Defendant BHA

shall obtain a form signed by each such staff person stating the name and title of the person, the

18

date of completion of the training, and confirming receipt of a copy of the Training Manual. The Defendant BHA shall forward a copy of each form to Plaintiffs' Counsel, upon completion of training, for so long as this Consent Decree remains in effect. A copy of said form is attached hereto as Exhibit 'I'.

21.     Not later than thirty (30) days after the Signing Date, the Defendant BHA shall make arrangements with the Bridgeport Fair Housing Office, HUD, or other suitable provider, to provide interim training to the Resident Selection Office staff regarding the practices for processing applications from Persons with Disabilities, assigning applicants and transfers to Senior/Disabled Housing units pursuant to this Consent Decree, and the manner in which applicants or tenants may establish their disability status, consistent with the provisions set forth in this Consent Decree. Said interim training shall be completed no later than 60 days after the Signing Date. The Defendant BHA shall verify in writing to Plaintiffs' Counsel that every member of its Resident Selection Office staff has received such training.

22.     Not later than thirty (30) days after the date of the next BHA Board of Commissioners' Meeting following the date of the Preliminary Approval Order, the Defendant BHA shall revise its Admissions and Continued Occupancy Plan and the Five Year PHA Plan to conform in all respects to the injunctive relief required under this Consent Decree, and in particular to reflect the use of a separate waiting list for applicants for Senior/Disabled Housing units (the "Senior/Disabled Housing Waiting List"). The Defendant BHA must certify to Plaintiffs' Counsel that the Senior/Disabled Housing Waiting List is in active use by the established deadline set forth in Paragraph 26, below. The Defendant BHA shall provide Plaintiffs' Counsel with a copy of the Senior/Disabled Housing Waiting List for applicants for Senior/Disabled

Housing units no later than thirty(30) days from the Signing Date and then monthly for the next

six (6) months, and thereafter quarterly for so long as this Consent Decree remains in effect.

## V.    INJUNCTIVE RELIEF - NOTICE TO PUBLIC OF PROCEDURES

23.    The Defendant BHA shall, not later than thirty (30) days after the Signing Date, provide a

copy of the Notice Regarding Senior/Disabled Housing to all current BHA staff, current BHA

tenants, and all persons currently on the general waiting list of the existence of the

Senior/Disabled Housing units and the fact that Senior/Disabled Housing is available to eligible

Disabled Families and Elderly Families.

24.    Copies of the "Notice Regarding Senior/Disabled Housing", shall be provided to the

United Way, Family Services Woodfield, Greater Bridgeport Mental Health Center, Bridgeport

Community Health Center, Southwest Community Health Center, Park City Primary Care

Center, Operation Hope, Merton House, St. Vincent Medical Center Family Clinic, Bridgeport

Hospital Family Clinic, Connecticut Legal Services, and the City of Bridgeport's Disability and

Fair Housing Offices.  Such notice shall be distributed annually for as long as this Consent

Decree is in effect, and shall reflect such additions or subtractions as may be made to the BHA's

Senior/Disabled Housing stock.  A copy of this notice shall also be posted in a conspicuous place

in the BHA Resident Selection Office Waiting Room and in the offices in which applicants are

interviewed.

25.    Copies of the "Notice Regarding Senior/Disabled Housing" provided to the organizations

identified in Paragraph 24, including the Defendant BHA, shall be enlarged to a paper size no

smaller than Seventeen and one-half inches by Eleven inches (17 ½" X 11").  A copy of the

"Notice Regarding Senior/Disabled Housing" shall be printed on brightly colored paper and

agreed to by Plaintiffs' Counsel and Defendants' Counsel.

## VI.    INJUNCTIVE RELIEF -PROVISION OF HOUSING

26.    Not later than thirty (30) days after the Signing Date, the Defendant BHA shall create and maintain a separate waiting list for Senior/Disabled Housing units (the "Senior/Disabled Housing Waiting List"). All Senior and Disabled Families who complete a Pre-Application for one-bedroom units shall be given a notice (the "Notice Regarding Senior/Disabled Housing" ) advising them of the Senior/Disabled Housing Waiting List and that they will be placed on said list, in addition to being placed on the general waiting list.

27.    Not later than thirty (30) days after the Signing Date, the Defendant BHA will provide a copy of the "Notice Regarding Senior/Disabled Housing" to all applicants for one bedroom units currently on the general population waiting list, advising them that they may be eligible to be placed on the Senior/Disabled Housing Waiting List. Future applicants will be given said notice when they complete a Pre-Application.

28.    Priority on the Senior/Disabled Housing Waiting List shall be determined by each applicant being placed on the list in chronological order according to the date and time his or her Pre-Application was stamped in and shall be provided housing in accordance with Paragraphs 36 and 37 below.

29.    The Defendant BHA shall create and maintain a "Fireside Disabled Transfer List" for current BHA tenants who (1) were disabled at the time they were initially assigned a one-bedroom unit of public housing by the BHA or became disabled and otherwise eligible for a one bedroom unit during their tenancy with the BHA; (2) do not reside in the Fireside Apartment Complex; and (3) wish to be considered for a transfer to a unit at the Fireside Apartment

21

Complex, in accordance with the provisions set forth below.

30.     Not later than thirty (30) days after the Signing Date, the Defendant BHA will notify all

current disabled tenants of one bed-room units who do not reside in the Fireside Apartment

Complex that they may be eligible to be placed on the Fireside Disabled Transfer List, pursuant

to the terms of this Consent Decree. Such notification shall be accomplished by means of a

written form (the "Fireside Disabled Transfer List Notice" a copy of which is attached hereto as

Exhibit 'J'), attached to which shall be a form for requesting a transfer pursuant to this Decree

(the "Fireside Disabled Transfer Request Form" a copy of which is attached hereto as Exhibit

'K'). The Fireside Disabled Transfer Request Form shall state that the completed form is to be

returned to the BHA's Resident Selection Office on a Date Certain in order for a tenant to be

considered for a place on the Fireside Disabled Transfer List. The Date Certain shall be no

earlier than sixty (60) days from the date the Fireside Disabled Transfer Request Forms are

mailed. Forms that are received by the BHA after the Date Certain shall not be considered for

placement on the Fireside Disabled Transfer List, except that the BHA shall give reasonable

consideration for "good cause" shown to people who submit Fireside Disabled Transfer Request

Forms after the Date Certain. In order to establish "good cause," a tenant must show that his or

her failure to return the Fireside Disabled Transfer Request Form in a timely manner was due to

extraordinary circumstances beyond his or her control. For purposes of this paragraph, "good

cause" includes, but is not limited to, a situation where a tenant was hospitalized and prevented

from returning said form due to hospitalization. Any dispute as to whether a tenant has shown

"good cause" for failing to return the Fireside Disabled Transfer Request Form before the date

certain shall be decided by the Court. Any tenant who shows "good cause" as to why the

22

Fireside Disabled Transfer Request Form was not returned before the date certain, shall be

eligible for placement on the Fireside Disabled Transfer List in the order he or she would have

been eligible, pursuant to Paragraph 35 of this Consent Decree, as if he or she had returned the

Fireside Disabled Transfer Request Form before the Date Certain.  The Defendant BHA shall

provide Plaintiffs' Counsel with a list of the names of tenants who submitted the Fireside

Disabled Transfer Request Form but were denied placement on the Fireside Disabled Transfer

List because they did not return the Fireside Disabled Transfer Request Form by the Date

Certain.  The Defendant BHA shall also provide Plaintiffs' Counsel with copies of the

documents submitted by tenants who failed to establish "good cause" for their failure to return

the Fireside Disabled Transfer Request Form by the Date Certain.

31.    Only tenants who: (1) are Class Members; (2) were either under the age of 62 years and

disabled when they were initially assigned a one-bedroom unit of public housing with the BHA

or thereafter became disabled before reaching the age of 62 years; and (3) are in "Good Standing"

and meet the requirements for a transfer pursuant to the BHA Admissions and Continued

Occupancy Plan, will be considered for placement on the Fireside Disabled Transfer List.  For

the purposes of this Consent Decree and for the purposes of being eligible for placement on the

Fireside Disabled Transfer List, "Good Standing" means: a tenant who: (1) is current in his or her

rent payments; (2) does not engage in conduct that constitutes a serious threat to the health,

safety, or right to peaceful enjoyment of the premises by other residents and/or BHA employees,

including, but not limited to: (a) criminal activity, which includes violent crimes, any drug-

related criminal activity occurring on or off, not just on or near, the BHA premises, and any other

crime that poses a threat to the life, health, safety or peaceful enjoyment of the premises by other

23

residents; (b) the illegal use of any controlled substance or the abuse of alcohol or the use of any

controlled substance in such a way that may interfere with the health, safety, or right to peaceful

enjoyment of the premises by other residents; and (c) any other conduct that constitutes a serious

threat to the health, safety, or right to peaceful enjoyment of the premises by residents or to BHA

employees; and (3) meet the housekeeping standards of the Defendant BHA.

32.    For the purposes of being transferred to a Fireside Unit, tenants who are placed on the

Fireside Disabled Transfer List who are more than 30 days behind on their rent or who owe any

administrative charges pursuant to the terms of their lease with the BHA ("Delinquent Tenants"),

shall be placed on the Fireside Disabled Transfer List, but shall not be transferred until their rent

is brought current and all administrative charges are paid.  If a Delinquent Tenant reaches the top

of the Fireside Disabled Transfer List and is more than 30 days behind on their rent or owes

administrative charges, that tenant shall not be transferred to the Fireside Apartment Complex

and the available Fireside Unit shall be offered to the next eligible tenant on said list.  The

Delinquent Tenant shall remain at the top of the Fireside Disabled Transfer List until their rent is

brought current and all administrative charges are paid, at which time they shall be eligible for a

transfer to a Fireside Unit in accordance with the provisions of this Consent Decree.

33.    With regard to BHA tenants who have entered into Stipulations with the Defendant BHA

in Housing Court Cases for enforcement of any provision of their lease, the placement of a tenant

on the Fireside Disabled Transfer List and/or the actual transfer to a Fireside Unit shall not alter

the terms of said Stipulations and the terms of said Stipulations shall remain in full force and

effect, to the extent permissible by law.  The Defendant BHA retains the right to enforce any

provision of said Stipulation and does not waive any remedy thereunder, to the extent permissible

24

by law.

34.    For the purposes of eligibility for placement on the Fireside Disabled Transfer List, the receipt of Social Security or Supplemental Security Income ("SSI") disability benefits by a tenant shall be sufficient proof of the tenant's disability status.  Tenants who do not receive Social Security or SSI benefits but who believe they are disabled, shall be given an opportunity to prove their disability status by delivering to the Defendant BHA a fully completed Disability Verification Form completed by a qualified professional having knowledge of the person's disability (not necessarily a physician) who can verify the tenant's status.  A copy of the "Disability Verification Form" will be attached to the Transfer Request Form.

35.    Within ten (10) business days after the Date Certain for tenants to return the Fireside Disabled Transfer Request Forms, the Defendant BHA shall prepare a Fireside Disabled Transfer List for units at the Fireside Apartment Complex.  Priority on the Fireside Disabled Transfer List shall be determined by the date and time the tenant filed his or her last Pre-Application which was processed by the Defendant BHA.  The Defendant BHA shall provide a copy of the Fireside Disabled Transfer List to Plaintiffs' Counsel.

36.    Following the establishment of the Senior/Disabled Housing Waiting List and the Fireside Disabled Transfer List, the available Senior/Disabled Housing units at the Fireside Apartment Complex shall be offered in the following order, except as set forth in paragraph 37, until the ratio of Disabled Families to Elderly Families residing at the Fireside reaches 2:1:

    1.    First, to the next Elderly Family on the Senior/Disabled Housing Waiting List or on the Over Housed list.

    2.    Second, to the next Elderly Family on the Senior/Disabled Housing Waiting List

or on the Over Housed List.

3.  Third, to the next Disabled Family on the Senior/Disabled Housing Waiting List whose head of household is under 50 years of age on the date the offer is made. If there is no such Disabled Family on the Senior/Disabled Housing Waiting List whose file is ready to be assigned, then to the next Disabled Family on the Fireside Disabled Transfer List whose head of household is under 50 years of age on the date the offer is made. If there are no Disabled Families whose head of household is under 50 years of age on either the Senior/Disabled Housing Waiting List or on the Fireside Disabled Transfer List, then to the next Disabled Family on the Senior Disabled Housing Waiting List whose head of household is under 62 years of age on the date the offer is made.

4.  Fourth, to the next Disabled Family on the Senior/Disabled Housing Waiting List whose head of household is under 50 years of age on the date the offer is made. If there is no such Disabled Family on the Senior/Disabled Housing Waiting List whose file is ready to be assigned, then to the next Disabled Family on the Fireside Disabled Transfer List whose head of household is under 50 years of age on the date the offer is made. If there are no Disabled Families whose head of household is under 50 years of age on either the Senior/Disabled Housing Waiting List or on the Fireside Disabled Transfer List, then to the next Disabled Family on the Senior Disabled Housing Waiting List whose head of household is under 62 years of age on the date the offer is made.

5.  Fifth, to the next Disabled Family on the Senior/Disabled Housing Waiting List

whose head of household is under 62 years of age on the date the offer is made.

6.    Sixth, to the next Disabled Family on the Fireside Disabled Transfer List. If there is no Disabled Family on the Fireside Disabled Transfer List, then to the next Disabled Family on the Senior/Disabled Housing Waiting List whose head of household is under 62 years of age on the date the offer is made.

7.    Seventh, to the next Elderly Family on the Senior/Disabled Housing Waiting List or on the Over Housed List.

8.    Eighth, to the next Disabled Family on the Senior/Disabled Housing Waiting List whose head of household is under 50 years of age on the date the offer is made. If there is no such Disabled Family on the Senior/Disabled Housing Waiting List whose file is ready to be assigned, then to the next Disabled Family on the Fireside Disabled Transfer List whose head of household is under 50 years of age on the date the offer is made. If there are no Disabled Families whose head of household is under 50 years of age on either the Senior/Disabled Housing Waiting List or on the Fireside Disabled Transfer List, then to the next Disabled Family on the Senior Disabled Housing Waiting List whose head of household is under 62 years of age on the date the offer is made.

9.    Ninth, to the next Disabled Family on the Senior/Disabled Housing Waiting List whose head of household is under 50 years of age on the date the offer is made. If there is no such Disabled Family on the Senior/Disabled Housing Waiting List whose file is ready to be assigned, then to the next Disabled Family on the Fireside Disabled Transfer List whose head of household is under 50 years of age

on the date the offer is made. If there are no Disabled Families whose head of household is under 50 years of age on either the Senior/Disabled Housing Waiting List or on the Fireside Disabled Transfer List, then to the next Disabled Family on the Senior Disabled Housing Waiting List whose head of household is under 62 years of age on the date the offer is made.

10.    Tenth, to the next Disabled Family on the Senior/Disabled Housing Waiting List whose head of household is under 62 years of age on the date the offered is made.

11.    Eleventh, to the next Disabled Family on the Fireside Disabled Transfer List. If there is no Disabled Family on the Fireside Disabled Transfer List, then to the next Disabled Family on the Senior/Disabled Housing Waiting List whose head of household is under 62 years of age on the date the offer is made.

12.    Twelfth, to the next Elderly Family on the Senior/Disabled Housing Waiting List or on the Over Housed List.

37.    Notwithstanding the provisions of paragraph 36, if there is an Elderly Family on the Over Housed List which is willing to accept a one-bedroom unit at the Fireside, then the Defendant BHA may assign the unit to that family at any time. If the Defendant BHA assigns a Fireside Unit to an Elderly Family on the Over Housed List outside of the order set forth above, then the Defendant BHA shall skip the next assignment to an Elderly Family. The purpose of this provision is to allow the Defendant BHA the flexibility to transfer Over Housed Families when necessary in order to make larger units available to families on the general population waiting list which require multiple bedroom units. The BHA shall not assign Fireside units to over housed Elderly tenants pursuant to this provision, more than once during any cycle of the rotation.

38.    Available vacant units at the Fireside Apartment Complex shall be offered in the manner described above until such time as the ratio of Disabled Families to Elderly Families residing in the Fireside Apartment Complex reaches 2:1. After such ratio is achieved, the Defendant BHA shall be permitted to offer units at the Fireside Apartment Complex in any manner permitted by the applicable statutes and regulations.

39.    A Family shall be considered "Disabled" for the purposes of determining whether the 2:1 ratio set forth in Paragraph 38 has been reached if the head of household is a Person with Disabilities and was under the age of 62 years on the date they were offered a Public Housing Unit at the Fireside Apartment Complex. However, if a family was assigned to the Fireside Apartments prior to September 1, 2004, and the head of household was between the ages of 55 years and 62 years on the date they were offered the unit, that family shall be counted as an "Elderly Family" for the purposes of determining the ratio. Families who are transferred to Fireside Apartment complex from the Fireside Disabled Transfer List shall be counted as "Disabled Families" for the purposes of determining the ratio, regardless of their age on the date they actually moved into a unit of Public Housing at the Fireside Apartment Complex. Any named Plaintiff residing at the Fireside shall be considered "Disabled" for the purposes of determining the ratio.

40.    In addition to the provisions for the assignment of units at the Fireside Apartment Complex, set forth in paragraph 36, the Defendant BHA will offer eligible Disabled Families on the Senior/Disabled Housing Waiting List the option of accepting an available vacant one-bedroom Scattered Site Unit as an alternative to a unit at the Fireside Apartment Complex. The Defendant BHA will continue to offer one-bedroom Scattered Site Units to Disabled Families on

the Senior/Disabled Housing Waiting List until twenty-five (25) such units are assigned to Disabled Families. The assignment of one-bedroom Scattered Site Units to Disabled Families shall not effect the Defendant BHA's obligation to meet the ratio of Disabled Families to Elderly Families set forth in paragraph 38. The Defendant BHA's obligation to assign 25 Scattered Site units to Disabled Families shall continue until 25 units are assigned, even if the ratio set forth in paragraph 38 is met before the 25 units are assigned.

41.     When the Court, upon motion, finds that: (1) the ratio of Disabled Families to Elderly Families residing at the Fireside Apartment Complex, has reached 2:1; (2) that twenty-five (25) one-bedroom units in Scattered Sites have been assigned to and accepted by Disabled Families, as set forth in paragraph 40; and (3) and that the First and Second Cash Settlement Amounts have been deposited as required by Paragraphs 95, 98 and 100, then this Consent Decree shall terminate. A party opposing the termination of this Consent Decree shall file its objection within twenty (20) days of the filing of a Motion to Terminate.

42.     Not later than ninety (90) days after the Signing Date, the Defendant BHA will apply to HUD for additional Section 8 vouchers for distribution to Class Members and use reasonable efforts in obtaining said vouchers. The Defendant BHA shall provide Plaintiffs' Counsel with notice of the request and copies of all documents, including correspondence, between the BHA and HUD related to the application for additional Section 8 vouchers, subject to any privilege and/or privacy rights regarding such documents.

43.     The Defendant BHA agrees not to seek an "Elderly Only" designation from HUD for the Fireside Apartment Complex for a period of seven (7) years following the Signing Date of this Consent Decree.

## VII.  COMPLIANCE

44.      The Defendant BHA shall certify its compliance with the obligations imposed by the

provisions for injunctive relief contained in this Consent Decree, including the obligations set

forth in Paragraphs 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 30 and 42.  Such certification shall be

made by letter from the Defendant BHA, to Plaintiffs' Counsel no later than 90 business days

after the commencement of the obligation in each Paragraph.  The Defendant BHA shall respond

within five business days to any reasonable request for information from Plaintiffs' Counsel,

regarding the Defendant BHA's compliance with its obligations under this Consent Decree.

45.      The Defendant BHA agrees to maintain in each tenant's file the following documents

related to the assignment of applicants and tenants to one-bedroom units of Senior/Disabled

Housing at the Fireside and Harborview Towers and one-bedroom units in Scattered Sites, by the

BHA:

        a) Pre-Application;

        b) Assignment Letter;

        c) Application for Admissions and Continued Occupancy;

        d) Tenant Preference Form;

        e) Home Visit Form;

        f) The letter to applicants notifying them of the date they were determined to be eligible

        for a unit of public housing; and

        g) The Disability Verification form or documentation from the Social Security

        Administration confirming the disability status of applicant or tenant, if applicable.

        Plaintiffs' Counsel shall be permitted to inspect said files and copy the above identified

documents and any other documents related to the application process, eligibility determination, transfer process, or the assignment of units of Senior/Disabled Housing, upon reasonable advanced notice and shall contact the BHA's Executive Director or his designee to schedule a time to do so. Plaintiffs' Counsel agrees and stipulates that the information contained in the aforementioned documents is private information and is to be held strictly and absolutely confidential. The information contained in the above identified documents shall only be used for purposes related to the enforcement of this Consent Decree and shall not be disclosed to third parties without written consent of the applicant or tenant, or by order of the Court. Any document filed with the Court that quotes, attaches, or refers to information obtained from the BHA's files, shall be filed under seal and shall remain sealed until further order of the Court, or shall be filed with the Court so that any such information is redacted. The parties agree to comply with the terms of this stipulated agreement following the entry of the Order of Final Judgment of Dismissal and the termination of this Consent Decree.

46.    The Defendant shall, on a monthly basis, provide Plaintiffs' Counsel with a list of all applicants and tenants offered public housing units at the Fireside Apartments, one-bedroom units in Scattered Sites, and any other one-bedroom unit of Senior/Disabled housing. Said list shall contain the name of the applicant or tenant, their date of birth, the date they were offered a Fireside unit, and shall indicate whether the unit was accepted and whether the applicant or tenant is disabled or elderly.

## VIII    PRELIMINARY APPROVAL AND NOTICE OF PROPOSED SETTLEMENT

47.    After this Consent Decree is signed by the Defendant, BHA and Class Counsel it will be filed in Court, together with a motion (the "Motion for Preliminary Approval"), signed by

32

Counsel for the Defendants and Class Counsel, requesting that the Court review this Consent Decree and make a preliminary evaluation of the fairness of the Decree.

48.     If the Court determines that the settlement proposed in this proposed Consent Decree does not disclose grounds to doubt its fairness or other obvious deficiencies and that it appears to fall within the range of possible approval, then the Court will enter an order:

   a.     granting the Motion for Preliminary Approval;

   b.     approving the form of the Notice of the Proposed Settlement attached to this Consent Decree as Exhibit 'D';

   c.     approving the form of the Claim Form attached to this Consent Decree as Exhibit 'B';

   d.     directing that the Notice of Proposed Settlement and the Claim Form be distributed to the Class Members in the manner set forth in Section VIII of this Consent Decree;

   e.     scheduling a hearing (the "Fairness Hearing"), pursuant to Fed. R. Civ. P. 23(e) to determine whether (i) the proposed settlement, as set forth in this Consent Decree is fair, reasonable and adequate and (ii) the Court should approve the Motion for Award of Attorney's Fees; and

   f.     stating that, pending entry of the Order of Final Judgment of Dismissal, no Member of the Class, either directly, representatively, or in any other capacity, shall commence any action or proceeding in any court or tribunal asserting any of the Settled Claims against the Defendants or the Released Parties.

**Notice of Proposed Settlement**

49.     The Notice of Proposed Settlement is attached hereto as Exhibit "D."

50.     Any Class Member who wishes to do so may object and/or enter an appearance in the action at his or her own expense, individually or through counsel of his or her own choice, and be heard to the extent allowed by the Court in opposition to the fairness, reasonableness and adequacy of the settlement embodied in this Consent Decree, or to Plaintiffs' Counsel's Motion for Award of Attorney Fees, by complying with the procedures set forth in the Notice of Proposed Settlement.

51.     Within ten (10) business days after the Court grants the Motion for Preliminary Approval, the  Defendant BHA, shall provide Plaintiffs' Counsel with a copy of:

a.     a list containing the names and addresses of all BHA tenants occupying one-bedroom units at Harborview Towers, Marina Village, and Scattered Sites;

b.     a list containing the names and last known addresses of former tenants of Harborview Towers, and one-bedroom units at Marina Village and Scattered Sites, who moved into said units after October 19, 1999, and vacated said units before the Signing Date, excluding tenants transferred to larger units within the BHA;

c.     a list containing the names and addresses of applicants for one-bedroom units on the current BHA waiting list; and

d.     a list containing the names and last known addresses of each person who filed an application for a one-bedroom BHA unit between October 19, 1999 and the September 1, 2005, but whose Pre-application or Application was withdrawn or who was otherwise determined to be ineligible for public housing with the

Defendant BHA, or who was otherwise not offered a one-bedroom unit of public housing. The parties agree that the aforementioned lists shall be used only for identifying potential Claimants and distributing the Notice of Proposed Settlement and Consent Decree and the Claim Form to each potential Class Member by the Claims Administrator.

52.    Not later than thirty (30) days after the Court grants the Motion for Preliminary Approval, the Defendant BHA shall mail a copy of the Notice of Proposed Settlement and the Claim Form to each person on the lists identified in Paragraph 51, who was under the age of 62 years on the date they filed their Pre-application for public housing with the Defendant BHA.

53.    If the Notice of Proposed Settlement and the Claim Form is returned indicating that the last known address of the individual is no longer accurate, the Defendant BHA shall use the information contained in the individual's file, maintained by the BHA ("BHA file"), to attempt to identify a current address for the individual. If the Defendant BHA is unable to identify a current address for the individual based on the information contained in the BHA file, then the Defendant BHA shall perform a National Change of Address ("NOCA") database search, or such other similar computer database search in an effort to locate a current address for the individual. The Defendant BHA shall re-mail the Notice of Proposed Settlement and the Claim Form to the address as identified pursuant to the foregoing procedure.

54.    If the Defendant BHA is unable to determine a current address for potential Class Members, as set forth in Paragraph 53, or if any re-mailed Notice of Proposed Settlement and Claim Form is returned as undeliverable a second time and the addressee fails to file a claim by the Claim Deadline referred to in Paragraph 69, it shall be presumed that such potential Class

35

Member addressee cannot be located and that such potential Class Member addressee shall not be an Authorized Claimant, but shall in all other respects be bound by all of the terms of this Consent Decree and the settlement embodied in this Consent Decree, including the terms of the Order of Final Judgment of Dismissal to be entered pursuant to this Consent Decree and the Releases provided for herein, and will be barred from bringing any action or proceeding against the Defendants or the Released Parties concerning the Settled Claims.

55.    The Defendant BHA shall provide the Claims Administrator with copies of the following:

a.    The lists identified in Paragraph 51 of the names and last known addresses of potential Class Members to whom the Defendant BHA shall mail copies of the Notice and Proposed Settlement and the Claim Form;

b.    A list of the names of the potential Class Members from whom the Notice of Proposed Settlement and Claim Form is returned;

c.    A list of the names and addresses of potential Class Members for whom they are able to determine a current address by either of the methods set forth in Paragraph 53; and

d.    A list of the names of potential Class Members for whom the Defendant BHA is unable to determine a current address or whose re-mailed Notice of Proposed Settlement and Claim Form is returned as undeliverable.

56.    The Claims Administrator shall cause a "Summary Notice" to be published in three newspapers serving the greater Bridgeport area, one of which shall be the Connecticut Post. The "Summary Notice" shall also appear in another English language newspaper and in a prominent Spanish language newspaper. The "Summary Notice" shall appear in the Connecticut Post and