the other English language newspaper on at least one Sunday during the four weeks subsequent to the Court's granting of the Motion for Preliminary Approval and in the prominent Spanish language newspaper on two Sundays during four weeks subsequent to the Court's granting of the Motion for Preliminary Approval. Additional newspaper advertisements shall be run in the discretion of the Claims Administrator and Plaintiffs' Counsel. The Summary Notice shall contain a summary of the terms of the Notice of Proposed Settlement and information regarding the locations where potential Class Members may obtain additional information about the lawsuit and copies of the Notice of Proposed Settlement and the Claim Form. The contents of the Summary Notice shall be agreed to by Plaintiffs' Counsel and Defendants' Counsel and shall be approved by the Court.

57.    The Claims Administrator shall also deliver copies of the Notice of Proposed Settlement and the Claim Form to the Executive Director or other appropriate managerial person at the social service and legal organizations listed in Paragraph 24 above and any other agencies in the discretion of the Claims Administrator.

58.    The Defendant BHA will post a copy of the Notice of Proposed Settlement at the Resident Selection Office and at its Administrative Offices. The Defendant BHA shall also post a link on its Website to a copy of the Claim Form and a summary of the terms of the proposed Consent Decree.

59.    The Claims Administrator may provide the Notice of Proposed Settlement and the Claim Form to potential Class Members by any other means that has a reasonable likelihood to provide notice to Class Members.

## IX.    CLAIMS ADMINISTRATION

### Claims Administrator

60.    Plaintiffs' Counsel shall supervise the Claims Administrator in connection with the notice, claims administration, claims procedure and administration of the Monetary Settlement as set forth in this Consent Decree, subject to the jurisdiction of the Court.

61.    The Defendants and the Released Parties shall have no liability, obligation or responsibility for: (a) administration of the Monetary Settlement, including, but not limited to, the disbursement of the First Cash Settlement Amount, the Second Cash Settlement Amount, or the determination, calculation or payment of any amounts to the Plaintiffs or Class Members or the Claims Administrator; (b) the payment of any fees, expenses or costs in connection with the performance of the duties of the Claims Administrator, Plaintiffs' Counsel or Class Counsel, except to the extent that the First Cash Settlement Amount and the Second Cash Settlement Amount are being paid on behalf of the Defendants pursuant to the terms of this Consent Decree; or (c) the payment of taxes or the filing of any tax returns on behalf of the Plaintiffs, Plaintiffs' Counsel, Class Counsel, the Claims Administrator, Authorized Claimants or any Member of the Class. The Defendants and the Released Parties also shall have no obligation or responsibility to supervise Plaintiffs' Counsel, Class Counsel or the Claims Administrator, and shall have no liability for any actions or inactions of Plaintiffs' Counsel, Class Counsel or the Claims Administrator.  Further, the Defendants neither guarantee performance by Plaintiffs' Counsel, Class Counsel or the Claims Administrator of their respective duties in this Consent Decree nor shall Plaintiffs' Counsel, Class Counsel or the Claims Administrator be considered agents of the Defendants or the Released Parties for any purpose whatsoever.

62.    Plaintiffs' Counsel shall select a Claims Administrator that is independent of the Plaintiffs, the Defendants, Plaintiffs' Counsel and Defendants' Counsel and competent to perform the duties outlined in this Consent Decree and to administer the Monetary Settlement. Plaintiffs' Counsel is solely responsible for ensuring that the Claims Administrator performs its duties and obligations under this Consent Decree in a competent manner.  Subject to the conditions of this Paragraph 62, Plaintiffs' Counsel may replace a Claims Administrator, in its sole discretion, if any such Claims Administrator fails to satisfy its duties under this Consent Decree, provided, however, that Plaintiffs' Counsel shall notify the Defendants' Counsel of the name of the new Claims Administrator within two (2) business days of such replacement.

63.    Plaintiffs' Counsel shall ensure, as a condition of an entity's designation to serve as Claims Administrator, that such entity shall:

      a.    agree in writing to perform the duties as set forth in this Consent Decree;

      b.    abide by the terms of the Consent Decree;

      c.    cooperate with Plaintiffs' Counsel; and

      d.    permit Plaintiffs' Counsel to monitor its administrative activities, including providing access to its records and data.

64.    The Claims Administrator, under the supervision of Plaintiffs' Counsel, shall be responsible for performing the following duties:

      a.    overseeing the compilation of the mailing lists, set forth in paragraph 51, the production and mailing of the Notice of Settlement and the Claim Form, and the process and investigation for valid addresses for individuals from whom the Notice of Settlement and Claim Form are returned as undeliverable;

b.    Assisting Plaintiffs' Counsel in the following: receiving Claim Forms from Claimants; reviewing Claim Forms to determine if the Claimant is an Authorized Claimant; providing written notice to Claimants if there is a technical defect in any Claim Form; responding to questions regarding the Notice of Settlement and the Claim Form, claims administration, claims procedure and the administration of the Monetary Settlement; determining the category to which each Authorized Claimant belongs, pursuant to the terms of Paragraph 78; establishing the total dollar amount of all claims pursuant to the terms of Paragraph 82; calculating the award to each Authorized Claimant pursuant to the terms of Paragraph 84; establishing and maintaining the account for receipt of the First Cash Settlement Amount and the Second Cash Settlement Amount; distributing payments from the First Cash Settlement Account or the Matyasovszky Class Settlement Fund and maintaining records with respect to all of the above; responding to inquiries from the Defendants and/or from the Court with respect to all of the foregoing; performing all tax reporting and payment obligations with respect to the Monetary Settlement, Matyasovszky Class Settlement Fund and the First Cash Settlement Account, including, but not limited to filing all tax returns and paying any taxes owed with respect to the Monetary Settlement; and

c.    performing any other administrative duties necessary or incidental to all of the above, as Plaintiffs' Counsel or the Court directs.

65.    Plaintiffs' Counsel, with the assistance of the Claims Administrator, shall be responsible for performing, or ensuring the performance, of the following:

a.    ensuring the availability of sufficient staffing so as to administer the claims

administration process efficiently;

b.    responding or directing the Claims Administrator to respond to questions

regarding notice, claims administration, claims procedure and the administration

of the Monetary Settlement;

c.    establishing and maintaining the account for receipt of the First Cash Settlement

Amount and the Second Cash Settlement Amount;

d.    distributing, or directing the Claims Administrator to distribute, payments from

the First Cash Settlement Account or the Matyasovszky Class Settlement Fund;

e.    maintaining records with respect to all of the above and permitting Defendants to

inspect and copy such records at Defendants' expense and upon reasonable notice

to Plaintiffs' Counsel;

f.    responding, with the assistance of the Claims Administrator, to inquiries from the

Defendants and/or from the Court with respect to all of the above;

g.    performing, or directing the Claims Administrator to perform, all tax reporting

and payment obligations with respect to the Monetary Settlement, Matyasovszky

Class Settlement Fund and the First Cash Settlement Account, including, but not

limited to filing all tax returns and paying any taxes owed with respect to the

Monetary Settlement; and

h.    performing any other administrative duties necessary or incidental to all of the

above, as the Court so directs.

66.    Plaintiffs' Counsel shall direct the Claims Administrator to limit its communications with

the Members of the Class to subjects directly pertaining to notice, claims administration and claims procedure.

## X.    CLAIMS PROCEDURE

### Claim Form Submission

67.    Any potential Class Member must submit a Claim Form to be considered for participation in the Monetary Settlement. Claim Forms may be submitted on behalf of deceased potential Class Members by representatives of their estate if appropriate documentation is provided. Any Claim paid to a deceased Claimant shall be made payable to the appropriate representative of the estate of the deceased Claimant.

68.    Each Claim Form shall be reviewed by Plaintiffs' Counsel, with the assistance of the Claims Administrator, who shall determine, in accordance with this Consent Decree, the extent, if any, to which each Claim Form shall be allowed, subject to review by the Court as provided below. Plaintiffs' Counsel shall use reasonable efforts to verify the validity of each Claim by ensuring that the Claimant has returned a signed and properly executed Claim Form under penalty of perjury and that the representations on the Claim Form are accurate.

69.    All Claim Forms must be submitted by the date (the "Claim Deadline") specified in the Notice of Proposed Settlement. Any potential Class Member who fails to submit a valid Claim Form by such date shall be forever barred from receiving any portion of the Monetary Settlement, but shall in all other respects be bound by the terms of this Consent Decree and the settlement embodied in this Consent Decree, including the terms of the Order of Final Judgment of Dismissal and the releases provided for herein, and will be barred from bringing any action or proceeding against the Defendants or the Released Parties concerning the Settled Claims.

70.     A Claim Form shall be deemed to have been submitted when hand-delivered or posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.

71.     Each Claim Form will be reviewed for compliance with the submission requirements in a timely manner.  If there is a technical defect in any Claim Form, the Claims Administrator or Plaintiffs' Attorney will provide written notice of the defect to the Claimant and state the nature of the defect.  If there is a technical defect in a Claim Form, Plaintiffs' Counsel shall use reasonable efforts to provide the Claimant with an opportunity to correct the defect.  Any Claim Form with a technical defect must be corrected and returned to Plaintiffs' Attorney or the Claims Administrator within 20 days of the date the notice of the defect was mailed.  Claim Forms that do not meet the submission requirements may be rejected.

72.     Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to his or her Claim and to providing Plaintiffs' Counsel with information relevant to his or her Claim in his or her possession or control, if Plaintiffs' Counsel initiates an investigation as to the Claim; provided, however, that such investigation and discovery shall be limited to the status of the Claimant as a Class Member and the validity of his or her Claim.  No discovery shall be allowed on the merits of the Complaints or the settlement embodied in this Consent Decree, including, but not limited to, the Monetary Settlement or the Injunctive Relief, in connection with processing of the Claim Form.

73.     It shall be the sole responsibility of each Class Member who seeks a portion of the Monetary Settlement to advise the Claims Administrator promptly of any change of address.  A Class Member's failure to keep the Claims Administrator informed of any change in his or her

43

address may result in his or her otherwise allocated portion of the Monetary Settlement being affected. It is also the sole responsibility of each Class Member who seeks a portion of the Monetary Settlement to furnish to Plaintiffs' Counsel and/or the Claims Administrator any and all documents requested to support his or her Claim and any contentions stated in the Claim Form.

### The Second Cash Settlement Amount

74.    The Second Cash Settlement Amount is the amount of money to be paid to all Authorized Claimants pursuant to the terms of this Consent Decree. After Notice of the Second Cash Settlement Amount is provided to Defendants' Counsel, as required by Paragraph 89 of this Consent Decree, the Second Cash Settlement Amount will be deposited into a bank account which will be known as the "Matyasovszky Class Settlement Fund." The account will be an "IOLTA" account established pursuant to Section 51-81c of the Connecticut General Statutes.

75.    It is expressly understood and agreed that in no event will the Second Cash Settlement Amount exceed Three Hundred Eighty-Seven Thousand Dollars ($387,000.00).

76.    In the event that the amount of all Authorized Claims exceeds Three Hundred Eighty-Seven Thousand Dollars ($387,000.00), each Authorized Claimant will receive a portion of the Pro Rata Share of the Second Cash Settlement Amount according to the category to which they belong, as provided in Paragraph 84 below.

77.    The amount of the Second Cash Settlement Amount will be determined pursuant to the following procedures:

    a.    only Authorized Claimants will be eligible for payment from the Second Cash Settlement Amount;

44

b. Plaintiffs' Counsel, with assistance of the Claims Administrator, and subject to Court approval, will determine whether a Claimant is an Authorized Claimant and therefore eligible for payment pursuant to the terms of this Consent Decree.

78. For purposes of determining the extent, if any, to which a Claimant is an "Authorized Claimant," the following conditions shall apply:

a. the Claimant must complete a Claim Form in accordance with the instructions provided therein;

b. the Claimant must sign the Claim Form under penalty of perjury;

c. the Claimant must submit the Claim Form to Plaintiff's Counsel either by hand or by first-class mail, pursuant to the instructions provided on the Claim Form, postmarked by the Claim Deadline stated on the Claim Form;

d. Plaintiffs' Counsel or the Claims Administrator must determine, subject to Court approval, that the Claimant is a Class Member, as defined by the Court in its Ruling on Plaintiffs' Motion for Class Certification, dated January 7, 2005; and

e. Plaintiffs' Counsel or the Claims Administrator must determine, subject to Court approval, that the Class Member is a member of one of the following categories:

i. Misinformed Prospective Applicants: Class Members who decided not to apply for public housing after having been misinformed by an employee of the Defendant BHA, either orally or in writing, between October 19, 1999 and the Signing Date, that he or she was not eligible for an apartment at the Fireside Apartment Complex because he or she had not attained the status of "elderly applicant" or words of similar import;

45

ii.    Current and former BHA tenants ages 50 through 61 years of age: Class

Members who (1) applied for a one-bedroom unit of public housing with

the Defendant BHA at any time between October 19, 1999 and September

1, 2005; (2) were not less than 50 years of age but were less than 62 years

of age at the time their Pre-application was filed with the Defendant BHA;

and (3) leased a one-bedroom unit of public housing with the Defendant

BHA, at a complex other than the Fireside Apartment Complex, during the

Relevant Time Period;

iii.    Current and former BHA Tenants Less than 50 years of age: Class

Members who (1) applied for a one-bedroom unit of public housing with

the BHA at any time between October 19, 1999 and September 1, 2005;

(2) were less than 50 years of age at the time their Pre-application was

filed with the Defendant BHA; and (3) leased a one-bedroom unit of

public housing with the Defendant BHA, at a complex other than the

Fireside Apartment Complex during the Relevant Time Period;

iv.    Current Applicants: Class Members who filed a Pre-Application or

Application for public housing with the Defendant BHA before September

1, 2005 and who are on the waiting list as of the Signing Date of this

Consent Decree;

v.    Applicants withdrawn or otherwise not offered public housing: Class

Members who filed a Pre-Application for BHA public housing between

October 19, 1999 and September 1, 2005, and whose Pre-Application or

Application for BHA public housing was purged or withdrawn from the waiting list or who, for any reason were not offered public housing, including those related to eligibility. However, applicants who were deemed ineligible for admission to public housing because of the conviction of the following criminal offenses prior to the date they submitted their Pre-Application or Application shall not be included in this category and are not Class Members eligible to participate in the Monetary Settlement provided by this Consent Decree: any sexual offense that subjects the applicant to lifetime registration requirements; conviction of criminal activity related to the production or manufacturing of methamphetamine; convictions, within three years prior to the date of the filing of the Pre-application, of felony or misdemeanor offenses involving physical violence to persons or property or other criminal acts which would seriously and adversely affect the health, safety or welfare of other BHA residents or employees, including, but not limited to: assault, burglary, larceny, or breaking and entering, possession, distribution, use or sale of narcotics, illegal possession of dangerous weapons, rape, prostitution, fraud. For the purposes of this Consent Decree only, and without waiving any of its rights, the Defendant BHA agrees that one conviction for possession of less than 4 ounces of marijuana shall not render a Class Member ineligible to participate in the Monetary Settlement; and

47

vi.    Transfers: Class Members who were in occupancy of a BHA apartment from October 19, 1999 through the Signing Date and: (1) were misinformed that Fireside was reserved for the elderly and/or that they were not old enough to seek a transfer to Fireside; or (2) were either discouraged from seeking a transfer to Fireside or were denied a transfer, either orally or in writing, because they were not elderly.

79.    An Authorized Claimant may qualify for and receive payment as a member of only one of the categories set forth in Paragraph 78e.

80.    Class Members in the category described in Paragraph 78e(i) must establish that they were disabled on or before the date they claim they were misinformed. Class Members in the categories described in Paragraph 78e(ii), (iii), (iv) and (v) must establish that they were disabled at the time they filed their Pre-application for Public Housing with the BHA or at any time before the date they were assigned a unit of public housing with the BHA, or before the date their Pre-application or Application was purged or withdrawn. Class Members in the category described in Paragraph 78e(vi) must establish that they were disabled on or before the date they requested transfer to the Fireside Apartment Complex. Class Members may establish their disability status by providing evidence that they received Social Security or SSI benefits on the date applicable to the category to which they are a member. Class Members who did not receive Social Security or SSI benefits on the applicable date, may establish their disability status by delivering to Plaintiffs' Counsel a fully-completed Disability Verification Form, completed by a qualified professional having knowledge of the person's disability (not necessarily a physician) who has verified the Class Member's disability status on the applicable date. Disability Verification

48

Forms must be received by Plaintiffs' Counsel or the Claims Administrator no later than thirty (30) days after the Claim Deadline, referred to in Paragraph 69, in order for the Claimant's Claim Form to be considered. Any Potential Class Member who fails to submit a valid Disability Verification Form by such date shall be forever barred from receiving any portion of the Monetary Settlement, but shall in all other respects be bound by the terms of this Consent Decree and the settlement embodied in this Consent Decree, including the terms of the Order of Final Judgment of Dismissal and the releases provided for herein, and will be barred from bringing any action or proceeding against the Defendants or the Released Parties concerning the Settled Claims.

### Determination of the Second Cash Settlement Amount

81.    As soon as practicable after the Effective Date and the deadline for submitting Claim Forms, but in no event before every Class Member who has submitted a Claim Form has had an opportunity to correct any technical defects in his or her Claim Form (as set forth in Paragraph 71), Plaintiffs' Counsel will make a determination (the "Eligibility Determination") as to:

     a.    whether the Claim is an Authorized Claim;

     b.    the category to which each Authorized Claimant belongs; and

     c.    the dollar amount of each Authorized Claim, based on the category to which the Authorized Claimant belongs.

82.    For purposes of establishing the total dollar amount of all Claims, pursuant to Paragraph 81c, Plaintiffs' Counsel or the Claims Administrator will assign the following dollar amounts, based on the category to which the Authorized Claimant belongs:

     a.    Misinformed Prospective Applicants: Five Hundred Dollars ($500.00);

b.      Current and Former Tenants, not less than 50 years of age but less than 62 years of age: One Thousand Dollars ($1,000.00);

c.      Current and Former Tenants Less than 50 years of age: Two Thousand Dollars ($2,000.00);

d.      Current Applicants: One Thousand Dollars ($1,000.00);

e.      Purged or Past Applicants Never Offered BHA Public Housing: Five Hundred Dollars ($500.00);

f.      Transfers: One Thousand Dollars ($1,000.00).

83.     If the total dollar amount of all Authorized Claims, determined pursuant to Paragraph 82, is less than or equal to Three Hundred Eighty Seven Thousand Dollars ($387,000.00), Plaintiffs' Counsel or the Claims Administrator will award the amounts set forth in Paragraph 82 to Authorized Claimants, subject to approval by the Court as set forth below.

84.     If the total dollar amount of all Authorized Claims determined pursuant to Paragraph 82 exceeds Three Hundred Eighty-Seven Thousand Dollars ($387,000.00), then Plaintiffs' Counsel or the Claims Administrator shall award each Authorized Claimant a portion of the Pro Rata Share according to the category to which he or she belongs as set forth below:

a.      Misinformed Prospective Applicants: 1/4 of the Pro Rata Share;

b.      Current and Former Tenants, not less than 50 years of age but less than 62 years of age: ½ of the Pro Rata Share;

c.      Current and Former Tenants Less than 50 years of age: one full Pro Rata Share;

d.      Current Applicants: ½ of the Pro Rata Share;

e.      Purged or Past Applicants Never Offered BHA Public Housing: 1/4 of the Pro

Rata Share;

f.      Transfers: ½ of the Pro Rata Share.

85.    After making its Eligibility Determinations, Plaintiffs' Counsel will file a motion (the "Motion for Class Distribution Order"), on notice to Defendants' Counsel, for the entry of an order (the "Class Distribution Order") approving the determinations concerning the acceptance and rejection of the Claim Forms submitted herein, stating the dollar amount to be awarded to each Authorized Claimant, and directing payment of the awards from the Matyasovszky Class Settlement Fund to Authorized Claimants, subject to Challenges and Objections that may be filed, as set forth below.  Plaintiffs' Counsel shall file the names of Authorized Claimants and the dollar amounts of any proposed awards in an exhibit to the Motion for Class Distribution Order.

86.    Within ten (10) days of the filing of the Motion for Class Distribution Order, Defendants' Counsel may file in Court a written Objection to the motion, objecting to the determination that any Claimant is an Authorized Claimant or the determination of the Class to which the Authorized Claimant belongs.  The Objection shall state the reason for the Objection and shall include any supporting documentation which is filed in support of the Objection.  Any such Objection will be decided by the Court when it rules on the Motion for Class Distribution Order.

87.    Within ten (10) business days after the date of entry of the Class Distribution Order, Plaintiffs' Counsel shall mail, or cause to be mailed, with copies to Defense Counsel, a Notice of Determination (the "Notice of Determination") to each individual who submitted a Claim Form. If a Claim Form has been rejected, the Notice of Determination shall so indicate, including the reason for such rejection.  The Notice of Determination shall also indicate that each person to whom a Notice of Determination is sent shall have thirty (30) calendar days from the date of

51

mailing of the Notice of Determination to serve upon Plaintiffs' Counsel or the Claims

Administrator, as instructed in the Notice of Determination, a written Challenge (the

"Challenge") to the Notice of Determination, contesting the rejection of the Claim Form, and/or

the dollar amount which the individual Claimant has been awarded. Any such Challenge shall

include the reasons for the Challenge, along with any supporting documentation. No Challenge

received after thirty (30) calendar days from the date the Notice of Determination is sent will be

considered. If Plaintiffs' Counsel has received any written Challenge(s) to the Notices of

Determination within thirty (30) calendar days from the date the Notice of Determination is sent,

distribution of the Monetary Settlement shall be stayed until resolution of all Challenges.

Plaintiffs' Counsel shall then have ten (10) business days to review and attempt to resolve the

Challenges. If Plaintiffs' Counsel is unable to resolve any Challenges, Plaintiffs' Counsel shall

present such Challenges to the Court for review, upon notice to Defendants' Counsel.

88.    For any Challenges to the Court, Plaintiffs' Counsel shall file in Court a statement of

Plaintiffs' Counsel's reason(s) for the amount of the Award and/or the rejection of the Claim

Form, a copy of the Challenge and any additional documentation provided by the Claimant, and

Plaintiffs' Counsel's statement regarding the efforts it made to resolve the Challenge and the

reasons the Challenge could not be resolved. A copy of the submission to the Court shall be

mailed to the Challenging Claimant at the time it is filed with the Court. The Claimant shall be

notified by Plaintiffs' Counsel that he or she shall have ten (10) business days from the filing of

the Challenge with the Court to present any additional written argument to the Court and that a

copy of any such additional argument shall be served upon Plaintiffs' Counsel. The parties shall

request that the Court then rule on all Challenges as soon as practicable.

### Notice of the Second Cash Settlement Amount

89.    The Claims Administrator shall send written notice (the "Notice of the Second Cash Settlement Amount") to Defendants' Counsel and Plaintiffs' Counsel, advising them of the amount of the Second Cash Settlement Amount within ten (10) business days following the date on which all of the following conditions have been satisfied:

   a.    the processing of all Claim Forms;

   b.    the entry of the Class Distribution Order and mailing of Notices of Determination to each person who submitted a Claim Form;

   c.    the resolution of all Challenges or Objections with respect to Authorized Claims, including Claims that have been rejected and the Court finally resolving such Challenges or Objections;

   d.    the final resolution of, or the expiration of time for, any and all appeals from the foregoing.

90.    The Notice of the Second Cash Settlement Amount will be served by first class mail, postage prepaid, to Defendants' Counsel and Plaintiffs' Counsel. Plaintiffs' Counsel or the Claims Administrator shall provide in the Notice of the Second Cash Settlement Amount, the account number, routing number and tax identification number for the Matyasovszky Class Settlement Fund.

### Depositing the Second Cash Settlement Amount

91.    Within forty-five (45) days of the receipt of the Notice of the Second Cash Settlement Amount, Defendants' Counsel will cause the amount of the Second Cash Settlement Amount to be deposited into the Matyasovszky Class Settlement Fund.

### The First Cash Settlement Amount

92.    The First Cash Settlement Amount represents the total amount of money being paid on

behalf of the Defendants and the Released Parties to make the payments to the named Plaintiffs,

the Claims Administrator, Plaintiffs' Counsel and Class Counsel as required by this Consent

Decree. It is expressly understood and agreed that the total amount of the First Cash Settlement

Amount will in no event exceed Four Hundred Thirteen Thousand Dollars ($413,000.00).

93.    The First Cash Settlement Amount and the Second Cash Settlement Amount shall be held

in trust until their distribution and shall be deemed to be in the custody of the Court and are and

shall remain subject to the jurisdiction of the Court until such time as the payments required by

this Consent Decree are made.

94.    Plaintiffs' Counsel will retain a Claims Administrator before the Motion for Preliminary

Approval is filed. Plaintiffs' Counsel will open and administer a bank account (the "First Cash

Settlement Account") within seven (7) days of the granting of the Motion for Preliminary

Approval. The First Cash Settlement Account will be an "IOLTA" account established pursuant

to Section 51-81c of the Connecticut General Statutes.

### Depositing the First Cash Settlement Amount

95.    The first deposit into the First Cash Settlement Account will be made on behalf of the

Defendants within fifteen (15) days of the granting of the Motion for Preliminary Approval. The

first deposit into the First Cash Settlement Account will be in the amount of Forty Thousand

Dollars ($40,000.00). This amount of money is being paid to cover all costs, fees and expenses

of the Claims Administrator in performing the duties required by this Consent Decree, including,

but not limited to, the costs, expenses and fees for publishing the "Summary Notice" in the

newspapers as set forth in Paragraph 56. Forty Thousand Dollars ($40,000.00) is the maximum amount to be paid to the Claims Administrator as costs, fees or expenses for performing the duties required pursuant to the terms of this Consent Decree. Upon payment of said Forty Thousand Dollars ($40,000.00), the Defendants and the Released Parties shall have no further obligation whatsoever for, and shall be released and forever discharged from any duty or obligation for the payment of fees, expenses or costs of the Claims Administrator in performing the duties required by this Consent Decree.

96.    In the event that the fees, expenses and costs of the Claims Administrator are less than Forty Thousand Dollars ($40,000.00) upon completion of the Claims Administrator's duties, then the balance will be distributed, upon approval of the Court, to the Connecticut Fair Housing Center.

97.    If the Court does not enter the Final Approval Order after the Fairness Hearing or if, for any other reason, the settlement embodied in this Consent Decree does not take effect, Plaintiffs' Counsel shall return to Defendants' Counsel any portion of the Forty Thousand Dollar ($40,000.00) payment referred to in Paragraph 95 remaining in the First Cash Settlement Account at that time.

98.    The second portion of the First Cash Settlement Amount, in the amount of Three Hundred Seventy-Three Thousand Dollars ($373,000.00), will be deposited into the First Cash Settlement Account within Forty-Five (45) days after the Effective Date.

## XI.    DISTRIBUTION OF THE FIRST CASH SETTLEMENT AMOUNT

### Payments to the Claims Administrator

99.    The Claims Administrator will keep records of its time and expenses and will submit

monthly bills to Plaintiffs Counsel for its fees and expenses. The Claims Administrator will be paid for its services at an hourly rate to be agreed upon by Plaintiffs' Counsel at the time the Claims Administrator is retained. All bills submitted by the Claims Administrator to Plaintiffs' Counsel will be paid within thirty (30) days.

100.    The second portion of the First Cash Settlement Amount, in the amount of Three Hundred Seventy-Three Thousand Dollars ($373,000.00) shall be paid to the named Plaintiffs in accordance with the provisions of Paragraphs 101 - 104 below and to Plaintiffs' Counsel in accordance with the provisions of Paragraphs 105 - 108 below.

### Compensation to Named Plaintiffs

101.    For the purposes of this Consent Decree, the Defendant BHA agrees that named Plaintiffs Judith Montes, Joseph Pellechio, Sandra Pellechio, Kenneth Gihon, Linda Dedrick and John Nelson, Jr. are each Disabled Persons, eligible for public housing and otherwise qualified for a Senior/Disabled Housing Unit, and the Defendant BHA waives any right it may otherwise possess to prove that any named Plaintiff is not disabled. Notwithstanding the foregoing, the Defendant BHA does not waive any of its rights to enforce any and all terms and conditions set forth in the leases of public housing units occupied by any of the named Plaintiffs and/or Class Members, and nothing contained in this Consent Decree shall be interpreted to waive any such rights.

102.    In exchange for executing a Release in favor of the Defendants and the Released Parties, the named Plaintiffs and the Intervening Plaintiffs shall receive the following amounts of money as compensation for their claimed damages:

    a.      Thomas Matyasovszky shall receive Nine Thousand Dollars ($9,000.00);

b.  Judith Montes shall receive Nine Thousand Dollars ($9,000.00);

c.  Linda Dedrick shall receive Nine Thousand Dollars ($9,000.000);.

d.  Sandra Pellechio and Joseph Pellechio shall receive a total of Nine Thousand

Dollars ($9,000.00);

e.  Kenneth Gihon shall receive the sum of Six Thousand Dollars ($6,000.00);

f.  John Nelson shall receive the sum of Six Thousand Dollars ($6,000.00).

103.  No named Plaintiff shall receive the compensation described herein until he or she has

signed a Release in favor of the Defendants and the Released Parties from any liability for the

Settled Claims and the Claims raised in the Complaints in this action.

104.  The payments to the named Plaintiffs required by Paragraph 102 of this Consent Decree

will be paid after the First Cash Settlement Amount is deposited and no sooner than five (5) days

after Defense Counsel receives the Releases required by Paragraph 103 of this Consent Decree.

**Attorney's Fees**

105.  At least twenty (20) days prior to the Fairness Hearing, Plaintiffs' Counsel will file a

motion for attorney's fees, litigation expenses and costs (the "Motion for Award of Attorney's

Fees") in an amount not to exceed Three Hundred Twenty-Five Thousand Dollars ($325,000.00).

Defendants' Counsel will take no position on such application for fees, expenses and costs.

106.  The Fee and Expense Award, in an amount not to exceed Three Hundred Twenty-Five

Thousand Dollars ($325,000.00), will be paid to Plaintiffs' Counsel at any time after it is

deposited in accordance with paragraph 98.

107.  Plaintiffs' Counsel may allocate such Fee and Expense Award among themselves in their

sole discretion.  Defendants' Counsel and the Released Parties shall have no liability, obligation

57

or responsibility for, or involvement in, the allocation of the Fee and Expense Award.

108.    The Fee and Expense Award referred to in Paragraphs 105 and 106 is being paid on

behalf of the Defendants and the Released Parties in consideration for all services performed and

costs and expenses (including, but not limited to, the costs and expenses of any experts retained

by Plaintiffs' Counsel or Class Counsel) incurred by Plaintiffs' Counsel or Class Counsel relating

to the filing and prosecution of the Complaints, the investigation performed in connection

therewith, the negotiation and preparation of this Consent Decree, the defense of this Consent

Decree and monitoring, administration and implementation of this Consent Decree.  The

payment of this amount is made in full and final satisfaction of and shall release and shall forever

discharge the Defendants and the Released Parties from any and all obligation, whether pursuant

to common law, contract, statute or otherwise, to pay any attorney's fees, expenses and costs to

Plaintiffs' Counsel, Class Counsel or to any attorney formerly representing any of the Plaintiffs,

the Class Members or the Intervening Plaintiffs.  The payment of the Three Hundred Twenty-

Five Thousand Dollars ($325,000.00) referred to herein shall release and forever discharge the

Defendants and the Released Parties from any further obligation whatsoever to pay any attorney's

fees, costs or expenses, subject to the provisions of Paragraph 126d.

## XII.    DISTRIBUTION OF THE MATYASOVSZKY CLASS SETTLEMENT FUND

109.    Plaintiffs' Counsel shall distribute or cause the Claims Administrator to distribute the

"Second Cash Settlement Amount" to Authorized Claimants, as approved by the Court, within

ten (10) days after the Second Cash Settlement Amount is deposited into the Matyasovszky Class

Settlement Fund.

110.    Payment pursuant to this Consent Decree shall be deemed final and conclusive against all

Class Members.  All Class Members who did not submit timely Claim Forms or Challenges or whose Claims or Challenges are not approved by the Court shall be barred from participating in the Monetary Settlement, but otherwise shall be bound by all of the terms of this Consent Decree, including the terms of the Order of Final Judgment of Dismissal and the Releases provided for herein, and will be barred from asserting any Settled Claims against the Defendants or the Released Parties.

## XIII.  ACCOUNTING

111.  Within thirty (30) calendar days following the distribution of both the First Cash Settlement Amount and the Second Cash Settlement Amount, Plaintiffs' Counsel shall send to Defendants' Counsel an affidavit stating the following:

a.    the name of each Authorized Claimant;

b.    any changes to the proposed distribution in the Motion for Class Distribution Order that occur pursuant to Paragraphs 86-88;

c.    that distribution checks were sent to all Authorized Claimants pursuant to the Class Distribution Order; and

d.    that the Plaintiffs received the payments required by Paragraph 102;

e.    that the Claims Administrator was paid, as required by Paragraph 99, and stating the total amount of all payments made to the Claims Administrator;

f.    the total amount of all payments made pursuant to Paragraph 108 for the payment of attorney's fees, expenses and costs;

g.    the amount of money, if any, remaining in the Matyasovszky Class Settlement Fund or the First Cash Settlement Account after all payments required by this

Consent Decree have been made; and

h.      that the Matyasovszky Class Settlement Fund and the First Cash Settlement

Account have been closed as required by Paragraph 112.

112.    All claims of Authorized Claimants shall be deemed null and void if distribution checks

are not claimed for any reason within one (1) year following the granting of the Class

Distribution Order by the Court and such funds shall be subject to distribution in accordance with

this Paragraph 112.  Plaintiffs' Counsel shall close the Matyasovszky Class Settlement Fund and

the First Cash Settlement Account following the distributions required by this Consent Decree.

In the event that any money remains in the Matyasovszky Class Settlement Fund or the First

Cash Settlement Account after all payments required by this Consent Decree have been made,

then the balance shall be distributed to the Connecticut Fair Housing Center.

113.    Any appeal from, modification, or reversal of (a) the Class Distribution Order or (b) any

decision or orders of the Court resolving any and all Challenges with respect to the dollar amount

of Claims, including Claims that have been rejected, shall not operate to terminate or cancel this

Consent Decree or affect the finality of the entry of the Order of Final Judgment of Dismissal, the

settlement embodied in this Consent Decree or any other orders entered pursuant to this Consent

Decree.

## XIV.  RELEASE

114.    Upon the entry of the Order of Final Judgment of Dismissal, each Plaintiff and each Class

Member shall be:

a.      conclusively deemed to have, and by operation of the Order of Final Judgment of

Dismissal shall have, fully, finally and forever settled, released, relinquished,

waived and discharged the Defendants and the Released Parties from all Settled

Claims arising out of or in connection with the institution, prosecution or

assertion of the Complaints or any of the Settled Claims;

b.  conclusively deemed to have covenanted not to sue the Defendants or the

Released Parties in any action or proceeding alleging any of the Settled Claims;

and

c.  forever enjoined and barred from asserting any of the Settled Claims against any

of the Defendants or the Released Parties in any action or proceeding alleging any

of the Settled Claims, even if any Class Member may thereafter discover facts in

addition to or different from those which the Class Members now know or believe

to be true with respect to this action and the Settled Claims, whether or not such

Class Members have executed and delivered a Claim Form, whether or not such

Class Members have filed an objection to the settlement embodied in this Consent

Decree, or to the Motion for Award of Attorney's Fees, and whether or not the

Claims of such Class Members have been approved or allowed.

115.  All Plaintiffs and all Class Members shall be bound by the Release set forth in Paragraph

114, whether or not they qualify as an Authorized Claimant.  The Claim Form to be executed by

Class Members shall also release all Settled Claims against the Defendants and the Released

Parties, and all Class Members who submit a Claim Form shall further be bound by such

Release, whether or not they qualify as an Authorized Claimant.

116.  Plaintiffs' Counsel, Plaintiffs, or Class Members may hereinafter discover facts in

addition to or different from those which they know or believe to be true with respect to the

61

Settled Claims. Moreover, such facts, if known by them, might have affected the decision to settle with the Defendants or the Released Parties or release, relinquish, waive and discharge the Settled Claims, or might have affected any decision of a Plaintiff or a Class Member not to object to the settlement embodied in this Consent Decree. Notwithstanding the foregoing, each Plaintiff and each Class Member shall expressly, upon the entry of the Order of Final Judgment of Dismissal, be deemed to have, and by operation of the Order and Final Judgment of Dismissal shall have, fully, finally and forever settled, released, relinquished, waived and discharged any and all Settled Claims. The Plaintiffs and the Class Members acknowledge and shall be deemed by operation of the Order of Final Judgment of Dismissal to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement embodied in this Consent Decree for which this release is a part.

117.    Plaintiffs stipulate and agree with respect to any and all Settled Claims and the Class Members stipulate and agree with respect to any and all Settled Claims, that, upon the entry of the Order of Final Judgment of Dismissal, the Plaintiffs and the Class Members shall be conclusively deemed to, and by operation of the Order of Final Judgment of Dismissal shall, waive and relinquish any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including without limitation, Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Also the Class Members with respect to the Settled Claims, and Plaintiffs with respect to the Settled Claims, shall be conclusively deemed to, and upon the entry of the Order of Final

Judgment of Dismissal and by operation of the Order of Final Judgment of Dismissal shall,

waive any and all provisions, rights and benefits conferred by any law of any State or territory of

the United States or any foreign country, or any principle of common law, which is similar,

comparable or equivalent in substance to Section 1542 of the California Civil Code.

## XV.   ORDER OF FINAL JUDGMENT OF DISMISSAL

118.   At least ten (10) business days prior to the Fairness Hearing, the parties shall jointly move

the Court to enter the Order of Final Judgment of Dismissal.  The Order of Final Judgment of

Dismissal shall, among other things:

    a.    approve the settlement embodied in this Consent Decree as fair, reasonable, and adequate to the Class;

    b.    dismiss the Complaints in their entirety as against the Defendants and the Released Parties with prejudice and without costs to any party as against any other party;

    c.    order that each Plaintiff and each Class Member shall be (i) conclusively deemed to have, and by operation of the Order of Final Judgment of Dismissal shall have, fully, finally and forever settled, released, relinquished, waived and discharged the Defendants and the Released Parties from all Settled Claims arising out of or in connection with the institution, prosecution or assertion of the complaints or the Settled Claims; (ii) conclusively deemed to have covenanted not to sue the Defendants or the Released Parties in any action or proceeding alleging any of the Settled Claims; and (iii) forever enjoined and barred from asserting the Settled Claims against any of the Defendants or the Released Parties in any action or

proceeding alleging any of the Settled Claims, even if any Plaintiff or Class

Member may thereafter discover facts in addition to or different from those which

the Plaintiffs or the Class Members now know or believe to be true with respect to

this action and the Settled Claims, whether or not such Plaintiffs or Class

Members have executed and delivered a Claim Form, whether or not such

Plaintiffs or Class Members have filed an objection to the settlement embodied in

this Consent Decree, the Class Distribution Order, or the Motion for Award of

Attorney's Fees, and whether or not the Claims of such Plaintiffs or Class

Members have been approved or allowed;

d.    reserve jurisdiction, without affecting the finality of the Order of Final Judgment

of Dismissal, over the following; (i) implementation of the Monetary Settlement

and any award or distribution of the First Cash Settlement Amount or the Second

Cash Settlement Amount; (ii) enforcing the Consent Decree, including any

releases in connection therewith; (iii) implementation of the Injunctive Relief; and

(iv) other matters related and ancillary to the foregoing; and

e.    order that any determination, as reflected in the Class Distribution Order, by

Plaintiffs' Counsel or the Claims Administrator as to (i) whether a Class Member

is an Authorized Claimant; (ii) the sufficiency of the Claim of any Class Member;

and (iii) the amount of that Claim shall be conclusive unless the member of the

Class files a timely application with the Court disputing the determination,

provided that no such application may seek to modify the settlement embodied in

this Consent Decree;

f.     Order that the Motion for Award of Attorney's Fees be granted.

## XVI.    CONDITION OF SETTLEMENT

119.    This Consent Decree shall be subject to the following conditions and, except as provided in Paragraph 120, shall be cancelled and terminated if:

a.     the Court orders a Notice of Proposed Settlement that is not substantially in the form attached hereto;

b.     the Court enters an Order of Final Judgment of Dismissal that is not substantially in the form attached hereto as Exhibit 'L';

c.     the Court enters an Order of Final Judgment of Dismissal, appellate review is sought and, on such review, the Order of Final Judgment of Dismissal is materially modified or reversed; or

d.     for any reason the Effective Date does not or cannot occur.

120.    Within ten (10) business days of the receipt of notice of the occurrence of any of the circumstances list in Paragraphs 119a, b and d, Plaintiffs' Counsel and Defendant's Counsel may agree in writing to proceed with the settlement embodied in this Consent Decree. Such intent to proceed shall not be valid unless it is expressed in writing by Plaintiffs' Counsel and Defendants' Counsel, on behalf of their respective clients. In the absence of any such agreement in writing, this Consent Decree and the settlement embodied in this Consent Decree shall be deemed terminated and cancelled on the eleventh (11th) business day following the receipt of notice of the occurrence of any of the circumstances listed in Paragraphs 119a, b or d (the "Consent Decree Termination Date").

## XVII.  EFFECT IF NOT APPROVED

121.    If the Effective Date does not occur, of if the settlement embodied in this Consent Decree is terminated and cancelled pursuant to its terms, Plaintiffs and Defendants shall be deemed on the Consent Decree Termination Date to have reverted to their respective statuses prior to the execution of this Consent Decree, and they shall proceed in all respects as if this Consent Decree and its provisions, including but not limited to the provisions concerning injunctive relief, had not been executed and the related orders had not been entered, preserving in that event all of their respective claims and defenses in the action.

122.    Further, in that event:  this Consent Decree; all negotiations in connection herewith; all internal, private discussions conducted in furtherance of this settlement process; and all statements made by the Parties at, or submitted to the Court, during settlement negotiations, during public hearings and during the Fairness Hearing shall be considered to have been made in the course of compromise negotiations and shall be without prejudice to any person or Party to this Consent Decree, and shall not be deemed or construed to be an admission by any Party to this Consent Decree of any fact, matter or proposition, to the extent provided by law.

## XVIII.  PAYMENT OF TAXES

123.    Each Plaintiff and Class Member who receives a payment pursuant to this Consent Decree shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such Plaintiff or Class Member. Each Plaintiff and Class Member shall indemnify and hold the Defendants and the Released Parties harmless from any tax liability, including penalties and interest, relating in any way to any acts or omissions on the part of the Plaintiffs or the Class Members and shall indemnify and hold

the Defendants and the Released Parties harmless from the costs, (including, for example, attorney's fees) and disbursements of any proceedings, (including, for example, investigation and suit) related to such tax liability.

124.    Plaintiffs' Counsel shall withhold and pay, if required, all taxes on any payment made pursuant to any party pursuant to this Consent Decree and shall also make the necessary tax reporting, to the Internal Revenue Service and/or other appropriate federal, state and local agency or agencies for all payments made pursuant to this Consent Decree.  The Defendants and the Released Parties shall have no withholding, reporting or any other tax reporting or payment responsibilities with regard to the Monetary Settlement or its distribution to Plaintiffs and the Class Members.

## XIX.  ENFORCEMENT AND DISPUTE RESOLUTION

125.    The United States District Court for the District of Connecticut shall retain jurisdiction over this action for the duration of this Consent Decree for the purpose of enabling any of the Parties to this Consent Decree to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for construction, termination or enforcement of this Consent Decree or of any applicable provisions thereof.

126.    Before seeking any order by the Court concerning the alleged violation of any provision of this Consent Decree, the Parties must comply with the following procedures:

    a.    the person seeking enforcement of a provision of this Consent Decree shall serve on his opponent a written notice that describes with particularity the term(s) of the Consent Decree that are alleged to have been violated, the specific errors or omissions upon which the alleged violation is based, and the corrective action

  sought.  The person alleging the violation shall not inform the Court of his

allegation at that time;

b.  the Parties shall use their best efforts to resolve the matter in dispute without the

Court's involvement.  If requested to do so, the moveant shall provide to his

opponent any information and materials available to the moveant that support the

violation alleged in the notice;

c.  the person who served the notice of violation pursuant to subparagraph 126a

above may not move for enforcement of this Consent Decree until at least thirty

(30) days after the date on which he served the notice.

d.  If a motion for enforcement of this Consent Decree is granted, the successful

moveant may apply to the court for reasonable attorney's fees incurred in

connection with the filing of the motion.

## XX. CHANGES IN LAW

### Illegal Action Not Required; Modification of Decree to Conform to Changes in Law

127. The Defendant BHA shall not be obligated to carry out any term of the Consent Decree if,

upon motion, the Court finds that any otherwise applicable or future state or federal statute or

regulation precludes the Defendant BHA from complying with, or withdraws the Defendant

BHA's authority to perform that term.

## XXI. GENERAL PROVISIONS

128. All of the exhibits attached hereto are hereby incorporated by reference as though fully set

forth herein.

129. The parties to this Consent Decree intend the settlement embodied in this Consent Decree

to be a final and complete resolution of all disputes asserted or which could be asserted  by the Plaintiffs and the Class Members against the Defendants and the Released Parties with respect to the Settled Claims.  The parties agree that the amount paid and the other terms of the settlement embodied in this Consent Decree were negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced counsel.

130.    The parties and their counsel acknowledge and agree that they may hereinafter discover facts in addition to or different from those which they know or believe to be true with respect to the Settled Claims which, if known by them, might have affected the decision to settle this action pursuant to the settlement embodied in this Consent Decree.  Notwithstanding the foregoing, the parties and their counsel acknowledge and agree that their intention is to settle this action pursuant to the settlement embodied in this Consent Decree.

131.    In computing any period of time prescribed or allowed by this Consent Decree, unless otherwise stated, such computation or calculation shall be made in accordance with Rule 6(a) of the Federal Rules of Civil Procedure.

132.    This Consent Decree may be signed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the parties to this Consent Decree shall exchange among themselves original signed counterparts.

133.    Whenever possible, each provision and term of this Consent Decree shall be interpreted in such a manner as to be valid and enforceable; provided, however, that in the event that, after the Effective Date, any provision or term of this Consent Decree should be determined or rendered unenforceable on collateral review, all other provisions and terms of this Consent

Decree and the application thereof to all persons and circumstances subject thereto shall remain

unaffected to the extent permitted by law.

134.    If any application or any provision or term of the Consent Decree to any specific person

or circumstance should be determined to be invalid or unenforceable, the application of such

provision or term to other persons or circumstances shall remain unaffected to the extent

permitted by law.

135.    This Consent Decree may not be modified or amended, nor may any of its provisions by

waived, except by a writing signed by all parties hereto or their successors-in-interest or by order

of the Court on motion pursuant to Fed R. Civ. P. 60.

136.    Any notice, request, instruction, application for Court approval, or application for Court

orders sought in connection with this Consent Decree shall be in writing and delivered personally

or sent by registered or certified mail, postage prepaid to the attention of the following:

> Alan Rosner, Esq.
> Law Offices of Alan Rosner
> 1115 Main Street, Suite 415
> Bridgeport, CT 06604
> Telephone: 203-384-1245
> Facsimile: 203-384-1246
>
> Lori Welch-Rubin, Esq.
> Welch-Rubin and Jacobs
> 129 Whitney Avenue
> New Haven, CT 06511
> Telephone: 203-772-6680
> Facsimile: 203-772-2994
>
> Michael T. Ryan, Esq.
> James A. Mahar, Esq.
> Ryan, Ryan, Johnson & Deluca, LLP
> 80 Fourth Street
> Stamford, CT 06905

Telephone: 203-357-9200
Facsimile: 203-357-7915

137.   The waiver by one party of any breach of this Consent Decree by any other party shall not

be deemed a waiver of any other prior or subsequent breach of this Consent Decree.

138.   The headings herein are used for the purpose of convenience only and are not meant to

have legal effect.

139.   This Consent Decree and its exhibits constitute the entire agreement among the parties

hereto concerning the settlement of the action, and no representations, warranties, or inducements

have been made by any party hereto concerning this Consent Decree and its exhibits other than

those contained and memorialized in such documents.

140.   This Consent Decree shall be binding upon, and inure to the benefit of, the successors and

assigns of the parties hereto.

141.   The construction, interpretation, operation, effect and validity of this Consent Decree, and

all documents necessary to effectuate it, shall be governed by federal law.

142.   This Consent Decree shall not be construed more strictly against one party than another

merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of

the parties, it being recognized that it is the result of the arm's length negotiations between the

parties and all parties have contributed substantially and materially to the preparation of this

Consent Decree.

143.   All counsel and any other person executing this Consent Decree and any of the exhibits

hereto, warrant and represent that they have the full authority to do so.  Notwithstanding the

foregoing, it is expressly understood and agreed that no action may be taken against Collin Vice,

71

Jonas de Guzman or Judit Grof-Tiza, in either their individual or official capacities, to enforce the provisions for injunctive relief, nor to make any portion of the monetary payments required by this Consent Decree. No action to enforce the terms of this Consent Decree will be taken against anyone except the Defendant BHA.

144.    Plaintiffs' Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Motion for Preliminary Approval, the Order of Final Judgment of Dismissal, and the Class Distribution Order (except to the extent the Defendants file an Objection pursuant to Paragraph 86) and to agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court.

145.    Plaintiffs' Counsel further agrees to respond to reasonable inquiries from Defendant, BHA or Defendants' Counsel regarding the Monetary Settlement and the Claims Procedure.

146.    All time deadlines established in this Consent Decree may be extended by agreement of the Parties.

147.    No party to this Consent Decree is responsible for the performance, actions or obligations of any other Party to this Consent Decree.

148.    After the entry of the Order of Final Judgment of Dismissal, no default by any person or party to this Consent Decree in the performance of any of the covenants or obligations under this Consent Decree, or any judgment or order entered in connection therewith, shall affect the dismissal of the Complaints, the preclusion of prosecution of the Complaints, the discharge and release of the Defendants and the Released Parties and release of the parties or the judgment entered approving this Consent Decree. Nothing in the preceding sentence shall be construed to affect the Court's jurisdiction to enforce this Consent Decree.

149.    Class Counsel who are signatories hereto hereby represent, warrant, and guarantee that such counsel are duly authorized to execute this Consent Decree on behalf of the named Plaintiffs and the Class Members.

**CONSENTED TO:**

On behalf of the Plaintiffs, Thomas Matyasovszky, Linda Dedrick, Joseph Pellechio, Sandra Pellechio, Kenneth Gihon, John Nelson, Jr., and Judith Montes:

_____          _____
Alan Rosner, Esq.                         Lori Welch-Rubin, Esq.
Law Office of Alan Rosner                 Welch-Rubin and Jacobs
1115 Main Street, Suite 415               129 Whitney Avenue
Bridgeport, CT 06604                      New Haven, CT 06511

On behalf of the Certified Class Members:

_____          _____
Alan Rosner, Esq.                         Lori Welch-Rubin, Esq.
Law Office of Alan Rosner                 Welch-Rubin and Jacobs
1115 Main Street, Suite 415               129 Whitney Avenue
Bridgeport, CT 06604                      New Haven, CT 06511

On behalf of the Defendant, Housing Authority of the City of Bridgeport:

_____
Nicholas Calace, Executive Director
Housing Authority of the City of Bridgeport
150 Highland Avenue
Bridgeport, CT 06604

SO ORDERED:

_____
William I. Garfinkel
United States District Magistrate Judge

I:\Procases\1742.007\Consent Decree Final 92107.wpd

73